**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**CASE NO: 1:18-CV-25106-WILLIAMS/MCALILEY**

| | |
|---|---|
| UNITED AMERICAN CORP., <br><br> *Plaintiff*, <br><br> v. <br><br> BITMAIN, INC., SAINT BITTS LLC d/b/a BITCOIN.COM, ROGER VER, BITMAIN TECHNOLOGIES LTD., BITMAIN TECHNOLOGIES HOLDING COMPANY, JIHAN WU, PAYWARD VENTURES, INC. d/b/a KRAKEN, JESSE POWELL, AMAURY SECHET, SHAMMAH CHANCELLOR, and JASON COX, <br><br> *Defendants*. | |

**DEFENDANT SHAMMAH CHANCELLOR'S REPLY
IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

## INTRODUCTION

Long on rhetoric, short on facts, and all over the map on the substance of the antitrust and state-law claims at issue here, United American Corporation ("United") does nothing in its Opposition to address the fatal pleading failures permeating its Complaint. Instead, United urges the Court to accept *ipse dixit* in place of evidentiary facts, upend settled antitrust precedent, and mobilize the antitrust laws to insulate it from competition in a dynamic and emerging market. United is beating a path into error, as its concessions and omissions amply demonstrate. In opposing Defendant Shammah Chancellor's Motion to Dismiss, United:

- does not dispute that it lacks antitrust standing and injury, essential elements of any claim under Section 1 of the Sherman Act;
- never addresses its failure to plead facts suggesting that *any* of the Defendants, much less Chancellor, ever communicated with one another;
- fails to identify any of the necessary facts to allege an unlawful restraint of trade under the *per se* rule or the antitrust rule of reason; and
- concedes that two of its claims for relief—equitable estoppel and injunctive relief—are not causes of action under Florida law.

United maintains that its Complaint is down but not out, insisting that its meandering allegations set forth plausible claims for relief under the Sherman Act and under state law. No. The Complaint—together with United's implausible, convoluted, and factually unsupported narrative—is beyond repair. The Court should dismiss it with prejudice.

## ARGUMENT[1]

### I.   United concedes that it lacks antitrust standing and injury.

Sidestepping Chancellor's arguments, United wholly ignores its obligation to allege facts tracing its injury to "a competition-*reducing* aspect or effect of the defendant[s'] behavior," *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990), thereby defaulting on the essential antitrust standing and injury elements of its Sherman Act claim. *See Fla. Seed Co. v. Monsanto Co.*, 105 F.3d 1372, 1375–76 (11th Cir. 1997) (affirming dismissal for failure to adequately plead

---

[1] Unless otherwise notated, all emphasis is added and internal citations and quotations are omitted. United's Complaint (ECF No. 1) and Opposition (ECF No. 49) and Chancellor's Motion to Dismiss (ECF No. 41) are abbreviated "Compl.," "Opp.," and "Mot." respectively.

antitrust standing and injury). This pleading failure itself is reason enough to dismiss the Sherman Act claim, but United dispels any lingering doubt by failing to (i) plead facts articulating a causal relationship between Defendants' conduct and the value of Bitcoin Cash; (ii) plead an injury sustained from reduced, rather than enhanced, competition among cryptocurrency networks; or (iii) offer any rationale for extending antitrust standing to all cryptocurrency holders whose losses coincide with market events like software "forks." *See* Mot. at 17–19.[2]

United is certainly the best judge of whether it "would . . . have invested millions" had it foreseen the direction competition would take (Opp. at 13–16), notwithstanding its awareness *ab initio* that hard forks were a feature of cryptocurrency markets. *See* Mot. at 14. But as courts have consistently held, the antitrust laws do not accord standing to firms whose competitive bets do not pan out, and United should not be permitted to recast the Sherman Act—which "was enacted as an aegis to protect the consumer and competition"—into "a sword to redress grievances." *See Spanish Broad. Sys., Inc. v. Clear Channel Commc'ns, Inc.*, 242 F. Supp. 2d 1350, 1365 (S.D. Fla. 2003).[3] The Court should reject United's attempt to subvert the competitive process, reaffirm bedrock antitrust standing and injury principles, and dismiss the Sherman Act claim.

