**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 1:18-CV-25106-WILLIAMS/TORRES**

UNITED AMERICAN CORP.,

    Plaintiff,

v.

BITMAIN INC., SAINT BITTS LLC d/b/a
BITCOIN.COM, ROGER VER, BITMAIN
TECHNOLOGIES LTD., BITMAIN
TECHNOLOGIES HOLDING COMPANY,
JIHAN WU, PAYWARD VENTURES,
INC. d/b/a KRAKEN, JESSE POWELL,
AMAURY SECHET, SHAMMAH
CHANCELLOR, and JASON COX,

    Defendants.

_____/

**REPLY IN SUPPORT OF DEFENDANT BITMAIN INC.'S**
**MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

**TABLE OF CONTENTS**

                                                **Page**

INTRODUCTION ............................................................................................................................. 1

ARGUMENT .................................................................................................................................... 2

    I.    UAC's Antitrust Claim Should Be Dismissed. ....................................................... 2

        A.    UAC Fails to Plead a Plausible Conspiracy. ............................................... 2

        B.    UAC Fails to Allege Harm to Competition. ............................................... 4

        C.    UAC Fails to Plead Key Elements of its Rule of Reason Claim. ............... 6

    II.    UAC's State Law Claims Should Be Dismissed. ................................................... 7

        A.    UAC Fails to Plead Key Elements of its Negligent Misrepresentation Claim ................................................................................. 8

        B.    UAC Fails to Plead Key Elements of its Negligence Claim. ...................... 8

        C.    UAC Fails to Plead Key Elements of its Unjust Enrichment Claim ........... 9

        D.    UAC Fails to Plead Key Elements of its Conversion Claim. .................... 10

CONCLUSION ............................................................................................................................... 10

## TABLE OF AUTHORITIES

Page

**CASES**

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
  486 U.S. 492 (1988) ................................................................................................ 6

*Aquatherm Indus., Inc. v. Fla. Power & Light Co.*,
  145 F.3d 1258 (11th Cir. 1998) ............................................................................. 4

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................ 7, 8

*B.M.I. Interior Yacht Refinishing, Inc. v. M/Y Claire*,
  2014 WL 11706426 (S.D. Fla. Dec. 1, 2014) ......................................................... 8

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................... 2, 3, 4, 5

*De La Flor v. Ritz-Carlton Hotel Co.*,
  556 F. App'x 938 (11th Cir. 2014) ......................................................................... 9

*In re Resistors Antitrust Litig.*,
  2017 WL 3895706 (N.D. Cal. Sept. 5, 2017) ......................................................... 2

*Jacobs v. Tempur-Pedic Int'l, Inc.*,
  626 F.3d 1327 (11th Cir. 2010) ........................................................................... 6, 7

*L. A. Fitness, Int'l, LLC v. Mayer*,
  980 So. 2d 550 (Fla. 4th DCA 2008) ..................................................................... 9

*Magluta v. Samples*,
  256 F.3d 1282 (11th Cir. 2001) ............................................................................. 3

*McCain v. Fla. Power Co.*,
  593 So. 2d 500 (Fla. 1992) .................................................................................... 9

*Monroe v. Sarasota Cty. Sch. Bd.*,
  746 So. 2d 530 (Fla. 2d DCA 1999) ...................................................................... 9

*Perry v. Schumacher Grp. of La.*,
  2014 WL 988751 (M.D. Fla. Mar. 13, 2014) ........................................................ 9

TOC

*Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*,
 __ F.3d __, 2019 WL 1006973 (11th Cir. Mar. 4, 2019)..................................................1, 3, 5

*Seagood Trading Corp. v. Jerrico, Inc.*,
 924 F.2d 1555 (11th Cir. 1991) .................................................................................................6

*Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns*,
 376 F. 3d 1065 (11th Cir. 2004) ................................................................................................6

*State Oil Co. v. Khan*,
 522 U.S. 3 (1997).......................................................................................................................7

*Supercase Enter. Co. v. Marware, Inc.*,
 2015 WL 11622424 (S.D. Fla. Oct. 23, 2015).........................................................................10

