**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No. 1:18-cv-25106 (KMW)(EGT)

| | |
|---|---|
| UNITED AMERICAN CORP., a Florida company, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>)<br>) |
| BITMAIN, INC., SAINT BITTS LLC d/b/a BITCOIN.COM, ROGER VER, BITMAIN TECHNOLOGIES LTD., BITMAIN TECHNOLOGIES HOLDING COMPANY, JIHAN WU, PAYWARD VENTURES, INC. d/b/a KRAKEN, JESSE POWELL, AMAURY SECHET, SHAMMAH CHANCELLOR, and JASON COX, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

**DEFENDANTS PAYWARD VENTURES, INC.'S AND JESSE POWELL'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT**

Baker Marquart LLP
777 S. Figueroa Street
Suite 2850
Los Angeles, California 90017
T: +1 424 652 7800

Kobre & Kim LLP
201 South Biscayne Boulevard
Suite 1900
Miami, Florida 33131
T: +1 202 664 1907

*Attorneys for Defendants Payward Ventures, Inc. and Jesse Powell*

**TABLE OF CONTENTS**

Page(s)

INTRODUCTION ................................................................................................................... 1

DISCUSSION .......................................................................................................................... 3

I.   UAC's Complaint Fails To Plausibly Allege A Viable Antitrust Conspiracy Claim For Relief Against Defendants Kraken Or Powell ........................................................... 3

    a.   UAC Misstates The Legal Standard Applicable To Motions To Dismiss Antitrust Claims ................................................................................................. 3

    b.   Even Viewing The Alleged Acts As A Whole, UAC's Antitrust Conspiracy Claim Is Insufficiently Pled In The Complaint. ....................................................... 3

    c.   The Antitrust Conspiracy Alleged in the Complaint Must be Dismissed Because It Makes No Economic Sense ................................................................ 4

    d.   UAC's Conspiracy Theory Is Not Supported By Sufficient Factual Allegations Of Any Unlawful Anticompetitive Conduct On The Part Of Kraken Or Powell ........ 4

    e.   UAC Fails To State a Recognized "*Per Se*" Antitrust Offense ............................. 5

    f.   UAC Fails To State A Plausible "Rule Of Reason" Antitrust Claim ..................... 6

        i.   UAC's Complaint Does Not Define A Plausible Or Coherent Relevant Market ............................................................................................................. 6

        ii.   UAC's Complaint Does Not Allege Any Actual Or Potential Cognizable Antitrust Injury To Itself Or Competition As A Whole ............................. 7

II.   UAC's Complaint Fails To State Any Plausible Florida State Law Claims For Relief ..... 8

    a.   UAC's Negligent Representation Claim (Count II) Fails To Allege A Representation, A Misrepresentation Or Reliance ................................................. 8

    b.   The Negligence Claim (Count III) Fails To Allege A Duty, Breach Or Proximate Cause With Regard To Either Kraken Or Powell .................................................. 8

    c.   UAC's Equitable Estoppel Claim (Count IV) Fails ............................................... 9

    d.   UAC's Conversion Claim (Count VI) Fails To Allege Dominion Or Control ....... 9

CONCLUSION ...................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*All Care Nursing Service, Inc. v. High Tech Staffing Services, Inc.*,
  135 F.3d 740 (11th Cir. 1998) ................................................................................................. 6

*American Dental Association v. Cigna Corp.*,
  605 F.3d 1283 (11th Cir. 2010) ............................................................................................... 3

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................ 3

*Atlantic Richfield Co. v. USA Petroleum Co.*,
  495 U.S. 328 (1990) ................................................................................................................ 7

*Bair v. City of Clearwater*,
  196 So. 3d 577 (Fla. Dist. Ct. App. 2016) .............................................................................. 9

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................................ 3

*Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.*,
  441 U.S. 1 (1979) .................................................................................................................... 1

*Cargill, Inc. v. Monfort of Colorado, Inc.*,
  479 U.S. 104 (1986) ................................................................................................................ 7

*Carlock v. Pillsbury Co.*,
  719 F. Supp. 791 (D. Minn. 1989) .......................................................................................... 7

