```
 1                UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF FLORIDA
 2
                    Case No. 18-25106-KMW
 3
   UNITED AMERICAN CORP.,        )
 4                               )
        PLAINTIFF,               )
 5                               )
        -v-                      )
 6                               )
   BITMAIN, INC., ET AL.,        )
 7                               )
        DEFENDANTS.              )   Miami, Florida
 8                               )   April 8, 2019
   _____)
 9


10     TRANSCRIPT OF TELEPHONIC DISCOVERY HEARING PROCEEDINGS

11          BEFORE THE HONORABLE CHRIS M. MCALILEY

12              UNITED STATES MAGISTRATE JUDGE

13


14  Appearances:

15  (On Page 2.)

16
    Reporter                    Stephen W. Franklin, RMR, CRR, CPE
17  (561)514-3768               Official Court Reporter
                                701 Clematis Street
18                              West Palm Beach, Florida 33401
                                E-mail:  SFranklinUSDC@aol.com
19

20

21

22

23

24

25
```

```
 1   Appearances:

 2   FOR THE PLAINTIFF          Michael O. Mena, ESQ.
                                Akerman, LLP
 3                              Three Brickell City Centre
                                98 Southeast Seventh Street
 4                              Miami, FL 33131

 5   FOR THE DEFENDANTS         Christopher R.J. Pace, ESQ.
                                Jones Day
 6                              600 Brickell Avenue, Suite 3300
                                Miami, FL 33131
 7   -and-
                                Mark W. Rasmussen, ESQ.
 8                              Jones Day
                                2727 North Harwood Street
 9                              Suite 500
                                Dallas, TX 75201
10   -and-
                                Andrew C Lourie, ESQ.
11                              Kobre & Kim, LLP
                                800 Third Avenue, 6th Floor
12                              New York, NY 10022
     -and-
13                              Ian Simmons, ESQ.
                                O'Melveny & Myers
14                              1625 Eye Street, Northwest
                                Washington, DC 20006
15   -and-
                                Melissa C. Pallett-Vasquez, ESQ.
16                              Bilzin, Sumberg, Baena,
                                Price & Axelrod
17                              1450 Brickell Avenue, Suite 2300
                                Miami, FL 33131
18
                                  *  *  *  *  *
19

20

21

22

23

24

25
```

```
 1          (Call to the order of the Court at 3:00 p.m.)
 2          THE COURTROOM DEPUTY:  Calling the case United
 3   American Corp. versus Bitmain, Incorporated, et al., case
 4   number 18-25106-CIVIL, Judge Williams.
 5          THE COURT:  All right.  Good afternoon.
 6          Let's start with appearances beginning with the
 7   plaintiff, please.
 8          MR. MENA:  This is Michael Mena, from Akerman, LLP,
 9   on behalf of the plaintiff, United American Corp.
10          THE COURT:  Okay.  And let's see, excuse me one
11   minute.  Let me -- I'm pulling up my docket here.
12          The defendant Bitmain.
13          MR. PACE:  Good afternoon, Your Honor.  This is
14   Chris Pace, from Jones Day.  Also on the phone with me is Mark
15   Rasmussen, from Jones Day, and we represent Bitmain, Inc.
16          THE COURT:  Okay.  And hold on.  Give me a moment.
17   I'm making some notes here.
18          Okay.  And then do we have defendant, is it, Powell?
19          MR. LOURIE:  Yes, Your Honor, Andrew Lourie, from
20   Kobre & Kim, representing defendant Powell and also Payward
21   Ventures.
22          THE COURT:  All right.  I'm make something notes.
23          And defendant, is it Shammah Chancellor?
24          MR. SIMMONS:  Yes, Your Honor.  Ian Simmons,
25   O'Melveny & Myers.
```

```
 1              THE COURT:  Okay.  Okay.  And is there anyone else
 2    on the phone?
 3              MS. PALLETT-VASQUEZ:  Yes, it's Melissa
 4    Pallett-Vasquez, from Bilzin Sumberg.  I also represent as
 5    local counsel Mr. Chancellor.
 6              THE COURT:  Tell me your last name again.
 7    Pallett-Vasquez, is that right?
 8              MS. PALLETT-VASQUEZ:  Pallett-Vasquez, that's
 9    correct.
10              THE COURT:  Okay.  Is that every --
11              MS. PALLETT-VASQUEZ:  As well as Mr. Cox, yes.
12              THE COURT:  As well as -- oh, defendant Cox.  Okay.
13              MS. PALLETT-VASQUEZ:  Correct.
14              THE COURT:  Okay.  Is that everybody on the phone?
15    I'll just -- if it's quiet for a minute I'll know that it is.
16              Okay.  So as I stated in the order that I issued at
17    the end of last week when, in that order, I recognized that
18    service of Jason Cox was timely but wanted, rather than to
19    pick a somewhat arbitrary deadline on my end, I wanted to take
20    about -- have about 15 minutes and just get your thoughts on
21    both sides about a reasonable timeframe to allow the plaintiff
22    to try to serve the remaining defendants, foreign defendants.
23    And I think there are one, two, three, four, five, six, if
24    they're still the six that were identified in the motion that
25    plaintiff filed for an enlargement of time to serve.
```

