UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No: 1:18-cv-25106-Williams/McAliley

United American Corporation,

      *Plaintiff*,

  v.

Bitmain, Inc., Saint Bitts LLC d/b/a Bitcoin.com, Roger Ver, Bitmain Technologies Ltd., Bitmain Technologies Holding Company, Jihan Wu, Payward Ventures, Inc. d/b/a Kraken, Jesse Powell, Amaury Sechet, Shammah Chancellor, and Jason Cox,

      *Defendants*.

### DEFENDANT ROGER VER'S MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Roger Ver moves to dismiss the Complaint with prejudice and, to avoid duplicating arguments, gives notice of his adoption by reference of all of the arguments from Defendant Shammah Chancellor's Motion to Dismiss (DE 41, renewed by DE 97) (the "Chancellor Motion").[1] As set forth in the Chancellor Motion, and for the additional reasons stated below, the Complaint fails to state a claim under the Sherman Act or Florida state law and should be dismissed in its entirety.

---

[1] Cites to "DE" refer to the docket entries in this action.

## PROCEDURAL BACKGROUND

On December 6, 2018, Plaintiff United American Corp. ("United") filed its Complaint against Ver, among others. DE 1 ¶¶ 6-17. The Complaint alleges that Defendants orchestrated a two-step scheme to "hijack" the Bitcoin Cash network. First, Bitcoin.com and its founder and owner, Ver, colluded with Jihan Wu and "Bitmain" to reallocate Bitmain's computing power to Bitcoin.com's mining pools during the Bitcoin Cash network upgrade. *Id.* ¶ 59. The object of that purported agreement was to "dilute" the votes of other nodes and ensure that the software rules associated with Bitcoin ABC would survive the "hash war." *Id.* ¶¶ 60, 65. Next, Defendants Amaury Sechet, Jason Cox, and Chancellor implemented "checkpoint[s]" in the Bitcoin ABC software, which had the effect of "lock[ing] down" the new ABC-governed blockchain. *Id.* ¶ 69. Cryptocurrency exchanges including Kraken effectively recognized the ABC software as the "'winner' of the software upgrade." *Id.* ¶ 74.

The then-served Defendants moved to dismiss the Complaint. DE 41, 42, 43. On July 23, 2019, the Court administratively terminated the pending motions to dismiss to afford United additional time in which to serve foreign Defendants. DE 78 (the "July 2019 Order"). The July 2019 Order relieved all Defendants of their obligation to respond to the Complaint pending service on the foreign Defendants or an October 8, 2019 deadline. *Id.* at 1-2. On October 9, 2019, Chancellor and the other previously served Defendants filed a Joint Notice of Renewal of Motions to Dismiss. DE 97. Pursuant to the July 2019 Order, Chancellor's motion to dismiss (DE 41) as well as "all responsive memoranda of law," including Chancellor's reply (DE 50), are now deemed refiled. Having now been served with the Complaint, Ver adopts by reference all of the arguments from the Chancellor Motion, joins in that motion in its entirety, and further moves for the reasons set forth below.

# ARGUMENT

United fails to plead facts suggesting that (1) Defendants agreed to "hijack" the Bitcoin Cash network, *see* DE 41 at 6-8; (2) Ver and other Defendants unreasonably restrained trade within the meaning of the Sherman Act, *see id.* at 8-16; or (3) Defendants inflicted antitrust injury on United, *see id.* at 16-20.[2] United's state-law claims for negligent misrepresentation, negligence, conversion, "equitable estoppel," and "injunctive relief" fall flat as well. *See id.* at 20-25.[3] Separate and apart from the pleading failures that the Chancellor Motion identified, the specific allegations against Ver are also facially deficient. United does not plausibly allege that Ver himself entered into any agreement with "Bitmain" or Jihan Wu, nor does it state a cognizable claim against him for unjust enrichment.

### A. United does not plausibly allege that Ver conspired to "hijack" the Bitcoin Cash Network.

United's Sherman Act claim against Ver lacks sufficient "factual matter to plausibly suggest an agreement was made." *See Duty Free Americas, Inc. v. Estée Lauder Cos.*, 946 F. Supp. 2d 1321, 1329 (S.D. Fla. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). It must be dismissed.

---

[2] Regardless of the specific "facts" alleged about Ver, Chancellor's second and third arguments apply with equal force. Even assuming the existence of an agreement between the Defendants to "hijack" the Bitcoin Cash network, United's pleadings fail to allege that Defendants unreasonably restrained trade, or that United suffered antitrust injury that is traceable to Defendants' conduct. *See* DE 41 at 8-20.

[3] These claims fail because United engages in impermissible "shotgun pleading," lumping all the defendants together and failing to provide them with notice of the conduct giving rise to the claims. *See* DE 41 at 20. These claims also fail because neither equitable estoppel nor injunctive relief is a cause of action under Florida law, *id.* at 20-21; the allegations in support of the negligent misrepresentation claim do not meet Rule 9(b)'s requirements for particularity in pleadings, *see id.* at 21-22; United fails to allege that Ver owed it, and breached, any legal duty, nor does it plead any special relationship with Ver that would entitle it to recover in negligence for purely economic losses, *see id.* at 22-24; and United fails adequately to plead facts that support a plausible claim for conversion, *see id.* at 24-25.

