UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-cv-25106-WILLIAMS/MCALILEY

UNITED AMERICAN CORP.,

    Plaintiff,

v.

BITMAIN, INC., *et al*,

    Defendants.

_____/

**ORDER DENYING PLAINTIFF'S MOTION FOR 90-DAY
EXTENSION OF TIME TO SERVE CERTAIN FOREIGN DEFENDANTS**

Before the Court is Plaintiff United American Corp.'s Motion for 90-Day Extension of Time to Serve Certain Foreign Defendants. (ECF No. 94). Defendants Shammah Chancellor; Jason Cox; Roger Ver; Bitmain, Inc.; Payward Ventures, Inc.; and Jesse Powell oppose the motion, which is now fully briefed. (ECF Nos. 100, 104). The Honorable Kathleen M. Williams has referred all pretrial matters to me. (ECF No. 46). After reviewing the briefing and the record, I **deny** the motion.

**I.   Background**

    **A.**   *December 6, 2018: Complaint Filed*

Plaintiff filed this action more than a year ago, on December 6, 2018. (ECF No. 1). Plaintiff sued five domestic defendants: Bitmain, Inc.; Payward Ventures; Powell; Chancellor; and Cox, (ECF No. 1 at 2–3 ¶¶ 7, 13–14, 16–17), and six foreign defendants: Saint Bitts LLC; Ver; Bitmain Technologies Ltd.; Bitmain Technologies Holding

Company; Jihan Wu; and Amaury Sechet. (ECF No. 1 at 2–3 ¶¶ 8–12, 15). The Complaint accuses the defendants of coordinating the takeover and manipulation of the cryptocurrency market for Bitcoin Cash, causing the market to crash and harming Bitcoin holders, like Plaintiff. (ECF No. 1 at 1–2 ¶¶ 1–2).

### B. *January 18, 2019: Order on Service Deadline*

On January 18, 2019, the Court entered an order, warning that it would dismiss any defendant not served within 90 days, as set forth in Federal Rule of Civil Procedure 4(m). (ECF No. 37). In that 90-day period, Plaintiff had served only four domestic defendants—Chancellor; Bitmain, Inc.; Payward Ventures; and Powell—all of whom filed motions to dismiss. (ECF Nos. 41–43).

### C. *March 6, 2019: First Motion to Extend Service Deadline*

On March 6, 2019, exactly 90 days after it had filed the Complaint, Plaintiff asked for more time to serve the remaining domestic defendant (Jason Cox), and the foreign defendants, none of whom had been served. (ECF No. 47). Plaintiff explained that it would need to effectuate service in Saint Kitts and Nevis (Defendant Saint Bitts), Japan (Defendant Ver), China (Defendants Bitmain Technologies Ltd. and Wu), the Cayman Islands (Defendant Bitmain Technologies Holding Company) and France (Defendant Sechet). (ECF No. 47 at 2 ¶ 6). Plaintiff attached to the motion a Declaration of Reasonable Diligence that detailed attempts to serve Cox over several days. (ECF No. 47-1). Plaintiff did not, however, detail its service attempts on the foreign defendants.

This motion served as an unverified "status report" on foreign service. Plaintiff advised that it had "attempted service of process on defendants Roger Ver and Jihan Wu in

the United States, but [had] learned that these two individuals reside in Japan and China, respectively." (ECF No. 47 at 2–3 ¶¶ 7–8). In the Complaint, Plaintiff had indeed alleged that Wu was domiciled in California. (ECF No. 1 at 3 ¶ 12). But as to Ver, Plaintiff had alleged that he "is an individual domiciled, upon information and belief, in Tokyo, Japan. . . ." (ECF No. 1 at 3 ¶ 9).

Next, the report said that Plaintiff "has engaged the services of Judicial Process & Support Inc. for translation and service of process services in connection with effectuating service on these foreign defendants in Japan, China, France, the Cayman Islands, and Saint Kitts." (ECF No. 47 at 3 ¶ 9). The report warned that "[t]he process under the Hague Convention in these countries is very lengthy, particularly in China where estimates are that the process can take as long as two years"; and that "[i]n the case of Saint Kitts, service must be made via the State Department through Letters Rogatory (also a lengthy process)." (ECF No. 47 at 3 ¶ 10).

Plaintiff asked for 120 additional days to serve Cox, the domestic defendant. (ECF No. 47 at 3 ¶ 11). But as to the foreign defendants, Plaintiff did not propose a time period.