## II. United fails to point to any facts suggesting that Chancellor entered into an unlawful antitrust conspiracy.

United's Opposition reprises and aggravates many of the Complaint's most egregious pleading failures. It does not and cannot point to a *single* fact indicating that Chancellor *ever spoke* with any of the Defendants, much less entered into a conspiracy with them. Instead, United resorts

---

[2] United counts many Defendants, who are themselves "stakeholders in Bitcoin Cash" (Compl. ¶¶ 51, 53–56), among those who purportedly "suffered damages and irreparable harm" as a result of the alleged scheme. *See* Opp. at 2. The claim that Defendants unlawfully agreed to inflict "significant damages" (*id.*) on themselves is "one that simply makes no economic sense." *See Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1343 (11th Cir. 2010) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[3] *See also Spectrum Sports, Inc. v. McQullian*, 506 U.S. 447, 458 (1993) (explaining that "[t]he purpose of the [Sherman] Act is not to protect businesses from the working of the market"); *Atl. Richfield*, 495 U.S. at 338 n.7 ("[A] firm cannot claim antitrust injury from nonpredatory price competition on the asserted ground that it is 'ruinous.'"); *Austin v. Blue Cross & Blue Shield of Ala.*, 903 F.2d 1385, 1390 (11th Cir. 1990) ("The antitrust laws . . . protect competition, not competitors; and stiff competition is encouraged, not condemned."); *Vitacost.com, Inc. v. Gaia Herbs, Inc.*, 2007 WL 951768, at *3 (S.D. Fla. Mar. 28, 2007) ("Plaintiffs complain of injury largely to themselves, not injury that inures to the public detriment. This is not antitrust injury.").

to "statements that . . . have no tendency to suggest an advance agreement," or "reflect facts that are simply not pled in the complaint[] and not reasonably inferred from the actual allegations"— an approach to Section 1 pleading that the Eleventh Circuit, sitting *en banc*, rebuked three days before United filed its Opposition. *See Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, --- F.3d ---, 2019 WL 1006973, at *5 n.13 (11th Cir. Mar. 4, 2019) (en banc).[4]

### A. United's assertion that Defendants acted in uniformity is baseless.

United claims that "Defendants [have] acted in uniformity" without ever identifying any ways in which Chancellor's conduct was consistent with that of the other Defendants. Opp. at 6. Rather, United abstracts away from specific facts about Chancellor, levels its allegations against "Defendants" or the amorphous "Bitcoin ABC," and—by virtue of this "shotgun" argument— claims to have sufficiently alleged that "Defendants" acted in concert. *See id*. at 6–8. This gambit falls flat. Like the plaintiffs in *Quality Auto Painting*, United "do[es] not explain which of the challenged activities occurred 'in concert' and which occurred 'independently,'" *see* 2019 WL 1006973, at *10, and similarly fails to account for the discrepancy between its new claim of uniformity—which appears for the first time in its briefing—and the total absence of supporting facts in the Complaint. *See id.* ("The [plaintiffs'] briefing suggests that the [defendants'] tactics are highly uniform when even the complaint does not allege that.").

### B. Andreas Brekken's comments bring United no closer to adequately pleading a conspiracy.

Next, United summarily asserts that "Defendants have made explicit statements declaring that they coordinated, conspired and agreed with each other." Opp. at 6. It cites comments that Andreas Brekken—purportedly an employee of *one* Defendant—made in a YouTube video, which it holds out as smoking-gun evidence of a conspiracy to hijack the Bitcoin Cash blockchain. *Id.* at 7. United emphasizes Brekken's comments that "we knew we were going to win," and "you talk to all the exchanges . . . then you have them apply a patch which adds a checkpoint that anchored to blockmine by Bitcoin ABC which prevents all future re-orgs." *See id.* (emphasis removed).