*Todorov v. DCH Healthcare Authority*,
 921 F.2d 1438 (11th Cir. 1991) .................................................................................................3

*U.S. v. Joyce*,
 895 F.3d 673 (9th Cir. 2018) .....................................................................................................7

## INTRODUCTION

United American Corp.'s ("UAC") Opposition fails to overcome the numerous flaws in its Complaint, including the most central defect: UAC is attempting to infer an antitrust conspiracy from conduct that is fully consistent with "'rational and competitive business strategy unilaterally prompted by common perceptions of the market.'"  *Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, __ F.3d __, 2019 WL 1006973, at *5 (11th Cir. Mar. 4, 2019) (en banc) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554 (2007)). UAC makes no attempt to dispute the fact that, in advance of a well-publicized and highly contentious competition between Bitcoin Cash software upgrades, Bitmain Inc. ("Bitmain") (like the other Defendants) had *unilateral* reasons for supporting its preferred upgrade. Nowhere, for example, does UAC allege Bitmain acted against its own economic interest. Nor can UAC save its claim by retreating to conclusory allegations about undifferentiated "Defendants," which fail as a matter of law. As such, UAC's entire antitrust claim relies on allegations that are "'just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market,'" and are insufficient to state a claim. *Id.* (quoting *Twombly*, 550 U.S. at 554).

UAC's antitrust claim fails for an additional reason: it fails to demonstrate that Defendants' "voting" harmed competition itself. The Complaint chronicles a vigorous dispute within the Bitcoin Cash community surrounding two conflicting software upgrades, with industry participants at all levels—hardware manufacturers, cryptocurrency miners, software developers, and day-to-day enthusiasts—lined up on either side. That is the essence of competition, not a lack of it. If anything, UAC complains that it suffered from *increased* competition, but the antitrust laws only protect competition, not disappointed competitors.

1

UAC's state law claims are equally defective.  UAC's Opposition claims that Defendants violated principles set forth in the Satoshi Whitepaper and unspoken, industrywide "accepted standards and protocols," but fails to allege any facts whatsoever to show that such standards even exist, much less that Bitmain violated them.  As such, UAC's Complaint must be dismissed.

## ARGUMENT

**I.     UAC's Antitrust Claim Should Be Dismissed.**

**A.     UAC Fails to Plead a Plausible Conspiracy.**

UAC's Opposition is telling for what it does ***not*** dispute.  UAC makes no attempt to dispute, and therefore concedes, that:

- The Bitcoin Cash software permits anyone with a computer to "mine" its cryptocurrency (Compl. Ex. A at 8);
- Bitcoin Cash undergoes periodic updates from time to time, and disputed upgrades to Bitcoin Cash are resolved by a "vote" of users who show their support for the preferred upgrade through mining (Compl. ¶¶ 44-45);
- The "vote" does not eliminate the "losing" upgrade; instead, both upgrades continue to exist so long as there is user support for each respective upgrade (Compl. ¶ 45); and
- "Bitmain"[1] actively mined Bitcoin Cash prior to the fork (Compl. ¶ 67).

Collectively, these uncontested facts establish why UAC's allegations are "just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market."  *Twombly*, 550 U.S. at 554.  UAC's allegations merely support the not-so-surprising conclusion that each Defendant has its own unilateral interests in Bitcoin Cash (and cryptocurrency more broadly)—some as users, others as developers, and still others as hardware manufacturers.  *See, e.g.*, Compl. ¶¶ 47-58.  After "a dispute arose" regarding

---

[1]     As in its Complaint, UAC's Opposition lumps three Bitmain entities together (Bitmain Inc., Bitmain Technologies Ltd., and Bitmain Technologies Holding Company).  This is plainly improper.  *In re Resistors Antitrust Litig.*, 2017 WL 3895706, at *4 (N.D. Cal. Sept. 5, 2017).  UAC has served only Bitmain Inc., but UAC's allegations and arguments about Bitcoin voting and mining relate to a different Bitmain entity.  *See* Bitmain Motion to Dismiss at 7 n.4, 8 n.6.