*Ceithaml v. Celebrity Cruises, Inc.*,
  207 F. Supp. 3d 1345 (S.D. Fla. 2016) ................................................................................ 8, 9

*City of Groton v. Connecticut Light & Power Co.*,
  662 F.2d 921 (2d Cir. 1981) .................................................................................................... 3

*Consultants & Designers, Inc. v. Butler Service Group, Inc.*,
  720 F.2d 1553 (11th Cir. 1983) ........................................................................................... 2, 5

*Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.*,
  732 F. 2d 480 (5th Cir. 1984) .................................................................................................. 7

*Duty Free Americas, Inc. v. Estee Lauder Cos., Inc.*,
  946 F. Supp. 2d 1321 (S.D. Fla. 2013) ................................................................................... 5

*Florida Department of Corrections v. Abril*,
    969 So. 2d 201 (Fla. 2007)..................................................................................................9

*Glynn-Brunswick Hosp. Authority v. Becton, Dickson and Company*,
    159 F. Supp. 3d 1361 (S.D. Ga. 2016)................................................................................6

*Green Country Food Market v. Bottling Group*,
    LLC, 371 F.3d 1275 (10th Cir. 2004)..................................................................................7

*Hall v. United Insurance Company of America*,
    367 F.3d 1255 (11th Cir. 2004) ........................................................................................10

*Hawaiian Airlines, Inc. v. AAR Aircraft Services, Inc.*,
    167 F. Supp. 3d 1311 (S.D. Fla. 2016) ...............................................................................8

*Intergraph Corp. v. Intel Corp.*,
    195 F.3d 1346 (Fed. Cir. 1999)...........................................................................................3

*J & J Sports Production, Inc. v. Pit Restaurant, Inc.*,
    Case No. 14-CV-24264-WILLIAMS, 2015 WL 12781196 (S.D. Fla. Feb. 20,
    2015) ...................................................................................................................................9

*Jacobs v. Tempur-Pedic International, Inc.*,
    626 F.3d 1327 (11th Cir. 2010) ..........................................................................................8

*Kendall v. VISA U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ............................................................................................5

*Levine v. Century Medical Affiliates, Inc.*,
    72 F.3d 1538 (11th Cir. 1996) ............................................................................................5

*Magluta v. Samples*,
    256 F.3d 1283 (11th Cir. 2001) ..........................................................................................8

*Mesa v. Pennsylvania Higher Education Assistance*,
    No. 16-24577, 2018 WL 1863743 (S.D. Fla. Mar. 15, 2018)..............................................8

*Metzler v. Bear Automobile Service Equipment Co.*,
    19 F. Supp. 2d 1345 (S.D. Fla. 1998) .................................................................................7

*Pacific Bell Telephone Co. v. linkLine Communications, Inc.*,
    555 U.S. 438 (2009)............................................................................................................3

*Regency Oldsmobile, Inc. v. General Motors Corp.*,
    723 F. Supp. 259 (D.N.J. 1989) ..........................................................................................7

*Retina Assocs P.A. v. Southern Baptist Hospital of Florida, Inc.*,
    105 F.3d 1376 (11th Cir. 1997) ..........................................................................................6

*Senfeld v. Bank of Nova Scotia Trust (Cayman) Ltd.*,
    450 So. 2d 1157 (Fla. Dist. Ct. App. 1984) ............................................................................10

*Spanish Broadcasting System v. Clear Channel Communications*,
    376 F.3d 1065 (11th Cir. 2004) .................................................................................................3

*In re Sulfuric Acid Antitrust Litig*ation,
    703 F.3d 1004 (7th Cir. 2012) ...................................................................................................5

*Tank Tech, Inc. v. Valley Tank Testing, L.L.C.*,
    244 So. 3d 383 (Fla. Dist. Ct. App. 2018) .................................................................................9

*United States v. Joyce*,
    895 F.3d 673 (9th Cir. 2018) .....................................................................................................6

*Virgilio v. Ryland Group, Inc.*,
    680 F.3d 1329 (11th Cir. 2012) .................................................................................................9