1          So let me start with plaintiff's counsel, and if you

2     would, when you all speak, state your name again, as much for

3     me as for any court reporter in case any of you would ever

4     want to get a transcript of this.

5          So let's start with plaintiff's counsel.  Having

6     just a blank check and some open-ended period of time is not

7     going to work.

8          MR. MENA:  Understood.

9          THE COURT:  And you mentioned in your motion that

10    you understand it could take as much as two years to serve

11    somebody in China.  That plainly is not going to work.  That

12    is way beyond anything that we could contemplate.  But I would

13    hear a specific deadline or proposal, if you'd like to make

14    one, and support it with some information about what you've

15    been doing and reasonable prospects for service.  That's the

16    kind of information I think would be helpful in informing a

17    decision.

18         MR. MENA:  Thank you, Your Honor.  Michael Mena,

19    again, on behalf of the plaintiff.

20         THE COURT:  Okay.

21         MR. MENA:  You're correct that there are six foreign

22    defendants remaining; three individuals and three corporate

23    entities.  We have retained a firm to assist us, a service of

24    process firm, to assist us with perfecting service on all of

25    these six defendants.

```
 1              THE COURT:  Is that the Judicial Process & Support
 2   that you mentioned in your motion?
 3              MR. MENA:  That's correct, Your Honor.
 4              THE COURT:  Okay, okay.  Do --
 5              MR. MENA:  And we've --
 6              THE COURT:  Go ahead, I'm sorry.
 7              MR. MENA:  No, that's okay.
 8         We have retained them to start the process of
 9   translating pleadings, and so we have one case where it would
10   involve letters rogatory, others where it's Hague Convention.
11              The other complicated part of this for us is on a
12   few of these confirming addresses, we have two of the six
13   defendants where we initially tried to serve at domestic
14   addresses unsuccessfully.  We now believe that they are
15   abroad, and we are in the process of trying to confirm
16   addresses on some of those.
17              And the import of that, Your Honor, is that in
18   speaking to our process server with this process, you know,
19   they indicated that in certain instances, for example in
20   China, if you go down the long and arduous path of trying to
21   serve an individual in China and then it turns out that
22   they're not at that address, it really creates a significant
23   delay where you have to sort of start that process over again.
24   And so we're trying to put all effort into making sure that we
25   get the right address and that we serve these people
```

1    appropriately.

2             THE COURT:  Well, when did you --

3             MR. MENA:  I understand that --

4             THE COURT:  When did you retain that firm?

5             MR. MENA:  I would have to get you an exact date.

6    It would have been, I want to say, in February, Your Honor.

7             THE COURT:  Okay.  And I guess I'm wondering --

8    let's see, you filed your complaint --

9             MR. MENA:  December.

10            THE COURT:  -- in December.

11            Knowing you had foreign defendants, why not retain

12   them right away?