*First,* United does not allege that Ver communicated with the other defendants, nor does it set forth basic details that would render its conspiracy allegations plausible. *See* DE 41 at 7-8 (noting that United never describes "where," "what about," or "when" the alleged conspirators communicated). It alleges that Ver invested in Kraken and is a high school friend of its founder, Defendant Jesse Powell, DE 1 ¶¶ 56, 76 n.8, but offers no explanation whatsoever—much less a plausible one— about how these facts bespeak conspiracy. United's pleadings never connect Ver to any of the Defendants who purportedly implemented the "checkpoint" (Chancellor, Cox, and Sechet). In fact, United does not even allege that Chancellor, Cox, or Sechet were *aware* of any "scheme" between Ver, Bitcoin.com, and Bitmain to deploy computing power during the fork, and vice versa. *See* DE 41 at 4-5.

In short, none of the pleadings tie together the disparate strands of the complex, international, and deeply implausible conspiracy that United has alleged. United has wholly failed to plead any facts suggesting that Ver made a "conscious commitment to a common scheme designed to achieve an unlawful objective," the gravamen of any claim under Section 1 of the Sherman Act. *See Duty Free Americas*, 946 F. Supp. 2d at 1331 (citing *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984)); *In re Marine Hose Antitrust Litig.*, 2009 WL 10685177, at *9 (S.D. Fla. Jan. 28, 2009) (dismissing Section 1 claim after holding that pleadings failed to suggest that "each individual Defendant joined the conspiracy and played some role" in it). Even had United adequately pleaded Ver's participation in an agreement on how to "vote" on the software upgrade, the allegations would still be legally insufficient for the reasons explained in the Chancellor Motion (*viz.*, the alleged conduct is not an antitrust violation). *See* DE 41 at 8-16.

*Second*, United's conclusory allegations with respect to Ver's alleged agreement with "Bitmain" fail the plausibility test set forth in *Twombly*. As an initial matter, United never identifies which Bitmain entity—it named three as Defendants—colluded with Jihan Wu, Ver, and Ver's company Bitcoin.com. DE 1 ¶¶ 7, 10, 11 (naming Bitmain, Inc., Bitmain Technologies Ltd., and Bitmain Technologies Holding Company as Defendants); *id.* ¶ 59 (asserting that Ver "colluded with Jihan Wu and

4

Bitmain"); *see In re Marine Hose Antitrust Litig.*, 2009 WL 10685177, at *8-*9 (dismissing complaint alleging an "international conspiracy . . . including more than ten corporations and numerous executives" because "general allegations as to all defendants are insufficient to provide notice of the claims"). General and vague allegations that "Ver and Bitcoin.com" carried out certain actions are insufficient to put Ver on notice of the specific claims against him, especially when the pleadings fail to identify a counterparty to the alleged scheme. *See In re Parcel Tanker Shipping Servs. Antitrust Litig.*, 541 F. Supp. 2d 487, 491-92 (D. Conn. 2008) (dismissing complaint alleging "general conspiratorial activity without reference to specific actions by a particular defendant at a particular time").

Moreover, the Complaint fails to explain how Ver's ownership of Bitcoin.com and alleged promotion of his company's business activities plausibly suggest that he entered into a conspiracy with Wu and "Bitmain." *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008) ("[G]eneral allegations as to all defendants, to 'Japanese defendants,' or to a single corporate entity such as 'Hitachi' is insufficient to put specific defendants on notice of the claims against them."). In fact, United does not even allege that Bitcoin.com (Ver's company) competes with Jihan Wu or "Bitmain" in a relevant antitrust market. Instead, United seems to acknowledge that Bitmain is a *supplier* of hashing power to Bitcoin.com. DE 1 ¶ 54 ("[Bitcoin.com] has servers and programmers in the United States and operates the Bitcoin.com pool . . . with hash power provided by Bitmain.").

*Finally*, United's allegations that Ver "openly supported the development and implementation of the ABC version of Bitcoin Cash" (*id.* ¶ 57) and tweeted "The Bitcoin.com pool now has more hash rate on it than the entire BCH network had earlier today. Bitcoin is cash for the world! #BitcoinCash #bitcoincashfork" (*id.* ¶ 62) do not move its antitrust claim any closer to plausibility. Nor does its allegation that Bitcoin.com and Bitmain—both of which supported Bitcoin ABC—were awarded a higher percentage of Bitcoin Cash blocks immediately following the network upgrade than they had been awarded immediately before the network upgrade. *Id.* ¶¶ 66-68.