**D.**  *April 2019: Status Conference and Order Granting Provisional Six-Month Extension to Serve Foreign Defendants*

After a status conference, I "provisionally" granted a six-month extension of the service deadline, to October 8, 2019. (ECF No. 59 at 2). I ordered Plaintiff to file, on or before June 10, 2019, "a status report that details Plaintiff's ongoing efforts to effect service and that provides an updated forecast as to when Plaintiff foresees serving each foreign defendant." (*Id.*). I also ordered Plaintiff to file a second status report on or before August

3

9, 2019. (*Id.*). I explained that after I read both reports, I would "reassess whether the October 8, 2019 deadline is reasonable, and consider whether that deadline should be accelerated." (*Id.*).

### E. *June 10, 2019: First Status Report on Service*

On June 10, 2019, six months after it had filed the Complaint, Plaintiff filed its first status report, informing that it lacked "an updated forecast for service of process that is any different than what was previously indicated to the Court" but expected to provide one with the second report. (ECF No. 71 at 2–3 ¶ 9). Plaintiff also said the following regarding the foreign defendants: First, that it had completed and delivered to central authorities in the Grand Cayman application form USM-94, Request for Service Abroad of Judicial or Extrajudicial Documents, for service under the Hague convention of Bitmain Technologies Holding Company. (ECF No. 71 at 2 ¶ 4). Second, that it had completed the USM-94 forms for Bitmain Technologies Ltd. and Wu and was working with the process server to serve those defendants in China. (ECF No. 71 at 2 ¶ 5). Third, that it had completed the USM-94 form for Sechet and was working with the process server to serve him in France. (ECF No. 71 at 2 ¶ 6). Fourth, that it had completed the USM-94 form for Ver and was working with the process server to serve him in Japan. (ECF No. 71 at 2 ¶ 7). And fifth, as to Saint Bitts LLC, that Plaintiff "expect[ed] to file a Motion for Issuance of Letters Rogatory later this week" and would also work with the process server to serve that defendant in Saint Kitts and Nevis. (ECF No. 71 at 2 ¶ 8).

### F. *July 2019: Letters Rogatory*

A month later, on July 12, 2019, more than seven months into the case, Plaintiff

4

filed a Motion for Issuance of Letters Rogatory. (ECF No. 74). On July 23, 2019, I granted the motion for letters rogatory and issued the accompanying request to Saint Kitts and Nevis. (ECF Nos. 77, 79).

The day prior, I held a second status conference, where I addressed the inefficiency of turning to the pending motions to dismiss before Plaintiff had served all defendants. (ECF No. 80). I then entered an order that terminated "Defendants' Motions to Dismiss . . . on purely procedural grounds pending either: (1) completion of service upon the foreign defendants; (2) the Court's October 8, 2019 deadline for service of the foreign defendants; or (3) further order of the Court." (ECF No. 78 at 1).

### G. *August 9, 2019: Second Status Report*

On August 9, 2019, approximately eight months after it filed the Complaint, Plaintiff filed its second status report. (ECF No. 81). In it, Plaintiff said "that the present deadline of October 8, 2019 to effectuate service upon these foreign defendants may not afford [it] sufficient time, despite [its] efforts to navigate the cumbersome and costly international service of process procedures, to effectuate service upon each of the foreign defendants." (ECF No. 81 at 3 ¶ 9). As to the service status, Plaintiff had by then delivered the USM-94 forms to China, France, and Japan; and had translated the Complaint and summonses. (ECF No. 81 at 2–3 ¶¶ 5–7).

Plaintiff also provided some estimated service times: "between October and December 2019" for the Cayman Islands; "between November 2019 and January 2020" for China; and "by September 30, 2019" for France and Japan. (ECF No. 81 at 2–3 ¶¶ 4–7). Plaintiff did not give an estimated time of service of Saint Bitts. Plaintiff said only that

5

the Clerk of Court had transmitted the necessary copies on August 6, 2019, and Plaintiff then assured that it would "continue working with Judicial Process & Support Inc. for service of process services in connection with effectuating service on this foreign defendant in Saint Kitts." (ECF No. 81 at 3 ¶ 8).

Lastly, Plaintiff represented in the second report that it would "undertake[] to file a third status report regarding service on these foreign defendants no later than September 30, 2019, or at any other time ordered by the Court." (ECF No. 81 at 4 ¶ 10). The Court had not ordered a third report, and Plaintiff did not file one on its own.

**H.**     *September 2019: Plaintiff Informs Court It Served Bitmain Technologies Holding Company in June 2019*

On September 20, 2019, and September 24, 2019, Plaintiff tried to file an affidavit of service saying that Bitmain Technologies Holding Company was served on June 17, 2019, in the Cayman Islands. (ECF Nos. 84, 87). The Clerk of Court struck both filings for filing errors. (ECF Nos. 85, 88). On October 2, 2019, Plaintiff filed a correct return of summons, which also has the June 17, 2019 service date. (ECF No. 91). Plaintiff had also served Ver by then, and Ver's attorney filed a notice of appearance. (ECF No. 93).