---

[4] Although its Opposition includes language that mirrors a passage from *Quality Auto Painting*, United perplexingly fails to distinguish, discuss, or even cite that case in its brief. *Compare* Opp. at 4 ("In addition to that bare bones recital of prohibited behavior, the Supreme Court has long concluded . . . ."), *with Quality Auto Painting*, 2019 WL 1006973, at *4 ("In addition to that bare bones recital of prohibited behavior, the Supreme Court has long concluded . . . .").

Taken on their face, nothing about Brekken's statements directly or circumstantially evinces a horizontal agreement to fix any price, rig any bid, restrain any output, allocate any market, or manipulate any term or condition of sale. Instead, United attempts to use Brekken's statements to back into the conclusion that Defendants *must* have spoken to one another and "agreed to the entire scheme in advance." *See* Opp. at 7; *cf. Quality Auto Painting*, 2019 WL 1006973, at *11 ("[Plaintiffs] argue that because the [defendants] acted in identical ways, they must have been meeting and exchanging information."). To that end, United interprets Brekken's disjointed comments "you talk to all the exchanges" and "we knew we were going to win" as evidence that Defendants exchanged information. Opp. at 7. In fact, Brekken *never* indicates that he agreed with or even spoke to Chancellor or any another Defendant, nor does he reveal the existence of the elaborate conspiracy United has alleged. *See id*. at 7; *Quality Auto Painting*, 2019 WL 1006973, at *13 ("There is nothing in these allegations that would suggest action in concert or rule out the possibility that the defendants were acting independently.").

That Kraken is the *only exchange* named as a Defendant renders United's contrived reading of Brekken's comments even more implausible,[5] and undercuts its claim that "the video of Mr. Brekken leaves little to the imagination." Opp. at 8. As United is no doubt aware, the video leaves everything to the imagination. For example, nothing about Brekken's statements indicates that "implement[ing] a checkpoint in the chain" (*id*. at 6)—United's sole substantive allegation against Chancellor—points to Chancellor's participation in an antitrust conspiracy. Even if United adequately pleaded Chancellor's role in implementing a checkpoint, and it did not, Brekken's remarks would still fail to paint Chancellor's alleged conduct—writing software code that *could* be applied to a blockchain—as anticompetitive. *See Quality Auto Painting*, 2019 WL 1006973, at *9 (noting plaintiffs' failure to allege "idiosyncratic" conduct bespeaking agreement).

Finally, United's reliance on Brekken's comments is misplaced for exactly the reason that it identifies in its brief: that the defining feature of a conspiracy is secrecy. *See* Opp. at 4 (requesting that the Court consider "the inherently secret nature of a conspiracy" when evaluating the sufficiency of the pleadings). It is hardly plausible that Brekken entered into a secret agreement with Defendants to "manipulat[e] the cryptocurrency market for Bitcoin Cash and effectively

---

[5] *See* Opp. at 7 (mischaracterizing Brekken's comment "you talk to all the *exchanges*" as evidence of information exchange between *Defendants*, none of whom besides Kraken are cryptocurrency exchanges) (emphasis altered).

4

hijack[] the Bitcoin Cash network," achieved the objective of that agreement, and then broadcasted its existence and accomplishment on YouTube for public consumption. *See Grunewald v. United States*, 353 U.S. 391, 402 (1957) ("[E]very conspiracy is by its very nature secret; a case can hardly be supposed where men concert together for crime and advertise their purpose to the world.").

As United notes, "[a]n imaginative person might be able to create" a narrative in which Chancellor delivers the coup de grâce that caps off a bid-rigging conspiracy. *See* Opp. at 2, 8. But Brekken's comments—which border on the unintelligible—do not render that storyline *plausible*. *See Quality Auto Painting*, 2019 WL 1006973, at *9 ("[I]ndependent action is at least as plausible as concerted action pursuant to prior agreement; thus nothing 'tends to exclude the possibility of independent action'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553–54 (2007)).