2

the November 2018 upgrades, Compl. ¶ 43, Bitmain and the other Bitcoin Cash users had clear incentives to support their preferred upgrade. Nothing in UAC's Opposition plausibly suggests an antitrust conspiracy in light of this "obvious alternative explanation." *Twombly*, 550 U.S. at 567.

While UAC's Opposition derides this common-sense conclusion as "imaginative," it offers no *facts* to dispute it. Critically, UAC offers no allegations that Bitmain or any other Defendant acted against its own economic self-interest. That alone dooms its antitrust claim. *See Todorov v. DCH Healthcare Authority*, 921 F.2d 1438, 1456 n.30 (11th Cir. 1991) ("[I]t is well settled in this circuit that evidence of conscious parallelism does not permit an inference of conspiracy unless the plaintiff establishes that, assuming there is no conspiracy, each defendant engaging in the parallel action acted contrary to its economic self-interest.").

UAC's Opposition attempts to skirt these pleading requirements by lumping together all Defendants as an undifferentiated group and relying on allegations that do not mention Bitmain at all. For example, UAC argues that "*Defendants* have made explicit statements declaring that they coordinated," and "*Defendants* sought to dominate the temporary software upgrade." Opp. at 6 (emphasis added). Such "shotgun" accusations are the type that the Eleventh Circuit has "condemned repeatedly" as insufficient under the Federal Rules. *See, e.g.*, *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) ("The complaint is replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged . . . and is the type of complaint that we have criticized time and again."); *see also Quality Auto Painting,* 2019 WL 1006973, at *10 (conclusory allegations where "no facts are actually alleged" are insufficient and entitled to no weight). Likewise, the Opposition relies heavily on a YouTube video made by a third party that likewise avoids specifics: the speaker claims "*we* knew

3

*we* were going to win," and "*we* have just been . . . drinking beers all day." Opp. at 7; Compl. ¶ 74 (emphasis added). Nowhere does the video suggest *Bitmain* entered into an unlawful conspiracy.

These vague, amorphous allegations do not state a claim as a matter of law. *Twombly* requires that a complaint contain "enough factual matter (taken as true) to suggest that an agreement was made"—and not just allegations of conduct "that could just as well be independent action." 550 U.S. at 556-57. Nothing about UAC's alleged conspiracy is plausible—particularly when Bitmain, like the other Defendants, had its own unilateral interests in supporting its preferred Bitcoin Cash software upgrade. *See id*. at 566 ("there is no reason to infer that [defendants] had agreed among themselves to do what was only natural anyway"). In light of this "obvious alternative explanation," *id*. at 567, UAC fails to plausibly plead a Section 1 conspiracy.

**B.     UAC Fails to Allege Harm to Competition.**

UAC's Opposition also ignores the Complaint's failure to plead harm to competition, a prerequisite to any antitrust claim. *Aquatherm Indus., Inc. v. Fla. Power & Light Co.*, 145 F.3d 1258, 1262 (11th Cir. 1998) ("A plaintiff . . . must prove injury to *competition* in order to sustain a federal antitrust claim."). Despite the Opposition's colorful language (labeling Defendants as "manipulat[ors]" and "hijack[ers]"), UAC makes no factual allegations that any of the alleged conduct, and in particular Bitmain's alleged use of its computing power to "vote," harmed *competition*. In fact, the terms "antitrust injury" and "harm to competition" appear nowhere in UAC's Opposition (or its Complaint). This alone warrants dismissal.

At most, UAC argues that Defendants' use of computers that had not previously mined the Bitcoin Cash network to "vote with their CPU power" was somehow anticompetitive. *See* Compl. ¶ 64. According to UAC, "*it has always been understood* that it is the nodes that are mining the blockchain that are able to 'vote with their CPU power.'" Opp. at 11 (citing Compl. ¶ 64)

4

(emphasis added). UAC claims "Bitmain" violated this global, industry-wide (but unspoken) "understanding" by mining Bitcoin Cash ABC with its cryptocurrency mining equipment.