*Williamson Oil Co. v. Philip Morris USA*,
    346 F.3d 1287 (11th Cir. 2003) .................................................................................................4

## INTRODUCTION

United American Corp.'s ("UAC") consolidated opposition, through its absence of responsive arguments, illustrates for the Court that legally sufficient allegations do not exist to support the claims in the complaint against Payward Ventures, Inc. ("Kraken") and Jesse Powell, as well as the other defendants. Indeed, UAC's opposition fails even to address most arguments in the various motions to dismiss. Those arguments include, as examples, UAC's failure to plead: (1) any anticompetitive effect on any relevant market; (2) any actionable antitrust misconduct; (3) a plausible conspiracy that makes economic sense; (4) any antitrust injury; (5) any actionable false statement or omission; or (5) a causal link to any recoverable damages. Each of UAC's purported claims for relief are deficient and dismissal with prejudice is appropriate given plaintiff's failure to address in its opposition the glaring deficiencies raised in the motions to dismiss.

Kraken and Powell can agree with two points raised in UAC's opposition: (1) Kraken is a "neutral and open [cryptocurrency] exchange," and (2) "[n]o court has yet decided whether the hijacking of a single cryptocurrency network is a per se automatic violation of the federal antitrust laws." (Opp. at 8, 10.)

The first point is a dispositive acknowledgement by UAC that it is not a competitor of Kraken. After all, UAC describes itself as a developer/supplier of mining equipment and/or "miner" on the Bitcoin Cash blockchain, and UAC acknowledges that Kraken is in the cryptocurrency *exchange* business. (Opp. at 7-8; Compl. ¶¶ 13, 36-37.) UAC and Kraken are therefore not competitors in the same relevant market (*i.e.,* there is no factual dispute that exchanges and miners do not compete), even if a "market" could properly be defined (and it cannot). Because they are not competitors, among other reasons, UAC does not have standing to sue for a cognizable antitrust injury. Nor does UAC allege it is a customer of Kraken or that it had any business relationship at all with Kraken. Because there is no dispute as to this point, the antitrust claim must be dismissed as against Kraken and against Powell (who as an individual is neither an exchange or a miner).

The second point we can agree with UAC on is a concession by UAC that its antitrust claim is unprecedented. That is precisely why the case law does not support *per se* antitrust scrutiny here -- such treatment requires that the courts have "considerable experience" with the business practices at issue. *Broadcast Music, Inc. v. Columbia Broadcasting System, Inc*., 441

1

U.S. 1, 9 (1979); *see also Consultants & Designers, Inc. v. Butler Serv. Grp., Inc*., 720 F.2d 1553, 1562 (11th Cir. 1983) (*Per se* treatment is to be applied "only when history and analysis have shown that in sufficiently similar circumstances the rule of reason unequivocally results in a finding of liability.")  There is absolutely *no j*udicial history or experience with the cryptocurrency industry that would warrant or justify application of the *per se* rule in this case, and UAC effectively concedes as much in its opposition.

      Finally, the singular factual allegation that UAC relies upon to try to tie Kraken and Powell into their flawed antitrust theory is patently false, and a reckless attempt by UAC to maximize the number of defendants to cram into this misguided lawsuit.  Specifically, the centerpiece of UAC's thesis that purportedly links Kraken to the conspiracy is the mistaken factual premise that Andreas Brekken, who allegedly made conspiratorial comments in a YouTube video, is "a software engineer at *Kraken* (the exchange)." (Opp. at 7.)  Brekken, however, is *not* an employee or software engineer at Kraken and concluded his contracted services by March 2017.[1]  In any event, where Brekken was employed at the time the vague and confusing YouTube video was made in November 2018 is irrelevant, since the content of the video does not support any claim for relief alleged in UAC's complaint.  It is, nevertheless, necessary to illustrate the recklessness with which UAC alleges again in its opposition papers that Brekken currently works at Kraken (and did when the video was made) when in fact he ceased providing services in any capacity for Kraken by March 2017, a fact that could have been confirmed with minimal effort by UAC before filing its complaint, and certainly by the time it filed its brief in opposition to the motions to dismiss.  This completely eviscerates UAC's conspiracy claim as against Kraken and Powell.