13            MR. MENA:  Frankly, Your Honor, it took us some time

14   to get our ducks in a row with our client.  It was a

15   significant complaint.  Then we had motion to dismiss

16   briefing.  And, you know, I don't dispute that we maybe could

17   have started more quickly, but, you know, it took us some time

18   to get everything organized, and now that we are organized

19   we're moving forward with it.

20            I frankly don't think that, you know, in talking to

21   our process server, what they've told us is that, and what I

22   would propose, Your Honor, today, and obviously you're going

23   to hear from everybody, but they say in China and in most of

24   these countries that it's highly unlikely we could get service

25   in less than six months.

```
 1                THE COURT:  Uh-huh.

 2                MR. MENA:  And what they've proposed is -- you know,

 3    I informed them I was having this hearing --

 4                THE COURT:  Well, okay.  Well, that's -- excuse me

 5    for one second.

 6                Okay.  China, six months.  But we have China,

 7    France, Cayman Islands, Japan, St. Kitts.  So China it sounds

 8    like the biggest challenge, but is six months what you're

 9    hearing for other countries also?

10                MR. MENA:  In some of these, Your Honor, like

11    France, the estimate I got is three to six months from now.

12    So France was a little better.

13                You know, what I would propose, again, is if we're

14    going to set a deadline here today, what I would -- what our

15    request would be is if we could set a deadline of six months,

16    and if you want a status report in the interim, maybe every 60

17    days or, you know, whatever you think was appropriate, we

18    would be happy to do that.

19                And the other point I would add that I think is

20    important, Your Honor, is we're really not trying to, like I

21    said, it's not delaying the rest of the case.  Motions to

22    dismiss have been fully briefed and with very minimal

23    extension and delay.  And so we are moving forward with the

24    case.  We're not trying to slow things down in any way, but

25    there are some challenges associated with this.
```

```
 1              THE COURT:  Well, I -- I sure believe that you don't

 2    want to slow down the case, but the truth is this does.  I

 3    mean, the case needs to be managed in an orderly way, and we

 4    don't want to, on the Court's end, be inefficient in how we

 5    devote time to the case.  We don't want to focus on motions to

 6    dismiss, get that done and then have a whole new round of

 7    them.  And I'm sure that the same is true on everybody's side;

 8    for lawyers, too.

 9              So how do you propose, Mr. Mena, if -- and I'm not

10    expressing any opinion on what's reasonable yet, but let's

11    take your six-month idea.  How would you propose to manage

12    this case?  What would the scheduling order look like?  And if

13    six months down the road we get a number of new plaintiffs,

14    what do you suggest how this is managed?

15              MR. MENA:  Well, I think it's going to depend on how

16    long it takes us to get a ruling on the motion to dismiss.

17    And you know, again, that's fully briefed at this point.

18    If -- you know, depending on whether that requires any amount

19    of amendment, obviously that would, you know, change the

20    scheduling order and the import of this.  If it doesn't, then

21    we would act accordingly.  That's why I think interim status

22    reports, where we can navigate those types of issues, would be

23    appropriate.

24              THE COURT:  Well, let me --

25              MR. MENA:  Again, to not slow things down.
```

```
 1                THE COURT:  Well, let me ask you this.  And I can't

 2    speak for Judge Williams; she controls a scheduling order.

 3    One possibility would be to give you -- say you got six

 4    months, to stay the case for the period of time, for that

 5    period of time.  So, you know, the clock would be stopped, and

 6    your lawsuit wouldn't move forward.  You'd get -- just for

 7    argument's sake, let's say that you got your six-month period.

 8    Why shouldn't the Court do that?

 9                MR. MENA:  I just don't think that's necessary at

10    this point.  Again, the case, despite the fact that these

11    parties haven't been served, the case has been otherwise

12    moving forward.  If, at some point, we get to a point where,

13    you know, we have a final complaint that survived the motions

14    to dismiss, I think we can cross that bridge at that point.

15    But, again, I think at this point it really hasn't caused any

16    delay, and so it's a hard question to answer until we get to

17    that point of the case.

18                We're certainly not looking to stay the case, but

19    we'd obviously be cognizant of any prejudice that would be

20    caused by this in terms of discovery and things like that, and

21    we'd work with the defendants on that.

22                THE COURT:  And remind me.  I'm just looking at the

23    docket right now.  I don't think there's a scheduling order

24    yet, is that right?

25                MR. MENA:  That's correct.
```