These allegations instead support the unremarkable conclusion that Ver, his company, and Bitmain supported the ABC software implementation, and independently invested in its success. Those facts evince no "parallel action . . . contrary to [Ver's or Bitcoin.com's] economic self-interest," or any "other 'plus factors' tending to establish that the [D]efendants were . . . in a collusive agreement to fix prices or otherwise restrain trade." *See Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1261-62 (11th Cir. 2019) (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 571 (11th Cir. 1998)).

The "obvious alternative explanation[]" that United fails to address or rebut is that Ver, Bitcoin.com, Wu, and "Bitmain" independently supported the software implementation they considered to be superior. *See Twombly*, 550 U.S. at 567-68. That Ver's and Wu's companies each brought on hashing power in the battle to determine "which rules set would be applied by the software implementations on the network going forward" is hardly surprising in light of their preference for ABC, and given that the vote unfolded exactly as the Whitepaper envisioned. DE 1 ¶¶ 44, 64. This is what competition is about. None of United's allegations, accordingly, tends to establish that the increase in hashing power on the Bitcoin Cash network during the software upgrade was the result of an unlawful agreement. *See Quality Auto Painting*, 917 F.3d at 1267 (dismissing antitrust claim where "independent action [wa]s at least as plausible as concerted action pursuant to prior agreement," and "nothing 'tend[ed] to exclude the possibility of independent action'") (quoting *Twombly*, 550 U.S. at 553-54) (brackets omitted).

At bottom, United asks this Court to undo a competitive outcome and hold as a matter of law that cryptocurrency firms must "consult [with] other Bitcoin development groups and the community at large" (DE 1 ¶ 73)—*i.e.*, their competitors—before making strategic business choices. That suggestion is inimical to the Sherman Act. *See Schachar v. Am. Acad. of Ophthalmology, Inc.*, 870 F.2d 397, 399 (7th Cir. 1989) (Easterbrook, J.) ("To require cooperation or friendliness among rivals is to undercut the intellectual foundations of antitrust law."). The Court should decline United's invitation into error, reaffirm competition as the lodestar of the

Sherman Act, and dismiss United's antitrust claim against Ver with prejudice.

### B. United fails to state a claim for unjust enrichment.

As with its other state-law claims, United's unjust enrichment claim against Ver never leaves the starting gate.[4] "The elements of cause of action for unjust enrichment are (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." *Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla., N.A.*, 667 So. 2d 876, 879 (Fla. 3d DCA 1996) (quotation omitted).

United alleges that "Ver received the benefit of mining significant sums of Bitcoin Cash through the[] . . . scheme while other users such as [United] were cut out of the network and lost the value of their significant investments." DE 1 ¶ 109. But United never alleges that it conferred the "benefit" of mining Bitcoin Cash upon Ver, or that Ver knowingly "accept[ed] and retain[ed]" that benefit. *See id.* United's omission of facts demonstrating that Ver *knew* that he received a benefit, or that it would be *inequitable* for Ver to retain the benefit were he aware of its provenance, compounds its pleading failures. *See First Union*, 667 So. 2d at 879. Put simply, the Complaint does not suggest that Ver was unjustly enriched by United. *See* Restatement of Restitution § 1, at cmt. c (1937) ("The mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor.").

## CONCLUSION

For the reasons set forth in the Chancellor Motion as well as those stated above, the Court should dismiss with prejudice United's Complaint against Ver.

---

[4] Consistent with the approach it adopts elsewhere in its Complaint, United indulges in impermissible "shotgun pleading" in an attempt to state a claim for unjust enrichment. *See* DE 1 ¶¶ 105-10. As the Chief Judge of this District has succinctly explained in the past, "shotgun pleading is unacceptable." *Tsavaris v. Pfizer, Inc.*, No. 1:15-cv-21826-KMM, 2016 WL 375008, at *2 (S.D. Fla. Feb. 1, 2016).

| | |
|---|---|
| Dated:  October 9, 2019 | Respectfully submitted, |

/s *Melissa Pallett-Vasquez*
MELISSA C. PALLETT-VASQUEZ
Florida Bar No. 715816
mpallett@bilzin.com
LORI P. LUSTRIN
Florida Bar No. 59228
llustrin@bilzin.com
**BILZIN SUMBERG BAENA PRICE & AXELROD LLP**
1450 Brickell Ave, Suite 2300
Miami, Florida 33131
Tel.: (305) 374-7580
Fax: (305) 374-7593

IAN SIMMONS (*pro hac vice*)
isimmons@omm.com
KATRINA ROBSON (*pro hac vice*)
krobson@omm.com
SERGEI ZASLAVSKY (*pro hac vice*)
szaslavsky@omm.com
ZHAO LIU (*pro hac vice*)
zliu@omm.com
BRIAN P. QUINN (*pro hac vice*)
bquinn@omm.com
PATRICK JONES (*pro hac vice*)
pjones@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street N.W.
Washington, D.C. 20006
Tel.: (202) 383-5300
Fax: (202) 383-5414

*Attorneys for Defendants Jason Cox, Shammah Chancellor, and Roger Ver*

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*/s/ Melissa Pallett-Vasquez*
Melissa Pallett-Vasquez