**I.**     *October 4, 2019: Plaintiff Requests 90 More Days for Service*

On October 4, 2019, approximately 10 months after it filed the Complaint, Plaintiff filed the motion now before the Court, which asks for an additional three months to serve the foreign defendants Bitmain Technologies Ltd., Wu, Sechet, and Saint Bitts. (ECF No. 94). Regarding these defendants, Plaintiff assured that it "has been in frequent communication with its international process server, Judicial Process & Support Inc., in an

attempt to receive an update from the central authorities with respect to the status of service," but that "[b]ased on experience, the international process server has advised that, for Hague signatory nations, a delay of between 1 to 3 months is not unusual between the time of service and the time that the requesting party receives notification of such service." (ECF No. 94 at 3 ¶ 7). The process server, Plaintiff continued, "sent an inquiry to the central authorities of Japan and France in an effort to obtain an update, but as of the filing of this motion and status report no response has been received." (ECF No. 94 at 3 ¶ 8).

As to Saint Bitts, Plaintiff relayed the following:

> The appropriate paperwork and payment has been sent to the United States State Department for issuance of a certificate and apostille. [Plaintiff] received back from the State Department the required certificate, but not the apostille. [Plaintiff] is awaiting the State Department's correction of this issue by including the apostille. After that is done, the package of documents and an additional payment of more than $2,000 needs to be sent to the appropriate embassy so that it may be transmitted through diplomatic channels to the government of Saint Kitts and Nevis, who will, in turn, direct the communication to the appropriate court. The same diplomatic channels are then used to communicate back to [Plaintiff] once service is effected. This process is the most cumbersome and it is unpredictable how long it will take, but has been known to take up to one year in some cases.

(ECF No. 94 at 4 ¶ 11).

On November 1, 2019, Bitmain Technologies Ltd. and Wu, both of whom claim to have been served in China on October 14, 2019, which is six days after the Court's October 8 service deadline, filed a motion for extension of time to respond to the Complaint. (ECF No. 111). I granted the motion, and those parties filed a motion to dismiss based on insufficient service of process, among other arguments. (ECF Nos. 112, 116). All served defendants also have pending motions to dismiss. (ECF Nos. 97–99, 116). Plaintiff has not

served Saint Bitts (Saint Kitts and Nevis) and Amaury Sechet (France).

## II.  Analysis

Federal Rule of Civil Procedure Rule 4(m) sets forth time limits for service of process on defendants that do not apply to foreign defendants. Fed. R. Civ. P. 4(m).[1] The Eleventh Circuit has not issued a published opinion on "whether or what time constraints apply to service on foreign defendants." *Harris v. Orange S.A.*, 636 F. App'x 476, 485 (11th Cir. 2015). In *Harris*, which is itself unpublished, the Eleventh Circuit "join[ed] the majority of circuits to have considered the issue in holding that a plaintiff's complaint may be dismissed upon a showing that she failed to exercise diligence in attempting to effectuate service on a foreign defendant." *Id.* at 485–86. The standard is one of "flexible due diligence." *Id.* at 485. But "[t]o avoid dismissal for lack of diligence, a plaintiff must demonstrate at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice." *Id.* at 486 (citation and internal quotations omitted). The Court then affirmed the district court's dismissal of foreign defendants where the plaintiff, who "erred in good faith" and "misunderstood the service requirements," admitted that she "made no effort to

---

[1]
>If a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. This subdivision (m) does not apply to service in a foreign country under Rule 4(f), 4(h)(2), or 4(j)(1), or to service of a notice under Rule 71.1(d)(3)(A).

Fed. R. Civ. P. 4(m).

8

serve the foreign defendants." *Id.* at 486.

Plaintiff's efforts to serve the foreign defendants in this case do not display the due diligence expected to warrant an additional 90-day extension. To begin, it appears Plaintiff made no effort to serve the foreign defendants in the first 90 days of this case. In its first motion for extension of time, Plaintiff attached a declaration detailing how it tried to serve Cox, a domestic defendant, but did not offer a declaration or affidavit about its service attempts on the foreign defendants. (ECF No. 47). Moreover, Plaintiff gave the impression in the initial motion for extension of time that it had only recently learned that one of the defendants, Ver, resided in Japan. (ECF No. 47 at 3 ¶ 8). Plaintiff had alleged in the Complaint, however, that Ver "is an individual domiciled, upon information and belief, in Tokyo, Japan." (ECF No. 1 at 3 ¶ 9). Plaintiff has not justified its failure to immediately attempt to serve Ver in Japan.