### C. United may not assume the existence of a conspiracy and then arrange the facts accordingly.

Predictably, United reverts to an argument that courts in this District and elsewhere have rejected: "that Defendants would not have acted as they did if they had not coordinated, conspired and agreed with each other." Opp. at 8. The flaw in that top-down approach to antitrust conspiracy pleading—what the Eighth Circuit describes as "proceed[ing] by first assuming a conspiracy and then explaining the evidence accordingly," *Blomkest Fertilizer, Inc. v. Potash Corp. of Saskatchewan*, 203 F.3d 1028, 1033 (8th Cir. 2000)—is that it glosses over the requirement to plead facts suggesting "that each individual Defendant joined the conspiracy and played some role" in it. *See In re Marine Hose Antitrust Litig.*, 2009 WL 10685177, at *8–*9 (S.D. Fla. Jan. 28, 2009). Another court in this District rejected a similar argument "that a conspiracy [was] the only plausible explanation" for the alleged conspirators' conduct. *Duty Free Americas, Inc. v. Estee Lauder Cos.*, 946 F. Supp. 2d 1321, 1331 (S.D. Fla. 2013). Pointing to a lack of "factual meat on the bones of the skeletal Complaint," the *Duty Free* court held that it was not reasonable to infer that the movant "agreed to anything at all, much less [made] a 'conscious commitment to a common scheme designed to achieve an unlawful objective.'" *Id.* (quoting *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984)).

So too here. United fails to answer basic questions about Chancellor: "with whom did he conspire?," "to what did he and the purported co-conspirators agree?," "where did he and the purported co-conspirators hatch this alleged agreement?," and "when did he join the conspiracy?" United's allegations against Chancellor do not even measure up to the generic and factually

5

unsubstantiated pleadings that the Eleventh Circuit rejected in *Quality Auto Painting*.[6] United has come nowhere close to satisfying its obligation to adequately plead Chancellor's "unity of purpose," "common design and understanding," or "meeting of minds in an unlawful arrangement" with the other Defendants. *See City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 569 (11th Cir. 1999). Simply put, the repeated and bald assertion that Chancellor "coordinated, conspired and agreed with" the other Defendants (Opp. at 8) is inadequate under the Section 1 pleading requirements that the Supreme Court, the Eleventh Circuit, and this Court have laid down.

### III.    United has not identified any actionable restraint of trade.

United's convoluted narrative places it in the "no man's land" of antitrust law—it cannot decide whether the Court should evaluate Defendants' conduct as a new category of *per se* unlawful restraint, as *per se* unlawful bid rigging, or under the generally applicable rule of reason. Because each theory is meritless, there is no need to choose.

#### A.    No court has recognized a *per se* violation of the Sherman Act arising out of non-adherence to a white paper or "hijacking" a cryptocurrency network.

Condemnation under the *per se* rule is reserved for a narrow set of the most serious and well-understood antitrust offenses—agreements between horizontal competitors to fix prices, restrain output, rig bids, allocate markets. *See* Mot. at 9.[7] The Supreme Court and the Eleventh Circuit agree that "[i]t is only after considerable experience with certain business relationships that courts [should] classify them as per se violations of the Sherman Act." *United States v. Topco Assocs. Inc.*, 405 U.S. 596, 607–08 (1972).[8] Immediately running afoul of that proviso, United

---

[6] 2019 WL 1006973, at *9 ("Although the complaints repeatedly allege that the [defendants] have agreed and conspired with respect to price, these allegations have no basis in the facts actually alleged. They are merely conclusions and therefore are an insufficient basis on which to infer a prior agreement.").

[7] Courts have also analyzed tying and group boycotts under the *per se* rule, albeit less regularly.

[8] *See also State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997) (expressing "reluctance to adopt per se rules . . . where the economic impact of certain practices is not immediately obvious"); *Jacobs*, 626 F.3d at 1334 ("[P]er se violations of § 1 of the Sherman Act are limited to a very small class of antitrust practices whose character is well understood and that almost always harm competition."); Philip E. Areeda & Herbert Hovenkamp, *Antitrust Law* § 1511 (3rd & 4th eds., 2018 Cumm. Supp. 2010–2018) ("The federal courts ordinarily do not apply the per se rules to a practice the first time they encounter it. That judgment can be made only after considerable judicial experience showing that anticompetitive effects dominate any alternative explanation.").

exhorts the Court to apply the *per se* rule to "[t]he articulated scheme perpetrated by Defendants," notwithstanding its admissions that (i) "this is a case of first impression," (ii) this is "the first antitrust action brought in the United States involving the dynamic and constantly evolving cryptocurrency industry," and (iii) "[n]o court has yet decided whether the hijacking of a single cryptocurrency network is a *per se* automatic violation of the federal antitrust laws." Opp. at 10.