This argument fails for two reasons. First, UAC offers zero *factual* allegations to explain or support the existence of these unspoken "ground rules" of Bitcoin Cash, and such conclusory assertions are not entitled to any weight whatsoever. *Quality Auto Painting*, 2019 WL 1006973, at *10; *see also Twombly*, 550 U.S. at 565 n.10 ("[A] defendant seeking to respond to plaintiffs' conclusory allegations in the § 1 context would have little idea where to begin."). UAC points to nothing in the Satoshi Whitepaper that even remotely suggests that miners cannot control their computers to mine however they see fit. Second, UAC's allegation is contradicted by the Satoshi Whitepaper itself, which explicitly contemplates that users "*can leave and rejoin the network at will.*" Compl. Ex. A at 8 (emphasis added). UAC turns this on its head by asserting, without any factual support, that there is an unspoken agreement between the tens of thousands of users worldwide to "vote" only using nodes that have previously mined the currency.[2]

Instead of alleging harm to competition, UAC complains it suffered from *increased* competition when Bitmain, the other Defendants, and users worldwide "voted" for their preferred upgrade. Yet this is precisely the "vote" envisioned by the Bitcoin Cash software. *See* Compl. ¶¶ 44-45 ("[T]he determination over *which* rules set would be applied by software implementations on the network going forward, would be based on the 'vote' of the various nodes mining the network . . . . Whichever rules set received the most 'votes' in the aforementioned 'hash war' was going to continue the Bitcoin Cash blockchain going forward."). Whether UAC claims

---

[2]   UAC's alleged, but unspoken, "ground rules" fall apart with only a cursory examination. *What* are these unspoken rules? *How* does a user find them? *When* are users prohibited from mining their preferred cryptocurrency? UAC offers no factual allegations to support the existence of these ground rules, and which one(s) Bitmain supposedly violated.

that Bitcoin Cash SV or UAC itself was harmed by this competition is irrelevant, since neither reflects harm to *competition*. *See Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns*, 376 F. 3d 1065, 1069 (11th Cir. 2004) ("[A]n antitrust plaintiff must show harm to competition in general, rather than merely damage to an individual competitor"). UAC's Opposition fails to explain how the Complaint alleges harm to competition, so its antitrust claim must be dismissed.

C. **UAC Fails to Plead Key Elements of its Rule of Reason Claim.**

Remarkably, UAC's Opposition ignores long-standing U.S. Supreme Court case law establishing that the rule of reason standard presumptively applies to Section 1 claims, and specifically in cases—like this one—in which parties are alleged to have participated in a consensus-developing process. *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 500 (1988); *see also Seagood Trading Corp. v. Jerrico, Inc.*, 924 F.2d 1555, 1567 (11th Cir. 1991) ("The [U.S.] Supreme Court has made it clear that the per se label should be applied infrequently and with caution."). As UAC fails to allege key elements of its rule of reason claim, such as the contours of a properly-defined geographic market or product market, its Complaint must be dismissed. *See, e.g.*, *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1336 (11th Cir. 2010) ("[A]ntitrust plaintiffs still must present enough information in their complaint to plausibly suggest the contours of the relevant geographic and product markets.").

Instead of addressing these obvious deficiencies, UAC's Opposition argues that the *per se* standard should apply for two reasons—both of which are meritless. First, UAC argues that this cryptocurrency "case of first impression" somehow demands to "be treated as a *per se* violation." Opp. at 10. UAC's unsupported demand flies in the face of Eleventh Circuit guidance, which cautions "per se violations of [Section 1] of the Sherman Act are limited to a very small class of antitrust practices whose character is well understood and that almost always harm competition," or those business relationships that "in the courts' experience, virtually always stifle competition."

6

*Jacobs*, 626 F.3d at 1334.  By UAC's own admission, courts' experience with the "dynamic and constantly evolving cryptocurrency industry" is limited.  Opp. at 10.  That is precisely why *Jacobs* (and U.S. Supreme Court precedent before it) directs this Court to apply the rule of reason.  *See, e.g.*, *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997) ("[W]e have expressed reluctance to adopt *per se* rules . . . 'where the economic impact of certain practices is not immediately obvious.'") (quoting *FTC v. Indiana Fed'n of Dentists*, 476 U.S. 447, 458-59 (1986)).