      All of the claims against Kraken and Powell should be dismissed with prejudice.

---

[1] Counsel for Kraken and Powell are duty bound to bring this to the Court's attention and correct the record.  It is particularly important here given that the complaint alleges no other plausible conduct other than mere conclusions, that would even arguably tie either Kraken or Powell to the alleged antitrust conspiracy.

# DISCUSSION

**I.     UAC's Complaint Fails To Plausibly Allege A Viable Antitrust Conspiracy Claim For Relief Against Defendants Kraken Or Powell**

    **a.     UAC Misstates The Legal Standard Applicable To Motions To Dismiss Antitrust Claims**

The Supreme Court's "decision in *Twombly* expanded the pleading standard 'in all civil actions and proceedings,'" and applies equally to antitrust as well as other civil actions. *Ashcroft v. Iqbal,* 556 U.S. 662, 684 (2009). *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) also established that the "plausibility" standard for Fed.R.Civ.P. 12(b)(6) motions applies to antitrust claims. Consequently, UAC's reliance on *Spanish Broadcasting System v. Clear Channel Communications*, 376 F.3d 1065 (11th Cir. 2004) (a pre-*Twombly* decision) is misplaced. Likewise, UAC's reliance on the two out-of-district, unpublished decisions that quote *Spanish Broadcasting* for the proposition that "Rule 12(b)(6) dismissals are particularly disfavored in fact-intensive discovery cases," is similarly misplaced. (Opp. at 3.) Indeed, in a post-*Twombly* decision, the Eleventh Circuit has expressly confirmed that the *Twombly* plausibility standard applies to antitrust actions. *American Dental Ass'n. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010). The incorrect standard proposed by UAC in its opposition should therefore be rejected.

    **b.     Even Viewing The Alleged Acts As A Whole, UAC's Antitrust Conspiracy Claim Is Insufficiently Pled In The Complaint**

UAC argues that "the Court must examine the allegations of the Complaint as a whole." (Opp. at 3.) But whether the allegations set forth in the complaint are analyzed as a whole, or parsed in isolation, when the smoke clears it is evident that UAC has not stated any actionable claims, particularly against Kraken or against Powell. According to the courts that have addressed this issue, the sum of a series of zeroes is still zero.

The Supreme Court rejected a similar effort to cobble together a series of non-actionable acts, dismissing a Sherman Act claim that was "nothing more than an amalgamation of a meritless claim at the retail level and a meritless claim at the wholesale level." *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 452 (2009); *accord Intergraph Corp. v. Intel Corp.*, 195 F.3d 1346, 1366-67 (Fed. Cir. 1999); *City of Groton v. Conn. Light & Power Co.*, 662 F.2d 921, 928-29 (2d Cir. 1981) ("[W]e reject the notion that if there is a fraction of validity to each of the basic claims and the sum of the fractions is one or more, the plaintiffs have proved a

violation of section 1 or section 2 of the Sherman Act.") To be clear, there is not even "a fraction of validity" to any of UAC's claims and hence UAC's implausible allegations of antitrust misconduct are even less viable.

        **c.    The Antitrust Conspiracy Alleged In The Complaint Must Be Dismissed Because It Makes No Economic Sense**

To survive a motion to dismiss and be permitted to advance, an antitrust claim must make "economic sense." *Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287, 1302 (11th Cir. 2003). UAC makes no effort in its opposition (or the complaint itself) to explain how the alleged conspiracy is logical or plausible from an economic standpoint, nor ascribe any rational motive on the part of Kraken or Powell to purportedly participate in the alleged conspiracy, assuming it existed. Rather, UAC concedes, as it must, that it is not a competitor to Kraken or Powell, they are not in the same businesses, and that UAC does not have any business relationship with either of these defendants. (Opp. 7-8; Compl. ¶¶ 13, 36-37.) UAC provides no reason, as the law requires, as to why either Kraken or Powell would have any economic incentive to participate in any of the alleged misdeeds, injure UAC, or benefit from UAC's demise.