1          THE COURT:  There's no scheduling order.

2          So I suppose something in between might be maybe the

3    case isn't stayed for some period of time that you get to

4    serve foreign defendants, but perhaps there isn't a scheduling

5    order.  Perhaps you don't commence discovery.

6          I mean, that -- that's something that should proceed

7    for all parties in unison.  We don't want to have a discovery

8    period that applies to the current defendants and you and then

9    a new period for defendants brought in later.  So -- and I'm

10   really thinking out loud here, which is a little dangerous,

11   but I suppose procedurally one option would be to not commence

12   discovery, to~-- the motions to dismiss that are there could

13   be fully briefed, and the Court could resolve them as quickly

14   as it could, and we have some deadline for service of foreign

15   defendants, and then when that deadline -- either you serve

16   them earlier, or that deadline comes, and whoever's served is

17   it, and then we move forward with the scheduling order.

18         I'd like your thoughts on that before I turn to the

19   defendants.

20         MR. MENA:  Again, I think that a stay would be

21   premature until such time as the motions to dismiss have been

22   ruled upon.

23         THE COURT:  No.  I'm sorry, I wasn't clear.  I'm not

24   talking about staying the lawsuit.  My alternative idea was

25   simply not to issue a scheduling order yet.  In other words,

```
 1   the lawsuit's not stayed, but you don't yet have your period
 2   of discovery commencing, and --
 3            MR. MENA:  We wouldn't have a problem with that,
 4   Your Honor.
 5            THE COURT:  You would not?
 6            MR. MENA:  No.
 7            THE COURT:  Okay.  All right.  So the idea would be
 8   is that ideally in the next several months the motions to
 9   dismiss get resolved, you either -- you serve whomever you
10   can, and assuming that the case is moving forward on this
11   complaint, then there's a scheduling order, and then everybody
12   moves together in unison into a discovery period.
13            So just to be checking with you, Mr. Mena, that idea
14   is -- would be agreeable to you?
15            MR. MENA:  It would be.
16            Your Honor, the one sort of curve ball I'd just like
17   to throw out there just to keep in mind is --
18            THE COURT:  Yeah.
19            MR. MENA:  -- is if on the motion to dismiss there's
20   any repleading required, you know, some of the defendants here
21   who have not been served are similar, very similarly situated
22   to some of the defendants who have been served --
23            THE COURT:  Uh-huh.
24            MR. MENA:  -- in terms of the claims asserted
25   against them.
```

```
 1              THE COURT:  Uh-huh.

 2              MR. MENA:  So if we're required to replead in any

 3    way, we're now going to have to translate that amended

 4    complaint and sorta start the process again in trying to serve

 5    some of these defendants.  So that is just a complicating

 6    factor that could arise that I just want to bring to the

 7    Court's attention.  But otherwise, I have no problem with the

 8    approach that you're suggesting.

 9              THE COURT:  Well, so another thought I have -- and

10    this is now really, I'm kinda crawling out towards the end of

11    a limb.  This is all hypothetical.

12              I haven't read any motion to dismiss, so don't read

13    anything into my question.  I have zero knowledge or opinion

14    about those issues.  But let's imagine that if we were to

15    approach it this way, that there is an order granting a motion

16    to dismiss but with leave to replead it.  At that point, we

17    could see where we are in this period of permission to try to

18    serve foreign defendants, check in with you all.  Either that

19    period's about to close and perhaps we delay the filing of an

20    amended complaint, I don't know, so that you are trying to

21    effect service on the original complaint before you amend.

22    Just an idea that came to me.

23              Any thoughts about that as a -- is that workable?

24              MR. MENA:  It might be.  And that's -- if I

25    understood you correctly, Your Honor, that's somewhat I think
```