Even so, the Court granted a provisional six-month extension of the service deadline, to October 8, 2019. (ECF No. 59 at 2). This was a generous extension under the circumstances. To compare, in *Developmental Technologies LLC v. Mitsui Chemicals, Inc.*, No. 8:18-CV-1582-T-27TGW, 2019 WL 1598808, at *8 (M.D. Fla. Apr. 15, 2019), where the plaintiff sought to serve a defendant in Japan and filed a declaration detailing the service efforts (something Plaintiff here did not do), the Court granted a four-month extension because a six-month extension "is excessive." *Id.*; *see also MiMedx Grp., Inc. v. Perring*, No. 3:18-CV-327-J-32PDB, 2018 WL 8582446, at *2 (M.D. Fla. June 4, 2018) (granting 90-day extension to serve foreign defendants where plaintiff detailed considerable effort to serve defendants within 48 hours of filing the complaint).

9

Plaintiffs' status reports revealed that Plaintiff had accomplished little in the way of service in the first six months of the case, and both reports lacked important details. Specifically, Plaintiff wrote in the first report that it had completed and delivered to the Cayman Islands form USM-94, but did not write when it did so. (ECF No. 71 at 2 ¶ 4). Plaintiff also reported then that it had completed the USM-94 forms for China, France, and Japan, but, as became apparent in the second status report, Plaintiff had not yet translated the Complaint and summonses or delivered the documents to the relevant authorities. (ECF No. 71 at 2 ¶¶ 5–7).

Plaintiff did take those steps as of the second report, eight months into this lawsuit, but, again, did not specify when it did so. (ECF No. 81 at 2–3 ¶¶ 5–7). Plaintiff knew from the outset that it would be serving foreign defendants in foreign countries, yet waited between six and eight months into the case to translate the Complaint and summonses, without justification. Plaintiff also does not explain why it waited approximately six months to complete USM-94 forms, which are only four-pages long and readily available at the U.S. Marshals Service's website.

In the same vein, Plaintiff does not explain why it waited seven months to file a motion for the issuance of letters rogatory. The motion, including the proposed order, is 11-pages long, (ECF No. 74), and the Court granted it shortly after it was filed. (ECF No. 77). In its first motion for extension of time, filed three months in the case, Plaintiff acknowledged that service in Saint Kitts would be through the "lengthy process" of letters rogatory. (ECF No. 47 at 3 ¶ 10). This being so, the Court would have expected Plaintiff to seek letters rogatory on an expedited basis.

In addition, in the reports, Plaintiff says that it has been continuously working with an international process server but did not disclose when it hired this process server. It appears from the initial motion for extension of time, where Plaintiff alleged "that it *has engaged* the services of Judicial Process & Support Inc. for translation and service of process services," (ECF No. 47 at 3 ¶ 9) (emphasis added), that Plaintiff hired the process server around that time. If so, then Plaintiff took the first step in serving the foreign defendants three months into the case.

Last, I find significant that Plaintiff's estimates for service were often wrong. For example, although Plaintiff estimated that service in China could take the longest, up to two years, (ECF No. 47 at 3 ¶ 10), the two China-based defendants have now appeared in this case. Moreover, although Plaintiff estimated that service in France would be effectuated "by September 30, 2019," (ECF No. 81 at 2–3 ¶ 6), it is now January 2020 and Sechet, the France-based defendant, has not been served. Plaintiff did not give an estimated time for serving Saint Bitts. I recognize that Plaintiff relies on estimates from its process server, but the off-base estimates do not encourage the Court that the completion of service can be reliably foreseen.

This case must move forward. As Plaintiff recognizes, "service on a foreign defendant is 'not unlimited. . . .'" (ECF No. 104 at 2). So while it may be true, as Plaintiff says, that "[e]ffecting service upon foreign defendants is a protracted process, largely outside of the plaintiff's control," (ECF No. 104 at 2), Plaintiff had control over when it *started* the process and how aggressively it has pursued service. The Court would expect Plaintiff to have hired an international process server, translated documents, sought letters

11

rogatory, and completed and delivered the Hague paperwork much sooner than three, six, and eight months into the case. Plaintiff has now had a year to engage in service of process, which, under the circumstances of this case, is a very generous period of time. That period has come to a close.

Based on the foregoing, the Court **denies** the Motion for 90-Day Extension of Time to Serve Certain Foreign Defendants. (ECF No. 94).

**DONE AND ORDERED** in Chambers at Miami, Florida, this 21st day of January 2020.

_____
CHRIS McALILEY
UNITED STATES MAGISTRATE JUDGE

cc:   The Honorable Kathleen M. Williams
      All counsel of record