United's argument is self-defeating. It is in precisely these circumstances that courts have limited the ambit of the *per se* rule. As the Eleventh Circuit held over a quarter century ago, "the per se label should be applied infrequently and with caution. . . . [and] *only when history and analysis have shown that in sufficiently similar circumstances the rule of reason unequivocally results in a finding of liability.*" *Seagood Trading Corp. v. Jerrico, Inc.*, 924 F.2d 1555, 1567 (11th Cir. 1991). Here, the danger of "mislabeling procompetitive activity as *per se* illegal" is intolerably high. *See id.*[9] The Court should decline United's suggestion to depart from controlling precedent, and reject its expedient strategy of creating a new *per se* category to solve its pleading problems.

      **B.**    **United cannot twist its groundless allegations into a last-minute claim of bid rigging.**

Likely recognizing that "[p]er se categories are not to be expanded indiscriminately to new factual situations," *International Healthcare Management v. Hawaii Coalition for Health*, 332 F.3d 600, 605 (9th Cir. 2003), United deserts its claim that Defendants "fixed, maintained, suppressed, stabilized and/or otherwise made artificial the values associated with the Bitcoin Cash network," Compl. ¶ 83, and instead invokes bid rigging—a type of conduct that it does not identify in its Complaint and shares no conceptual similarity with "hijacking" a cryptocurrency network.

While the specifics may vary from one bid-rigging conspiracy to the next, "[a]lmost all forms of bid-rigging schemes have one thing in common: an agreement among some or all of the bidders which predetermines the winning bidder and limits or eliminates competition among the conspiring vendors."[10] United asserts that Defendants "rigged the bid" by "bringing in mercenaries from another network (the BTC network) to temporarily mine the Bitcoin Cash network during

---

[9] *See, e.g.*, Opp. at 10 (the cryptocurrency industry is "dynamic and constantly evolving"); *id.* (admitting that there is no history or analysis of the purportedly anticompetitive conduct); *infra* Section III.C (there is no dispute that United's claims derive from enhanced competition).

[10] U.S. Dep't of Justice, *Price Fixing, Bid Rigging, and Market Allocation Schemes: What They Are and What to Look For* at 3 (updated June 25, 2015), *available at* https://www.justice.gov/sites/default/files/atr/legacy/2007/10/24/211578.pdf (hereinafter "BID RIGGING GUIDE").

the software upgrade and then leave." Opp. at 11. But the crux of what makes bid rigging *per se* unlawful is its tendency to eliminate competition between bidders to offer the best commercial terms—conduct that is in no way analogous to the "hijacking of a single cryptocurrency network." *Id*. at 10. United's new theory, which has nothing to do with the ordering or amount of "the winning bid on a contract being let through [a] competitive bidding process," BID RIGGING GUIDE at 2, flies in the face of the Eleventh Circuit's instruction to ensure "that the challenged conduct fits into a [*per se*] proscribed category without distortion." *See Cha-Car, Inc. v. Calder Race Course, Inc.*, 752 F.2d 609, 612–13 (11th Cir. 1985). No amount of jawboning or argument-by-label will fit Defendants' conduct into the "bid-rigging" box.[11]

### C. United has not identified any harm to competition, or any of the other necessary facts to support a rule of reason claim.