Second, UACs Opposition attempts to equate Bitmain's voting for the Bitcoin Cash ABC protocol to bid rigging.  It is hard to fathom how the allegations could even be remotely analogous to bid rigging.  The sole case on which UAC relies, *U.S. v. Joyce*, involved a "classic" criminal conspiracy to rig the bids of foreclosed real estate at public auction by "agreeing not to compete to purchase selected properties," "designating which conspirators would win," "refraining from bidding," and "purchasing selected properties . . . at artificially suppressed prices," among other things.  895 F.3d 673, 676 (9th Cir. 2018).  UAC's Complaint contains no allegations that Defendants even discussed Bitcoin Cash values, much less agreed to "fix" its price, or refrained from mining Bitcoin Cash so others could "win" more coins.

In short, decades of precedent demand that the rule of reason applies here, and UAC has made no effort to demonstrate a rule of reason violation.

## II.     UAC's State Law Claims Should Be Dismissed.

UAC's Opposition likewise fails to show that the Complaint plausibly alleges state law claims.  UAC makes no effort to defend two of its state law claims (injunctive relief and equitable estoppel).  As to the remaining four, the Opposition fails to point to *facts* to establish key elements of each cause of action.  Each should therefore be dismissed.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### A. UAC Fails to Plead Key Elements of its Negligent Misrepresentation Claim.

While UAC alleges that "Defendants misrepresented to Plaintiff and the market that they would abide by the Whitepaper and accepted standards and protocols," Opp. at 13, UAC still fails to identify *who* made the misrepresentation, *where* it was made, *when* it was made, or *how* it was made with the particularity necessary to satisfy Rule 9(b).  *See B.M.I. Interior Yacht Refinishing, Inc. v. M/Y Claire*, 2014 WL 11706426, at *2 (S.D. Fla. Dec. 1, 2014).

At its core, UAC's argument appears to presume that each Defendant, merely by using the Bitcoin Cash software, represented to the entire (and largely anonymous) Bitcoin Cash community that it would abide by the Satoshi Whitepaper and unspoken "standards and protocols."  *See* Opp. at 13.  That is wholly contradicted by the Satoshi Whitepaper itself, which describes an economic payment system "*without relying on trust*."  Compl. Ex. A at 8 (emphasis added).  Likewise, the Opposition points to no *facts* supporting the existence of indeterminate, industry-wide "standards and protocols."  UAC makes no attempt to plead *who* "understood" these standards and protocols, and *what* they even say—much less that Bitmain somehow represented to every Bitcoin Cash user, past and future, that it would abide by them.  As such, because the Complaint's allegations "are no more than conclusions, [they] are not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679.  UAC fails to plausibly plead a negligent misrepresentation claim.

### B. UAC Fails to Plead Key Elements of its Negligence Claim.

UAC still fails to establish key elements of its negligence claim.  UAC's Opposition concedes that, "[v]ery similar to the negligence misrepresentation claim," the Complaint alleges Bitmain owed a duty of care to UAC "to abide by the Whitepaper and accepted standards and protocols."  Opp. at 15.  But, again, UAC fails to plead any *facts* to show the Satoshi Whitepaper and unspoken "standards and protocols" impose any binding obligation on Bitmain, much less that Bitmain violated those standards.

UAC's Opposition does not dispute that the Satoshi Whitepaper describes a system "without relying on trust," see Compl. Ex. A at 1, 8, or that the paper itself is a mere theoretical document that does not purport to contain anything close to "industry standards." And even if it did, UAC does not refute Eleventh Circuit case law establishing that industry standards do not create an "independent legal duty" for negligence actions. *De La Flor v. Ritz-Carlton Hotel Co.*, 556 F. App'x 938, 939 (11th Cir. 2014); *see also L. A. Fitness, Int'l, LLC v. Mayer*, 980 So. 2d 550, 558 (Fla. 4th DCA 2008) ("industry standards do not give rise to an independent legal duty").