Moreover, according to UAC, a cornerstone of its conspiracy claim as it pertains to Kraken is that Brekken (incorrectly alleged to be an active employee of Kraken) made statements as a co-conspirator in furtherance of the alleged conspiracy. UAC's conspiracy theory, however, makes no sense in light of the fact that it points to no evidence that Brekken agreed to *anything* with any of the defendants. And this also overlooks the fact that Brekken was *never* an employee of Kraken and had concluded his work as a contractor by March 2017. Brekken was therefore not an employee at any time relevant to the complaint's allegations. In any event, regardless of where Brekken worked, his alleged statements in the YouTube video, which are vague and indecipherable and which do not reflect any of the defendants agreeing to join a conspiracy or being in one already, are insufficient to support any counts in the complaint.

        **d.    UAC's Conspiracy Theory Is Not Supported By Sufficient Factual Allegations Of Any Unlawful Anticompetitive Conduct On The Part Of Kraken Or Powell**

Kraken and Powell in their opening brief explained that even if they had engaged in the alleged conduct, none of those actions rise to the level of unlawful anticompetitive conduct. (Motion at 7-9.) UAC chose not to amend its complaint and does not address any of those

arguments in its opposition or attempt to distinguish or address a single case cited by Kraken and Powell as to these case dipositive arguments.

In its 122-paragraph complaint, UAC could only muster *two* paragraphs (numbers 74 and 76) to even mention Kraken and Powell. These incorrect and scant allegations simply fail to meet the standard of specificity required to state an antitrust conspiracy claim. The scope and nature of the alleged conspiratorial agreements are not sufficiently identified, nor are the persons, dates, places or plausible reason(s) for the purported conspiratorial actions. *See Kendall v. VISA U.S.A., Inc.*, 518 F.3d 1042, 1047-48 (9th Cir. 2008) (antitrust complaint must answer the basic questions of "who, did what, to whom (or with whom), where, and when?"); *see also Duty Free Americas, Inc. v. Estee Lauder Cos., Inc.,* 946 F. Supp. 2d 1321, 1332 (S.D. Fla. 2013) (same).

Nor can the complaint sufficiently or plausibly allege a meeting of the minds or a conscious commitment to an unlawful scheme among the defendant co-conspirators, as is required to state an actionable conspiracy antitrust claim, because Brekken is not and was not at any relevant time an employee or agent of defendants Kraken or Powell. Because there is no relationship between Brekken and either Kraken or Powell, his alleged ambiguous actions or statements cannot be imputed to either of them.

### e. UAC Fails To State A Recognized "*Per Se*" Antitrust Offense

*Per se* treatment of an antitrust claim is reserved only for those cases in which "history and analysis have shown that in sufficiently similar circumstances the rule of reason unequivocally results in a finding of liability." *Consultants & Designers*, 720 F.2d at 1562; *see also Levine v. Cent. Fla. Med. Affiliates, Inc.*, 72 F.3d 1538, 1550 (11th Cir. 1996) ("[T]his Court is loath to condemn a practice as per se violative of the antitrust laws unless experience has shown that it always leads to anticompetitive effects in the market.").

By UAC's *own* admission this is not such a case. UAC freely concedes that "this is a case of first impression" and this "is the first antitrust action" brought in the United States involving cryptocurrency. (Opp. at 10.) Indeed, other Courts have refused to apply *per se* treatment in similar novel circumstances. "It is a bad idea to subject a novel way of doing business (or an old way in a new and previously unexamined context . . .) to per se treatment under antitrust law." *In re Sulfuric Acid Antitrust Litig.*, 703 F.3d 1004, 1011 (7th Cir. 2012). UAC continues to weaken its argument for the application of the per se rule by stating that "[n]o

court has yet decided whether the hijacking of a single cryptocurrency network is a *per se* violation of the federal antitrust laws." (Opp. at 10.).