1   what I was sort of alluding to earlier as far as if we build

2   in, you know, a periodic status report here, I think that

3   gives us an opportunity to adjust to any change in pleads that

4   could result from the motion to dismiss briefing.

5          THE COURT:  Right.

6          MR. MENA:  Whether or not we set some sort of status

7   conference if and when an order on the motion to dismiss comes

8   in, or whether or not we have it already sort of prescheduled

9   on some sort of interim basis, either way is fine by us.

10          THE COURT:  I suppose -- and then to finish out just

11   playing out hypotheticals, if three months from now -- I

12   should only hope -- your motions to dismiss are resolved, and

13   we check in with you all, say it's leading to an amended

14   complaint, it may be that your status report on service is

15   such that it really doesn't justify a continued period of

16   service.  Maybe based on what you tell us at that imaginary

17   three-month mark means we're not going to allow more time for

18   that, you'd move forward and amend, if that's what were to

19   happen, and that's how the case moves forwarded.

20          I'm trying to balance, I'm trying to balance

21   resolving issues in as expedient a way as we can without doing

22   duplicative and unnecessary work for you and for the Court.

23          MR. MENA:  Understood.

24          THE COURT:  So that's what I'm playing around with.

25          Okay.  So let me turn to counsel for defendant

1    Bitmain, if you would like to go next.

2              MR. PACE:  Thank you, Your Honor.  This is Chris

3    Pace.

4              THE COURT:  Okay.

5              MR. PACE:  Your Honor, let me start with points of

6    agreement, and then the only -- I think the only open issue.

7    From the Bitmain perspective, we, too, agree that the motions

8    to dismiss should go forward, having been fully briefed, and

9    the issues I think would be -- are pretty similar across all

10   the defendants.  And we also certainly agree with the Court

11   that simply having an open-ended deadline doesn't make sense.

12   Further, we agree with the United American position that we

13   should not -- we just hold off entering a scheduling order

14   until all the defendants get in, if there's going to be

15   additional defendants, so that they're not conducting

16   discovery and having to restart it all over.

17             THE COURT:  Did you say you agreed with that notion?

18             MR. PACE:  Yes, yes, Your Honor.

19             THE COURT:  Okay.

20             MR. PACE:  So I think the only area of potential

21   divergency -- I'm not sure if United American kind of said

22   exactly how -- I think Mike said, or Michael said six months.