Compounding its wholesale failure to plead facts in support of a rule of reason claim, United defaults on its most basic obligation: adequately explaining how Defendants' conduct harmed competition. *See Nat'l Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 692 (1978) (noting that under the *per se* or rule of reason framework, "the purpose of the analysis is to form a judgment about the competitive significance of the restraint"). United does not connect any of its vague troika of "unlawful purposes"—"hijacking the Bitcoin Cash network," "violating the Nakamoto Whitepaper," and "precluding future changes to Bitcoin [C]ash functionality"—to an injury to competition. Opp. at 10. It does not even attempt to show that Defendants' conduct had any actual or potential anticompetitive effect in a properly defined market. *See* Mot. at 12–16.[12]

---

[11] The bid-rigging analogy makes even less sense as applied to Chancellor, who as a software developer *does not compete* with digital currency miners to secure and record blocks of transactions. *See* Compl. ¶ 74 (alleging that Bitcoin ABC develops software code for the ABC software implementation, whereas other Defendants mine cryptocurrency or offer cryptocurrency exchange services). Even if adequately pleaded, a vertical agreement between a software developer and a group of miners or an exchange to "have the ABC chain effectively recognized as the official blockchain of Bitcoin Cash" (Opp. at 7) is not a *per se* unlawful agreement between horizontal competitors to rig bids. *See Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2290 n.10 (2018) ("A horizontal agreement between competitors is markedly different from a vertical agreement that incidentally affects one particular method of competition.").

[12] After questioning whether the requirement to plead relevant markets applies to its allegations, United asserts—without citation—that it was "[n]evertheless . . . clear in identifying a plausible product and geographic market" for "the Bitcoin blocks being mined by miners throughout the world on the Bitcoin Cash blockchain (now Bitcoin Cash ABC)." *See* Opp. at 9 n.3. Every Section 1 plaintiff must "present enough information in the[] complaint to plausibly suggest the

8

And it offers no answer to Chancellor's key point: that the Complaint itself demonstrates that the complained-of "vote" *fostered, rather than eliminated*, competition. *See* Mot. at 12–13. Because United has neither alleged conduct that is *per se* unlawful nor provided any basis on which this Court can "determine *how* harm to competition result[ed] from" Defendants' conduct, *see Jacobs v. Tempur-Pedic International, Inc.*, 626 F.3d 1327, 1340 (11th Cir. 2010), its Sherman Act count should be dismissed.

### IV. United's state-law claims are factually and legally insupportable.

United's approach to pleading its state-law claims makes it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *See Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996). Even after it effectively abandons its equitable estoppel claim and concedes that injunctive relief is not a cause of action, see Opp. at 17–18, its arguments (i) do not point to any factual support for the remaining claims, (ii) cannot rehabilitate United's "shotgun" pleadings, and (iii) fall flat for the simple reason that United fails to identify any nexus between its sole substantive allegation against Chancellor—that he implemented checkpoints on the ABC blockchain—and the essential elements of each of these counts. Each of United's threadbare state-law claims should be dismissed with prejudice.

*First*, United fails to plead a plausible claim of negligent misrepresentation. It does not dispute its Rule 9(b) obligation to plead the "what, when, where, and how" of Chancellor's alleged misrepresentation, *see* Opp. at 13, but instead advances a *res ipsa loquitur* argument—that the facts supporting its claim are "clear from the alleged conspiracy and the entirety of the Complaint and the scheme set forth in great detail and particularity therein." *See id.* Rule 9(b) requires more than vague promises of great detail and particularity. *See Ceithaml v. Celebrity Cruises, Inc.*, 207 F. Supp. 3d 1345, 1353–54 (S.D. Fla. 2016) (Williams, J.) (invoking Rule 9(b) to dismiss a negligent misrepresentation claim lacking "particularized allegations about the timing, source, and precise content of the statements" at issue). Because the onus is not on the "district court to sift through the facts presented and decide for itself which [a]re material to the particular cause of

---

contours of the relevant product and geographic markets" to avoid dismissal. *See Jacobs*, 626 F.3d at 1337. United's Complaint does not even include the phrase "relevant market," and "provides no factual allegations of the cross-elasticity of demand or other indications of price sensitivity" that would suggest the existence of such markets. *See id.* at 1338; Mot. at 15.