UAC tries to dodge its pleading deficiencies by equating Defendants' voting in an election with conduct that creates a "generalized and foreseeable risk of harming others," akin to burying high voltage electrical cables. *See McCain v. Fla. Power Co.*, 593 So. 2d 500, 503 (Fla. 1992). This "zone of risk" doctrine does not apply to competitive business activities where the loss is purely economic, but rather only to situations that create physical danger to others. *See Monroe v. Sarasota Cty. Sch. Bd.*, 746 So. 2d 530, 538 (Fla. 2d DCA 1999) ("[T]he purely intangible economic injury suffered by [plaintiff] in this case without accompanying physical harm to person or property . . . is simply not the type of risk that the law places within the 'zone of risk' utilized to define the general standards of care in a negligence case."); *Perry v. Schumacher Grp. of La.*, 2014 WL 988751, at *4 (M.D. Fla. Mar. 13, 2014) (dismissing negligence claim because "[t]he economic loss allegedly suffered by plaintiff does not amount to actual bodily injury or property damage" and "[a] negligence claim premised on a duty created by the foreseeable risk of harm to others will generally not lie absent bodily injury or property damage"). UAC fails to establish any duty owed to it, and so its negligence claim fails.

### C.    UAC Fails to Plead Key Elements of its Unjust Enrichment Claim.

UAC's Opposition asserts that UAC "helped create" the Bitcoin Cash network, and "Defendants have received the benefit of a significant volume and percentage of the blocks being

9

mined on the blockchain," so UAC has an unjust enrichment claim against Bitmain. Opp. at 16-17. This assertion, however, is completely contradicted by other allegations in UAC's Complaint. Cryptocurrencies like Bitcoin Cash are a "peer-to-peer electronic cash system" where "[n]odes can leave and rejoin the network at will." Compl. Ex. A at 1, 8. To the extent UAC "helped create" the Bitcoin Cash network, so did every other user worldwide. The Complaint itself explains why a Bitmain entity received the benefit of more blocks being mined on the blockchain—it "operates . . . two of the largest Bitcoin and Bitcoin Cash mining pools in the world." Compl. ¶ 53. As such, UAC fails to show any benefit UAC conferred on Bitmain.

### D. UAC Fails to Plead Key Elements of its Conversion Claim.

UAC's Opposition still neglects to identify any property that Bitmain allegedly converted from UAC. UAC's sole claim is that Defendants "deprived [UAC] of the right to utilize and possess Bitcoin Cash and its blockchain network as intended pursuant to the Whitepaper and its accepted standards and protocols." Opp. at 17. But UAC does not own, or have the exclusive right to possess, "Bitcoin Cash and its blockchain network"; in fact, its allegations are that no one owns (or should own) the network. *See, e.g.*, Compl. ¶¶ 28, 32, 40. As a result, even if Defendants had cut off UAC's ability to utilize the network, UAC still would have no claim for conversion. *See Supercase Enter. Co. v. Marware, Inc.*, 2015 WL 11622424, at *8 (S.D. Fla. Oct. 23, 2015).

## CONCLUSION

For the foregoing reasons, Bitmain's motion to dismiss should be granted.

Date: March 21, 2019                                  Respectfully submitted,


<u>/s/ Christopher R.J. Pace</u>
Christopher R.J. Pace
Florida Bar No. 721166
Email:   crjpace@jonesday.com
Marc A. Weinroth
Florida Bar No. 42873
Email:   mweinroth@jonesday.com
**JONES DAY**
600 Brickell Avenue
Suite 3300
Miami, Florida  33131
Telephone: (305) 714-9700
Facsimile: (305) 714-9799

Julie M. McEvoy (*pro hac vice*)
Email:  jmcevoy@jonesday.com
**JONES DAY**
51 Louisiana Ave., N.W.
Washington, D.C. 20001
Telephone: (202) 879-3939
Facsimile: (202) 626-1700

Mark W. Rasmussen (*pro hac vice*)
Email:  mrasmussen@jonesday.com
Thomas D. York (*pro hac vice*)
Email:   tdyork@jonesday.com
**JONES DAY**
2727 N. Harwood Street
Suite 500
Dallas, TX 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100

*Attorneys for Defendant Bitmain Inc.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 21, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record for the parties.

*/s/ Christopher R.J. Pace*
Christopher R.J. Pace