UAC nevertheless argues in its opposition that the mishmash of alleged misconduct deserves *per se* treatment because it is purportedly "akin to bid rigging" – citing to the Ninth Circuit's opinion in a criminal bid rigging case, *United States v. Joyce*, 895 F.3d 673 (9th Cir. 2018). However, there is no appropriate analogy between the conduct alleged in the complaint and bid rigging. The conspiracy alleged by UAC does not involve any bidding process, bids, awards, or any conduct relating to pricing. An analogy to bid rigging would therefore be farfetched and unprecedented.

There is no dispute between the parties that Kraken is a cryptocurrency exchange that provides a location for its customers to buy, sell, and trade various cryptocurrencies (such as Bitcoin, Ethereum, and Bitcoin Cash) for each other or for fiat currencies (such as U.S. Dollars and Yen). It is also undisputed that UAC, on the other hand, is in the business of developing and supplying mining equipment for mining of Bitcoin Cash. (Compl. ¶¶ 13, 36-37.) UAC does not allege (nor can it) that UAC and Kraken are competitors, that UAC is a customer of Kraken, or that the two have any business relationship at all. There is a major disconnect between the antitrust laws and UAC's far-out implausible "bid rigging" theory of liability.

    **f.**   **UAC Fails To State A Plausible "Rule Of Reason" Antitrust Claim**

Because UAC's antitrust claim cannot be afforded *per se* scrutiny as a matter of law, its claim must meet all of the more stringent requirements of a "rule of reason' analysis. Although it does not appear that UAC is even arguing such a case, UAC's claims would fail to state a cause of action under the rule of reason test as well.

    **i.**   **UAC's Complaint Does Not Define A Plausible Or Coherent Relevant Market**

To establish a "rule of reason" claim under Section 1 of the Sherman Act, a plaintiff must define a plausible relevant product market. *Retina Assocs P.A. v. So. Baptist Hosp. of Fla., Inc.*, 105 F.3d 1376, 1383 (11th Cir. 1997). UAC has not met its obligation to define a relevant market within which to asses market power or any effect of the alleged conduct on competition in such a market. *Glynn-Brunswick Hosp. Authority v. Becton, Dickson and Company*, 159 F. Supp. 3d 1361, 1378 (S.D. Ga. 2016) ("A failure to delineate either the product or geographic dimensions of the relevant market is fatal to an antitrust claim."); *All Care Nursing Serv., Inc. v.*

6

*High Tech Staffing Servs., Inc*., 135 F.3d 740, 749 (11th Cir. 1998) (same).  A relevant product market must include *all* reasonable substitutes for a product.

In its opposition, without citation to any paragraph in its complaint, UAC offers two relevant product market definitions: (1) "the cryptocurrency market for Bitcoin Cash," and/or (2) "the Bitcoin blocks being mined by miners throughout the world on the Bitcoin Cash blockchain (now Bitcoin Cash ABC." (Opp. at 7 & 10, n.3).  Both of these proposed relevant product markets are impermissibly too narrow to pass antitrust muster.  Neither have been recognized by any court to be properly defined relevant markets for antitrust purposes, and UAC fails to plead any facts to support such a narrow market definition(s).

There are hundreds, if not thousands, of competing forms of cryptocurrencies in existence throughout the world.  Limiting the relevant market in this case to a *single* type or brand of cryptocurrency, Bitcoin Cash, would be unprecedented and not appropriate.  It is well-established in antitrust jurisprudence that generally relevant markets cannot be limited to a single manufacturer's product or branded product.  *See e.g*. *Metzler v. Bear Auto. Serv. Equip. Co*., 19 F. Supp. 2d 1345, 1355 (S.D. Fla. 1998) ("[A]bsent exceptional market conditions, one brand in a market of competing brands cannot constitute a relevant product market."), quoting *Domed Stadium Hotel, Inc. v*. *Holiday Inns, Inc*., 732 F.2d 480, 488 (5th Cir. 1984); *Regency Oldsmobile, Inc. v. Gen. Motors Corp*., 723 F. Supp. 259, 267-68 (D.N.J. 1989) (General Motors' products did not constitute relevant market); *Carlock v. Pillsbury Co*., 719 F. Supp. 791, 843 (D. Minn. 1989) (Haagen-Dazs ice cream is not so distinctive that no other ice cream can be a reasonable substitute); *Green Country Food Mkt. v. Bottling Group*, LLC, 371 F.3d 1275, 1282-85 (10th Cir. 2004) (Pepsi beverages are not a relevant product market).