23   You know, the case was filed in December.  I think what we had

24   proposed was 60 days.  That ends up getting them out until

25   June.  The fact that they have not done a whole lot on service

```
 1   already is not -- I mean, they could have started translating
 2   the complaint in December, but we understand -- you know, we
 3   understand that it takes time to do these things, and we're
 4   certainly amenable to some other time period.
 5            I actually like the United American proposal of
 6   maybe interim status conferences so that we can keep the --
 7   one, keep the foot on the gas, and, two, if it comes to the
 8   point when the answer is this service is not going to occur in
 9   six months, or nine months, or whatever, that we put an end to
10   it early rather than late.
11            THE COURT:  Right.
12            MR. PACE:  So I think the only disparity that we
13   have from the Bitmain perspective with United American is do
14   we make it six months, or do we make it something more like
15   three months or 60 days.
16            THE COURT:  Uh-huh, uh-huh.
17            Okay.  All right.  But to just recap here for a
18   minute, then, the notion that we issue a scheduling order once
19   we -- either all defendants are in or all defendants who are
20   in who will be in, right, whenever this period closes for
21   service, even if it is not successful, you are agreeing with
22   that, that discovery should move forward with everybody
23   together, one time, and the motion on some sort of interim
24   conference -- listen, if the Court only allowed two months, we
25   may not need an interim conference.  If it allows six months
```

```
 1    we certainly do.

 2               MR. PACE:  Yes.

 3               THE COURT:  And -- but, yes, that's making sense to

 4    me.  If it's -- if we get beyond a couple-of-month period of

 5    service, then we do need to check in, because it may become

 6    kinda pointless, depending on what we're hearing.

 7               And you're agreeing with the notion that, you know,

 8    you'd like to see the motions to dismiss get ruled on, and I

 9    certainly agree with you on that.  I'd like to see the same

10    thing happen.

11               Okay.  So counsel for defendant Powell.

12               MR. LOURIE:  Yes, Your Honor.  Andrew Lourie at

13    Kobre & Kim.  And we tend to go along to everything Mr. Pace

14    said.  So we're in full agreement.

15               THE COURT:  Okay.  Okay.  That's great.

16               Okay.  And then counsel for defendant Chancellor, or

17    maybe Cox.

18               MR. SIMMONS:  Thank you, Your Honor, Ian Simmons.

19    We, too, also endorse what Mr. Pace said.

20               I would note that there was a December 11th order

21    entered by the district judge teeing off Rule 16 conferences

22    and scheduling orders after the last party services a

23    responsive pleading.  So it occurs to us that the district

24    judge -- you know, the responsive pleading is an answer, not a

25    motion.  But she didn't want scheduling and all of that
```

```
 1   getting underway until, you know, we know if there's a case,

 2   and the last defendant has filed the answer.  So our --

 3            THE COURT:  Wait, wait.  Tell me which order you are

 4   pointing out.  I've got the docket in front of me.

 5            MR. SIMMONS:  It is, let me see, entered --

 6            MS. PALLETT-VASQUEZ:  It's docket entry 9, Your

 7   Honor.

 8            MR. SIMMONS:  Number 9.

 9            THE COURT:  Docket entry 29?

10            MR. SIMMONS:  Number 9, Your Honor.

11            THE COURT:  Oh, number 9.

12            MR. SIMMONS:  It's dated December 11th, 2018.

13            THE COURT:  Okay.  This is -- docket entry 9 I show

14   docketed on December 10th.  It's an order of referral and

15   court practices.  Is that what you're referring to?

16            MR. SIMMONS:  Yes, Your Honor.  If we're look at the

17   same -- there's the last -- last paragraph on the first page

18   says:  "Additionally, it is further ordered that within 20

19   days from the date that the last defendant files a responsive

20   pleading, the parties shall file a joint status report and a

21   joint proposed scheduling order, as required by Local Rule --

22   Southern District of Florida Local rule 16.1(b).  As part of

23   that filing, the parties shall complete and submit the

24   attached form proposing deadlines."

25            So if I may point that out to the Court, Your Honor,
```

```
 1    that we want to make sure that -- you mentioned (inaudible).
 2    We don't believe anything should be happening in terms of
 3    deadlines or how the case should unfold or discovery, and I
 4    think this order by the district judge is consistent with
 5    that.
 6            The way we would like to see this unfold, the
 7    plaintiffs have had six months to get service going here; six
 8    months.  In all candor, we're not -- we're not -- I think the
 9    jury is out on how diligent they've been, but give them some
10    incremental time, we even endorse 60 days.  But I would not,
11    other than working on the motion to dismiss, we don't think
12    the case should be moving forward, and I think that's kinda
13    what the district judge is signaling in this language, dates
14    and discovery.  We --
15            THE COURT:  Well, the case was filed four months ago
16    pretty much today, right?  December 6th.
17            UNIDENTIFIED MALE SPEAKER:  Yes, Your Honor.  It's
18    been four months.
19            THE COURT:  So we're at April 7th.
20            MR. SIMMONS:  Yeah.
21            THE COURT:  Right.  So it's been pending for four
22    months.
23            And I only have the docket sheet.  I don't have the
24    order, and I can't pull it up easily right now, but are you
25    telling me, Mr. Simmons, that you think the way that order is
```

1    written -- and I'm going to go back and read it when we're

2    finished here -- that this -- the filing of a joint scheduling

3    report would not be triggered yet?  That's the way you're

4    reading it?