9

action asserted," this Count should be dismissed. *See Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1296 n.9 (11th Cir. 2002) (alterations to original accepted).

*Second*, United's Opposition does not identify any of the facts that would support a negligence claim against Chancellor. There is no case, statute, regulation, common law interpretation, or other source of authority that supports what United asks the Court to do here: impose a legal duty on Chancellor to "abide by [a] Whitepaper and accepted standards and protocols." *See* Opp. at 15; *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 948 n.7 (11th Cir. 2014) ("[T]he burden is on [plaintiff] to point to Florida law establishing the existence of legal duty."). Moreover, United's reliance on the "foreseeable zone of risk" theory of duty is entirely misplaced. *See* Opp. at 14–15. That theory applies to conduct that "so frequently previously resulted in the same type of injury or harm that . . . the same type of result may be expected again," *O'Donnell v. United States*, 736 F. App'x 828, 832 (11th Cir. 2018), clearly a poor fit for this "case of first impression." *See* Opp. at 10. Even if that theory applied here, and it does not, United would still bear the burden to show a "special relationship" between itself and Chancellor, or another extraordinary circumstance that would warrant requiring Chancellor to protect United's "purely economic interests" in its cryptocurrency holdings. *See* Mot. at 22; *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1340 (11th Cir. 2012). United never even attempts to make that showing.

*Third*, United's conversion claim is still a non-starter. Rather than address any of Chancellor's arguments or point to a single fact that evinces Chancellor's "act of dominion" or "wrongful[] assert[ion]" over property that it owned or possessed, Opp. at 17, United simply copies and pastes its conclusory conversion allegations from the Complaint into its Opposition. *Compare* Compl. ¶¶ 112, 113, *with* Opp. at 17 (verbatim recapitulation of Compl. ¶¶ 112–13). That United has apparently decided to stop mining the Bitcoin Cash Network does not make *anyone* liable for conversion of its "right to utilize and possess Bitcoin Cash and its blockchain network." Compl. ¶ 113; *see Trentalange v. Occulogix, Inc.*, 2007 WL 4482565, at *3 (M.D. Fla., Dec. 17, 2007) (dismissing claim for conversion of "the ability to sell . . . stock at a high price in [an] IPO").

## CONCLUSION

United's threadbare Complaint against Chancellor "should not proceed directly past a motion to dismiss and into the expensive and settlement-inducing quagmire of antitrust discovery." *See Quality Auto Painting*, 2019 WL 1006973, at *10. For the reasons stated in Chancellor's Motion to Dismiss and this Reply, United's Complaint should be dismissed with prejudice.

Dated: March 21, 2019

Respectfully submitted,

/s/ *Melissa Pallett-Vasquez*
MELISSA C. PALLETT-VASQUEZ
Florida Bar No. 715816
mpallett@bilzin.com
LORI P. LUSTRIN
Florida Bar No. 59228
llustrin@bilzin.com
**BILZIN SUMBERG BAENA PRICE & AXELROD LLP**
1450 Brickell Ave, Suite 2300
Miami, Florida 33131
Tel.: (305) 374-7580   Fax: (305) 374-7593

and

IAN SIMMONS (*admitted pro hac vice*)
D.C. Bar No. 439645
isimmons@omm.com
KATRINA ROBSON (*admitted pro hac vice*)
D.C. Bar No. 989341
krobson@omm.com
SERGEI ZASLAVSKY (*admitted pro hac vice*)
D.C. Bar No. 1010425
szaslavsky@omm.com
ZHAO LIU (*admitted pro hac vice*)
D.C. Bar No. 1022940
zliu@omm.com
BRIAN P. QUINN (*admitted pro hac vice*)
D.C. Bar No. 1048323
bquinn@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street N.W.
Washington, D.C. 20006
Tel: (202) 383-5300   Fax: (202) 383-5414

*Attorneys for Defendant Shammah Chancellor*

12

**CERTIFICATE OF SERVICE**

  **I HEREBY CERTIFY** that on March 21, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

            /s/ *Melissa Pallett-Vasquez*
            Melissa Pallett-Vasquez