### ii. UAC's Complaint Does Not Allege Any Actual Or Potential Cognizable Antitrust Injury To Itself Or Competition As A Whole

In its opposition, UAC does not explain how any of the allegations in its complaint demonstrate the requisite showing of antitrust injury, nor could it.  Indeed, UAC is complaining about an *increase* in competition, not an unlawful reduction in competition.  The Supreme Court has repeatedly held that "[a] loss or damage due merely to increased competition does not constitute [antitrust] injury.").  *Cargill, Inc. v. Monfort of Colo., Inc*., 479 U.S. 104, 122 (1986); *see also Atl. Richfield Co. v. USA Petroleum Co*., 495 U.S. 328, 344 (1990).  Nor has UAC pleaded any facts to show any plausible or recognized actual or potential effects on competition.

*Jacobs v. Tempur-Pedic Int'l, Inc*., 626 F.3d 1327, 1336 (11th Cir. 2010).  These incurable deficiencies require dismissal of UAC's antitrust claim with prejudice.

## II. UAC's Complaint Fails To State Any Plausible Florida State Law Claims For Relief

Neither the vague and scattershot factual allegations in UAC's complaint, nor UAC's conclusory assertions in its opposition, identify any actionable misconduct on the part of Kraken or Powell.  Plaintiff continues to rely on allegations that impermissibly lump together the "Defendants."  This deficiency alone merits dismissal as to all defendants, but especially with regard to Kraken and Powell.  This type of group pleading is not allowed.  *See, e.g.., Magluta v. Samples*, 256 F.3d 1283, 1284 (11th Cir. 2001); *Mesa v. Pa. Higher Educ. Assistance*, No. 16-24577, 2018 WL 1863743, at *3 (S.D. Fla. Mar. 15, 2018).   For additional reasons, each of UAC's state law claims fail to state a claim against Kraken and Powell.

### a. UAC's Negligent Representation Claim (Count II) Fails To Allege A Representation, A Misrepresentation Or Reliance

A claim for negligent misrepresentation must be pled to the heightened standards mandated by Fed. R. Civ. P. 9(b).  *See Ceithaml v. Celebrity Cruises, Inc*., 207 F. Supp. 3d 1345, 1353 (S.D. Fla. 2016).  UAC has not met its burden of specifically alleging "the 'who, what, when, where, and how'" of any negligent misrepresentation or omission with respect to either Kraken or Powell.  *Id.*  No cause of action for negligent misrepresentation can survive this failure. (Motion at 15-16 (implied misrepresentations not actionable)).  Nor does the complaint set forth that Kraken or Powell made any statements (let alone misstatements of fact) negligently or with any intent that UAC would rely on them, which would be implausible in any event given that the complaint does not allege that UAC had any relationship (fiduciary or otherwise) with either of them.  *See Ceithaml*, 207 F. Supp. 3d at 1353.

Finally, any allegation of UAC's reliance on statements by either Kraken or Powell (assuming such statements existed) would be "manifestly unreasonable" in light of UAC's sophistication.  *Hawaiian Airlines, Inc. v. AAR Aircraft Servs., Inc*., 167 F. Supp. 3d 1311, 1322 (S.D. Fla. 2016).  This cause of action should be dismissed with prejudice.

### b. The Negligence Claim (Count III) Fails To Allege A Duty, Breach Or Proximate Cause With Regard To Either Kraken Or Powell

For most of the same reasons that UAC's negligent representation fails, so does its attempt to state a viable claim for negligence against Kraken or Powell.  Negligence requires a showing of four basic elements: (1) a duty of care owed to the plaintiff; (2) a tortious breach of

8

that duty; (3) a causal link between the breach and damages; and (4) resulting damage to the plaintiff. *See Florida Dept. of Corr. v. Abril*, 969 So. 2d 201, 209 (Fla. 2007); *see also Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329, 1339 (11th Cir. 2012).