5            MR. SIMMONS:  That's correct.  That's correct, Your

6    Honor.  We'd be happy to send you -- I'll be happy to send

7    your chambers a PDF of this.

8            The way I read the order, Your Honor --

9            THE COURT:  I can pull the order up, don't worry

10   about that.  I just don't have it on the bench with me, that's

11   all, and my computer is not up.  So that's why -- I'll pull it

12   up.

13           But you're reading that docket entry 9 that there's

14   no requirement yet of a filing of a joint scheduling report.

15           MR. SIMMONS:  Correct.

16           THE COURT:  Okay.

17           MR. SIMMONS:  And that -- so I was -- I think that's

18   an important stake in the ground, that the case is stopped.

19   We're not doing a bunch of activity.  If they get some

20   incremental time to effectuate service, we think it should be

21   60 days.  So I think there should be that stake in the ground,

22   which I think the order embodies, some incremental time, I

23   would say 60, and then once -- hopefully the Court, you know,

24   works with all deliberate speed on the motion to dismiss, as I

25   think everyone -- I mean, the thing, to be honest, we don't

1    want to have happen is the motion to dismiss papers move to

2    the back of the desk while we wait on service.  That's --

3         THE COURT:  Right.

4         MR. SIMMONS:  To be honest, that's what we don't

5    want to see happen.

6         THE COURT:  Right.

7         Well, and from the Court's perspective there's no

8    reason to do that, because these other foreign defendants may

9    not get served, in which case the lawsuit's going forward as

10   it stands, and we need to resolve the motions to dismiss.

11        And who knows, perhaps -- and, again, I don't have

12   enough knowledge to really offer an opinion on anything yet,

13   but perhaps the issues in the motion to dismiss that are

14   briefed, once resolved, will kind of pave the way a little bit

15   for some of the new defendants who might be served and come

16   in.  It might clarify some issues that they would have, too.

17        So I agree, in a perfect world I would work on~--

18   start on the motions to dismiss tomorrow.  It's not perfect,

19   and there are other things that are -- have much more pressing

20   deadlines at the moment.  And these are referred to me, so I'm

21   being very frank with you, they're not at the front of my

22   client, but as soon as I can get to it, then, is when I would

23   want to do that.