UAC's complaint misses the mark as to all four elements of the offense. The complaint does not allege that Kraken or Powell owed any cognizable duty of care to UAC or properly define a specific standard of care. Without alleging that Kraken had any relationship with or even knowledge of UAC, the complaint does not, and cannot, plausibly allege a duty or extraordinary circumstance that would impose on Kraken, let alone on Powell individually. *See Tank Tech, Inc. v. Valley Tank Testing, L.L.C.*, 244 So. 3d 383, 394 (Fla. Dist. Ct. App. 2018) (dismissing negligence claim for economic injuries where "there [was] neither a special relationship between [the parties] nor any extraordinary circumstance that would require imposition of a duty"). Nor for that matter does the complaint attempt to state how Kraken (much less Powell in his individual capacity) breached any purported duty, or how the conduct of either of them proximately caused any harm to UAC. To the contrary, the allegations in the complaint refute a causal link: Kraken and Powell are alleged to have committed their tortious acts (adopting the BCH ticker symbol and recognizing checkpoints (Compl. ¶ 76)) only *after* the alleged "hostile takeover" or "hijacking" of the Bitcoin Cash network took place. Accordingly, this claim belongs in the dismissal heap as well.

### c.     UAC's Equitable Estoppel Claim (Count IV) Fails

It appears that UAC has abandoned or withdrawn its "equitable estoppel" claim. In any event, such a claim is not a valid or recognized claim for affirmative relief. *See, e.g., Bair v. City of Clearwater*, 196 So. 3d 577, 584 (Fla. Dist. Ct. App. 2016) ("equitable estoppel is a defensive doctrine rather than a cause of action"). As with the unjust enrichment (Count V) and injunctive relief (Count VII), claims that were *not* pled against Kraken or Powell, Count IV must too be dismissed.

### d.     UAC's Conversion Claim (Count VI) Fails To Allege Dominion Or Control

UAC's conversion claim fails because the complaint does not allege, other than in conclusory form, that either Kraken or Powell wrongfully exercised "dominion" over any property belonging to UAC. *See J & J Sports Prod., Inc. v. Pit Rest., Inc.*, Case No. 14-CV-24264-WILLIAMS, 2015 WL 12781196, at *2 (S.D. Fla. Feb. 20, 2015). The complaint fails to

9

allege either UAC's ownership interest in the Bitcoin Cash network *or* Kraken or Powell's control over it. Further, the complaint does not, and cannot, allege that Kraken (much less Powell individually) controlled any of UAC's Bitcoin Cash cryptocurrency or its mining operations. Finally, UAC—who is a stranger to both Kraken and Powell— does not allege, and cannot possibly show, that Kraken or Powell intended to deprive UAC of any property it owned and convert it to their own use. *See Senfeld v. Bank of Nova Scotia Trust (Cayman) Ltd*., 450 So. 2d 1157, 1161 (Fla. Dist. Ct. App. 1984). Consequently, this purported claim is a non-starter and should be dismissed.

## CONCLUSION

For the foregoing reasons, UAC's complaint should be dismissed with prejudice.[2]

Dated: March 21, 2019

Respectfully Submitted,

/s/ Andrew C. Lourie_____
Andrew C. Lourie (Florida Bar No. 87772)
Andrew.Lourie@kobrekim.com
KOBRE & KIM LLP
201 South Biscayne Boulevard, Suite 1900
Miami, Florida 33131
T: +1 202 664 1907
F: +1 305 967 6120

- and –

Brian E. Klein (*pro hac vice*)
bklein@bakermarquart.com
Donald R. Pepperman (*pro hac vice*)
dpepperman@bakermarquart.com
BAKER MARQUART LLP
777 S. Figueroa Street, Suite 2850
Los Angeles, California 90017
T: +1 424 652 7800
F: +1 424 652 7850

*Attorneys for Defendants Payward Ventures, Inc. and Jesse Powell*

---

[2] A district court may properly deny leave to amend where the complaint contains no potentially meritorious claims and amendment "would be futile." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262-63 (11th Cir. 2004).

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 21, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record for the parties.

/s/ Andrew C. Lourie_____
Andrew C. Lourie