24        So, but you agree, Mr. Simmons, with the notion of

25   let's try to get these motions to dismiss resolved on,

```
 1   resolved, and not begin a discovery period until we know
 2   service is -- the point for service is closed, am I --
 3          MR. SIMMONS:  Yes, Your Honor.  But with the caveat,
 4   Your Honor, I understand you don't have the paper in front of
 5   you, that even if service is done, you know, the motions have
 6   to be denied, in other words, and then the defendants, the
 7   last defendant has to answer, and then you do -- we do
 8   scheduling talk.  You see what I'm saying?  That the way that
 9   docket number 9 is written, and when you have that in front of
10   you that should help, the way I read the Court's order is that
11   we do that, scheduling, we fill out those dates once the last
12   defendant has answered.
13          So I think the motions are a predicate kinda for
14   really getting the case going.
15          THE COURT:  Okay.
16          MR. SIMMONS:  Not that I'm trying to -- yeah.
17          THE COURT:  Okay.  Well, thank you for pointing that
18   out to me.  I am -- that's the next thing I'm going to read as
19   soon as we finish this hearing.
20          Okay.  So coming -- so I've heard from all -- have I
21   heard from all the defendants?  I don't know,
22   Ms. Pallett-Vasquez, do you need to speak for defendant Cox?
23          MS. PALLETT-VASQUEZ:  I don't, I don't.  Mr. Simmons
24   also represents Mr. Cox, as well.
25          THE COURT:  Oh, okay.
```

```
 1              All right.  So Mr. Mena, I understand -- I'm very
 2   sympathetic with the notion that you -- what it's like to have
 3   a lot on your plate, but it does -- I do have a bit of a hard
 4   time with your having waited to February to engage this firm
 5   just to begin to translate the complaint.  I mean, surely you
 6   would know that trying to serve foreign defendants is a
 7   complex affair, and I just -- it seems that you allowed two to
 8   three months to kind of go slip by before you started what I
 9   would think would be obvious is a complex process.
10              So I'll give you a chance to tell me anything more
11   about that, but it is troublesome to me.
12              MR. MENA:  Well, Your Honor, the only thing I would
13   add is obviously we had the intervening holiday, and that is
14   what it is.  We -- these are not the only defendants we were
15   trying to serve.  As you know, even in the most recent example
16   of Mr. Cox, there were multiple attempts.  We finally were
17   able to get him more recently.  We had two of these six
18   defendants who we had other addresses before domestically,
19   which didn't work out.  And so -- and we were fully briefing
20   the motion to dismiss.
21              So, you know, there were other things going on, as
22   well.  So, you know, this wasn't the only thing.  But, you
23   know, again, I don't think that requesting a deadline of
24   another six months, with interim status reports every two
25   months, is an unreasonable request.  I think it gives --
```

1    especially with the motion to dismiss not having been ruled

2    on, it's not really prejudicing anybody.  And I think that

3    gives the Court and the parties the opportunity to address the

4    issues as we go with those interim status reports, or status

5    conferences, or we can adjust as necessary.

6           But, again, I think if you put a deadline of I think

7    somebody suggested two months from now, the reality is they're

8    not going to be served two months from now.  And so I just --

9    and I don't think it would be, given where we are right now --

10   and I understand there was a small delay at the beginning -- I

11   just don't think it would be prudent to have a deadline two

12   months from now, because I don't think it would really help

13   resolve anything.

14          THE COURT:  You mean two months for service.

15          MR. MENA:  For service, correct.

16          THE COURT:  Yeah, yeah.

17          MR. MENA:  I think two months from now to have a

18   status I think is reasonable, it's what I suggested, but I

19   would put a deadline of six months, and then as we go along

20   with those status reports, we can revisit any issues.

21          THE COURT:  Okay.  So you're endorsing the notion of

22   two months from now giving a status report on service?

23          MR. MENA:  Yes.

24          THE COURT:  Okay.

25          MR. MENA:  And if the deadline is six months from

1    now, I'm suggesting at the four-month mark, if you will, to

2    also have a status.  So every two months.

3           THE COURT:  Okay.  Okay.  All right.  This has been

4    very helpful to me.  I want to go back and read that order

5    that Judge Williams issued, and I'll get an order out on this.

6           So I thank you all very much for making the time on

7    short notice.  Very helpful to me.  I'd rather hear from you

8    than assume what you might want to say.

9           All right.  So I'll get something out on this pretty

10   quickly.

11          MR. MENA:  Thank you, Your Honor.

12          VOICES:  Thank you, Your Honor.

13          THE COURT:  All right.  Thank you, bye.

14      (Proceedings concluded at 3:32 p.m.)

15               * * * * *

16             CERTIFICATE

17     I, Stephen W. Franklin, Registered Merit Reporter, and

18   Certified Realtime Reporter, certify that the foregoing is a

19   correct transcript, to the best of my ability, from the

20   DIGITAL AUDIO RECORDING of proceedings in the above-entitled

21   matter.

22     Dated this 17th day of JULY, 2019.

23

24     /s/Stephen W. Franklin

            _____

25     Stephen W. Franklin, RMR, CRR