Exhibit 1

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

---

UNITED AMERICAN CORP., a Florida company,

        Plaintiff

        v.

BITMAIN, INC., ~~SAINT BITTS LLC d/b/a BITCOIN.COM,~~ ROGER VER, BITMAIN TECHNOLOGIES LTD., ~~BITMAIN TECHNOLOGIES HOLDING COMPANY,~~ JIHAN WU, PAYWARD VENTURES, INC. d/b/a KRAKEN, JESSE POWELL, ~~AMAURY SECHET,~~ SHAMMAH CHANCELLOR, and JASON COX,

        Defendants.

**AMENDED COMPLAINT**

Civil Action No. 18-cv-25106

---

Plaintiff United American Corp. ("Plaintiff" or "UAC"), by and through undersigned

counsel, hereby sues Bitmain, Inc. ("Bitmain"), Roger ~~counsel, hereby sues Bitmain, Inc., Saint Bitts LLC d/b/a Bitcoin.com ("Bitcoin.com"), Roger~~

Ver ("Ver"), Bitmain Technologies Ltd.~~,~~ ("Bitmain Technologies ~~Holding Company (together with"),~~ (Bitmain~~, Inc.~~ and Bitmain Technologies Ltd.~~,~~ are collectively referred to as "Bitmain Entities"), Jihan Wu ("Wu"), Payward Ventures, Inc. d/b/a Kraken ("Kraken"), Jesse Powell~~,~~ ~~Amaury Sechet~~ ("Powell"), Shammah Chancellor ("Chancellor"), Jason Cox

("Cox") (collectively, ~~Sechet, Chancellor, and Cox are collectively referred to as "Bitcoin ABC")~~ ~~(collectively,~~

    "Defendants"), for damages and for injunctive relief. In support thereof, Plaintiff

alleges as follows:

~~follows:~~

## NATURE OF THE ACTION

1.    This action involves a scheme by a tight knit network of individuals and

organizations to manipulate the cryptocurrency market for Bitcoin Cash, effectively hijacking the

47165362;2

Bitcoin Cash network, centralizing the market, ~~and~~ violating all accepted standards,

protocols and the course of conduct associated with Bitcoin since its inception~~.~~, and harming

competition

associated with Bitcoin Cash.

52057287;3

2. This well-planned scheme caused a global capitalization meltdown of more than $4 billion and caused many U.S. Bitcoin Cash holders – including Plaintiff – to suffer damages and irreparable harm.

3. In addition to the significant damages incurred by all stakeholders in Bitcoin Cash as a result of the Defendants' overt take over and manipulation of the market, there are significant long-term implications for world economies and particularly the U.S. economy.

4. The market manipulation is *centralizing* what is intended to be a *decentralized* transactional system enabling the corruption of the democratic and neutral principles of the Bitcoin Cash network and the erosion of competitive activity in the market.

5. As set forth in greater detail below, Defendants have engaged in unfair methods of competition, and through a series of unconscionable, deceptive and unfair acts and/or practices, manipulated the Bitcoin Cash cryptocurrency market for their benefit and to the detriment of the Plaintiff and the other stakeholders.

## PARTIES

6. Plaintiff United American Corp. is a corporation organized and existing under the laws of Florida with its principal place of business at 5201 Blue Lagoon Dr., Suite 800, Miami, Florida 33126.

7. Defendant Bitmain, Inc. is a corporation organized and existing under the laws of Delaware with its principal place of business in San Jose, California. Upon information and belief, Bitmain, Inc. maintains numerous mining farms in the United States for the mining of cryptocurrency, such as Bitcoin and Bitcoin Cash, and hires numerous employees for positions related to its Bitcoin activities in the United States.

8. Defendant Saint Bitts LLC d/b/a Bitcoin.com is a limited liability company organized and existing under the laws of Saint Kitts and Nevis with its principal place of business in Tokyo, Japan.

98.     Defendant Roger Ver is an individual domiciled, upon information and

belief, in Tokyo, Japan and is *sui juris*.

109. Defendant Bitmain Technologies Ltd. is a limited company organized and existing under the laws of Hong Kong with its principal place of business in Beijing, China.

11. Defendant Bitmain Technologies Holding Company is a corporation registered in the Cayman Islands.

1210. Defendant Jihan Wu is the CEO of Bitmain Technologies Ltd. and, upon information and belief, is an individual domiciled in San Jose, CaliforniaChina, and is *sui juris*.

1311. Defendant Payward Ventures, Inc. is a corporation organized and existing under the laws of Delaware with its principal place of business in San Francisco, California. Payward Ventures, Inc. is registered in San Francisco County as the owner of the fictitious business name "Kraken" and operates the Bitcoincryptocurrency exchange Kraken.com.

1412. Defendant Jesse Powell is the CEO of Kraken, is an individual domiciled in San Francisco, California, and is *sui juris*.

15. Defendant Amaury Sechet is an individual domiciled in Doue la Fontaine, France and is *sui juris*.

1613. Defendant Shammah Chancellor is an individual domiciled in San Francisco, California and is *sui juris*.

1714. Defendant Jason Cox is an individual domiciled in San Mateo, California and is *sui juris*.

## NON-PARTIES

15. Non-party Saint Bitts LLC d/b/a Bitcoin.com is a limited liability company organized and existing under the laws of Saint Kitts and Nevis with its principal place of business in Tokyo, Japan.

16. Non-party Amaury Sechet is an individual domiciled in Doue la Fontaine, France and is *sui juris*.

## JURISDICTION AND VENUE

~~18~~17.    This Court has federal question jurisdiction over this matter pursuant to 28

U.S.C. § 1331 because it involves a civil action arising under the Constitution, laws, or treaties

of the

~~47165362;2~~52057287;3                                    - 3 -

United States. Specifically, the allegations of Count I involve violations of Section 1 of the

Sherman Act, 15 U.S.C. § 1.

~~19. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because~~

~~Plaintiff is a citizen of Florida, and Defendants are citizens of different states other than Florida or~~

~~citizens or subjects of a foreign state, and the amount in controversy exceeds $75,000, exclusive~~

~~of interest and costs.~~

~~20~~18.    This Court has personal jurisdiction over Defendants because, as set forth in

detail herein, Defendants have engaged in ~~business~~Bitcoin Cash related activities in the ~~State of~~

~~Florida~~United States and have purposefully availed themselves of the benefits and privileges of

conducting such business in ~~this jurisdiction~~the United States.

19.    Upon information and belief, Bitmain Technologies maintains offices in Asia,

Europe and the United States. Bitmain Technologies sells its ASIC devices for mining Bitcoin

directly to customers throughout the United States. Bitmain Technologies has also reportedly

planned an Initial Public Offering on a United States-based stock exchange. *See* Perez, Yessi B.,

Bitmain Quietly Filed for a US IPO With Deutsche Bank as its Sponsor, The Next Web (Oct. 30,

2019), available at https://thenextweb.com/hardfork/2019/10/30/cryptocurrency-mining-

manufacturer-bitmain-reportedly-filed-for-a-us-ipo-with-deutsche-bank-as-its-sponsor/. Bitmain

Technologies is also reported to have leased office space in San Jose, California. *See* Bitters,

Janice, Exclusive: Chinese Cryptocurrency Giant Fills Last Vacancy in Downtown San Jose

Office Tower, available at https://www.bizjournals.com/sanjose/news/2018/07/16/bitmain-

AKERMAN LLP, THREE BRICKELL CITY CENTRE, 98 SOUTHEAST SEVENTH STREET, SUITE 1100, MIAMI, FL 33131

technologies-san-jose-office-riverpark.html?s=print. Bitmain Technologies advertises this commercial space on the "Contact Us" page of the Bitmain.com website. *See* https://www.bitmain.com/contact. Bitmain Technologies is also reported to have made a $500 million investment in a Rockdale, Texas blockchain data center. *See* Bitmain Chooses Rockdale, Texas, for Newest Blockchain Data Center: Company Anticipates New Facility Will Initiate Operations in Early 2019 and Be Fully Operational in about 2 Years, Bringing 400 New Jobs, available at https://www.businesswire.com/news/home/20180806005156/en/Bitmain-Chooses-

Rockdale-Texas-Newest-Blockchain-Data; https://www.forbes.com/sites/pamelaambler/2018/08/17/all-you-need-to-know-about-crypto-mining-phemon-bitmain/#7470adf3580f. Bitmain Technologies has also utilized the United States federal courts to file a lawsuit. *See* Bitmain Technologies Ltd. v. Doe, No. 2:18-cv-1626 (W.D. Wash. 2018).

20.      Upon information and belief, Wu is a frequent promoter in the United States of Bitmain products and services and of Bitcoin generally. He often speaks publicly in the United States on topics regarding blockchain. *See, e.g.,* DC Blockchain Summit 2018, Georgetown University, available at https://www.youtube.com/watch?v=vbNMYfqTCkA (last visited Nov. 25, 2019); Washington Elite AI Blockchain Summit, https://washingtonelite.com/# (last visited Nov. 25, 2019).


21.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial

part of the events and omissions at issue in this action occurred in this District.

## FACTUAL BACKGROUND

**Cryptocurrency**

22.      Cryptocurrency is a form of digital currency that uses cryptography to secure electronic transactions and to control the creation of new virtual currency units. Popular forms of cryptocurrency include Bitcoin, Bitcoin Cash, and Ethereum.

Case 1:18-cv-25106-KMW Document 133 Entered on FLSD Docket 02/28/2020 Page 9 of 40

23.     Though a form of "virtual currency," the value of a cryptocurrency is real

and trades in currency markets.

24.     New cryptocurrency is created through a process known as "mining."

People compete to "mine" virtual currencies using computing power to solve complex math

puzzles. The solutions to these puzzles are then used to encrypt and secure the cryptocurrency.

The

computers or pools of computers (nodes) which are the first to solve these puzzles are rewarded

with new cryptocurrency.

25.     Once earned, virtual currency is stored in a digital wallet associated with

the computing device that solved the puzzle.

26.     These math puzzles are solved by servers using computer power (or powered

by computers). The puzzles do not require any calculations by the person mining the currency.

As competition to create more virtual currency has increased, the mathematical puzzles have

become more complex, making virtual currency more difficult to obtain. Computers that were

once capable of efficiently mining Bitcoin could now take centuries to obtain the same results.

**The Genesis of Bitcoin and Bitcoin Cash**

27.     The original vision of the document known as the "Satoshi Nakamoto

whitepaper" published on October 31, 2008, was a simple one: to create a purely "peer-to-peer"

version of electronic cash that would allow online payments from one party to another without

going through a financial institution. The Whitepaper coined the term "Bitcoin" to represent this

digital "cash," more generally referred to as "digital currency." A true and correct copy of the

Whitepaper is attached hereto as **Exhibit A**.

28.     At a high level, the integrity of the Bitcoin system relies on a network of decentralized public ledgers that confirm and maintain the records of digital transactions on a "blockchain" in a highly cryptographic environment. Whereas centralized ledgers are highly vulnerable to tampering and fraud, confidence and trust within a blockchain transactional network is established through decentralized ledgers that are identical and continuously updated and compared. These decentralized ledgers create an environment where one would have to

tamper with the majority of ledgers simultaneously and in exactly the same manner within the same cryptographic environment to engage in any sort of tampering.

47165362;2                                    - 5 -

29.     The strength of Bitcoin Cash as a digital currency lies in it being a "permissionless" system with a decentralized public ledger (the blockchain). To accomplish and maintain the system requires mechanisms for reaching a global, decentralized consensus on the valid blockchain. Two of those mechanisms are: (a) the Proof-of-Work[1] – which applies on a block-by-block basis; and (2) assuring that the "main chain" at any given time is whichever valid chain of blocks has the most cumulative Proofs-of-Work associated with it (normally, the longest chain).

30.     A mining pool is the pooling of resources by virtual currency miners, who share their processing power over a network, to split the reward equally, according to the amount of work they contributed to the probability of solving the puzzles. Mining pools have been established because: (1) the difficulty of the math puzzles has increased; (2) a given miner cannot be working on more than one problem at a time; and (3) there is no way of knowing which miner will solve a given problem.

31.     The reward per miner within a pool will be a direct function of the collective reward over a period of time divided by the number of miners. Because mining is very energy

consuming and electricity represents the largest operating cost (both in powering the miner and

the cost of air conditioning to cool miners as applicable), to be profitable, miners must generate

higher rewards over a period of time than the cost of electricity needed to mine in the same

period of time. As such, as difficulty increases, so does the cost of mining.

1.    The Proof-of-Work is designed to eliminate the insertion of fraudulent transactions in the blockchain.

52057287;3        - 7 -

32. For a cryptocurrency network to remain secure and trusted, the entire process must

remain distributed and decentralized so that no single individual, entity or pool can control

1.    The Proof-of-Work is designed to eliminate the insertion of fraudulent transactions in the blockchain.

more than 50% of computing power. If this 50% figure is exceeded, the network is no

longer decentralized. Then, those using the network will be forced to utilize a centralized

network in which they lack confidence and trust.

33.    While there are many forms of cryptocurrency in existence, each form of

cryptocurrency has distinctive characteristics that separate it from other forms of cryptocurrency.

Those characteristics include the size of the blocks associated with the cryptocurrency, the

software design underpinning the cryptocurrency, and the utility of the cryptocurrency as a

means of storing value or as a means of conducting day-to-day transactions. Bitcoin Cash,

specifically, is a unique form of cryptocurrency because it is intended to be scalable, meaning

that it is designed with larger block data limitations so that transactions using Bitcoin Cash can

be performed quickly and with relatively low transaction costs in a peer-to-peer system. Bitcoin

Cash is also unique in that it is, by far, the most widely adopted form of peer-to-peer

cryptocurrency cash-like system in the world.

**United American Corp.**

3334.    In late 2017, Plaintiff announced publicly that it was moving heavily

into blockchain and blockchain technologies. This was to be a multi-phased approach that

encompassed blockchain solutions, both at the network level for the execution of blockchain

transactions and at the mining level for the mining of cryptocurrencies.

3435.    At the network level for the execution of blockchain transactions, on

December 22, 2017, Plaintiff announced the creation of BlockNum, a distributed and

decentralized ledger technology and the first blockchain to be based on SIP-Protocol (Session

Initiated Protocol),

which is used by the vast majority of telecommunications companies around the world.
BlockNum allows the execution of blockchain transactions between any two telephone numbers

regardless of their location meaning that transactions can occur simply and without the need for

"cryptocurrency wallets" backed by the Bitcoin Cash network. Plaintiff also filed a patent

application for BlockNum with the U.S. Patent and Trademark Office.

3536.    Also in late December 2017, Plaintiff incorporated two subsidiaries to be used

for exploitation of its developing business in blockchain: Blockchain Data Centers Inc. and

United Blockchain Corp.

3637.    At the mining level, Plaintiff focused on the development of a low cost,

rapid deployment solution for operation of cryptocurrency mining – the BlockchainDome. The

BlockchainDome is a passive "cooling ground-coupled heat-exchanger" technology that uses

Canadian well and chimney principals combined with a technique for utilizing negative air

pressure in its mining rigs. Plaintiff also filed a patent application for the

BlockchainDome with the U.S. Patent and Trademark Office.

Case 1:18-cv-25106-KMW Document 138 Entered on FLSD Docket 02/28/2020 Page 13 of 41

3738.     Plaintiff's development of these technologies was intended to mine the Bitcoin Cash network. The reason Plaintiff has focused on a "peer-to-peer" payment system is because it will eventually generate more in transaction fees than the mining generates. The viability of Plaintiff's businesses depended on the continued efforts to scale up Bitcoin Cash for use as a peer-to-peer version of electronic cash.

3839.     Plaintiff's construction of the first BlockchainDome commenced in March 2018 and to date it has erected four domes and operated over 5,000 Bitcoin Cash-based miners. The Plaintiff's total investment in development and deployment of this infrastructure exceeds $4 million.

52057287;3                                                    - 9 -

3940.     The economics of the domes depend on mining Bitcoin Cash within normal market conditions. Cryptocurrency mining, like any other mining, is predicated on the basic principle that the value of the mining output exceeds the cost to mine that output. Plaintiff has designed its BlockchainDomes to be highly efficient and among the lowest, if not the lowest, cost producers.

4041.     At the same time, the broader, macro-economics of Bitcoin Cash mining are based on market forces in a *decentralized* market whereby no one entity controls the market (allowing for an unbiased value of the currency). Without decentralization, normal market forces are less effective because mining power can be shifted to control markets. This shift can ultimately result in predatory pricing thereby reducing the economic value of the output so low as to eliminate competition and ultimately result in market control and centralization.

**The Bitcoin Cash Upgrade**

42.     Bitcoin Cash (BCH) emerged on August 1, 2017 after departing from Bitcoin's ("Bitcoin Core" or "BTC") original blockchain via a hard fork. Bitcoin Core had a feature built into its original design whereby the maximum block size was 1 MB. Blocks are accounting units that periodically record new transactions in cryptocurrency. This 1 MB limitation meant that Bitcoin could not scale as more nodes sought to utilize this form of virtual currency because transactions on the network would take too long to be confirmed and those seeking to transact in Bitcoin Core were required to pay disproportionately high fees to have their transactions confirmed.

43.     The dispute between supporters of Bitcoin Core and the supporters of Bitcoin Cash centered around the competing beliefs that, on the one hand, Bitcoin should be primarily a way to store value, and on the other hand, that Bitcoin should be primarily a way to conduct

transactions. The latter group believed that Bitcoin should develop into a peer-to-peer system supporting cash-like transactions.

44.     After the fork of Bitcoin Cash from Bitcoin Core, the combined value of the two digital currencies increased.

45.     A hard fork refers to a change to the protocol of a blockchain network whereby nodes of the newest version of the blockchain follow a new rules set, while nodes of the older version of the blockchain continue to follow the prior rules set. The nodes following the older rules set are no longer compatible with the nodes following the new rules set. This essentially creates two different chains of the blockchain, with the new version branching off.

41~~46~~.     Prior to ~~the network upgrade scheduled for~~ November 15, 2018, the Bitcoin Cash network was mined by several different nodes applying various computer software implementations (i.e. Bitcoin Unlimited, Bitcoin ABC, Bitcoin ~~SV, Bitcoin~~ XT, etc.). All of these software implementations were compatible with each other and were all responding to the same rules set.

42~~47~~.     On November 15, 2018, at 11:40 am EST, the Bitcoin Cash network was ~~scheduled for automatic soft~~ware upgrades for each of the different software implementations. Software upgrades are a routine feature of the technology behind Bitcoin Cash, and occur every six months.

43~~48~~.     Because two of the software implementations (Bitcoin ABC 0.18.4 or Bitcoin SV 0.1.0)[2] decided to proceed with upgrades that would no longer respect the same rules set, a dispute arose over which of the two rules sets being applied by the two software implementations ~~would be th~~e rules set that the Bitcoin Cash blockchain was going to follow moving forward.

49.     The upgrade proposed by Bitcoin ABC developers was led by Ver and strongly

AKERMAN LLP, THREE BRICKELL CITY CENTRE, 98 SOUTHEAST SEVENTH STREET, SUITE 1100, MIAMI, FL 33131

Case 1:18-cv-25106-KMW Document 144-1 Entered on FLSD Docket 12/06/2019 Page 17 of 51

supported by Bitmain Technologies and Jihan Wu. Wu and Ver were among the earliest Bitcoin

52057287;3                                                    - 11 -

and Bitcoin startup investors. The Bitcoin ABC proposal sought to preserve Bitcoin

Cash's basic structure, including limiting the block size to 32 MB, and immunizing it

from major developments in the future.

       50.       The upgrade proposed by Bitcoin SV was released on August 16, 2018. The

goal of the Bitcoin SV upgrade was to increase the block size of Bitcoin Cash from 32 MB to

a maximum of 128 MB so that network capacity and scale could be increased as well. A block

can be thought of as the smallest unit of accounting which records any transaction transferring

Bitcoin Cash in the previous ten minutes. The size of a Bitcoin Cash block determines how

many transactions can be confirmed on the network per 10 minute interval. The larger the

block, the more transactions can be processed at any given time, and the lower the transaction

cost for all users of Bitcoin Cash. This would allow for Bitcoin Cash to be seamlessly utilized

by a greater number of merchants and consumers with minimal costs associated with a

transaction.

  44 51.  Consistent with Nakamoto's Whitepaper, the determination over *which* rules set

would be applied by software implementations on the network going forward, would be

based on the "vote"[32] of the various nodes mining the network – i.e., which node

implementations

exercised more computer hashing power through its attached mining rigs while

working to continue the chain.

  45 52.  Whichever rules set received the most "votes" in the aforementioned "hash war"

was going to continue the Bitcoin Cash blockchain going forward. The "losing" rules set

would be forced to create a new and distinct chain.

46.  Upon information and belief, the scheduled Bitcoin Cash network upgrade was
manipulated by Defendants in an effort to artificially take control of the network blockchain
moving forward.

2      Bitcoin Unlimited, XT and others followed the ABC implementation.

3 2      Nakamoto's Whitepaper states that nodes in the system "vote with their CPU power,
expressing their acceptance of valid blocks by working on extending them..." *See* Exhibit A
at ¶ 12.

53.      Upon information and belief, the scheduled Bitcoin Cash network
upgrade was manipulated by Defendants in an effort to artificially take control of the
network blockchain moving forward.

47165362;2                                      - 9 -

**The Scheme and the Players**

4754.It is clear that during the Bitcoin Cash software update there was a systematic and organized scheme by the Defendants to bring forward significant computing hashing power to the Bitcoin Cash network on a temporary basis for the sole purpose of dominating the Bitcoin Cash ABC 0.18.4 software chain implementation.

4855.Understanding the Defendants' scheme requires understanding the players involved as they are not legally affiliated.

4956.The China International Capital Corporation ("CICC") is one of China's leading investment banking firms that engages in investment banking, securities, investment management, and other financial services.

5057.CICC has the exclusive mandate for the Initial Public Offering of Bitmain Technologies ~~Ltd~~.

5158.Bitmain Technologies ~~Ltd~~. – founded in 2013 by Jihan Wu and Micree Zhan – is the largest designer of what is referred to as "ASIC" or Application Specific Integrated Circuit chips for mining operations. The Bitmain Technologies ASIC chip powers the Antminer series of mining servers that are the dominant servers operating on a number of cryptocurrency networks such as Bitcoin and Bitcoin derivatives.

59.Bitmain Technologies engages in marketing of its products in the United States. It maintains offices and research centers across the globe, including the United States. It hosts events in the United States for industry participants to learn about Bitmain Technologies'

products and services. It also maintains repair centers throughout the United States. In 2019, Bitmain Technologies filed for an initial public offering in the United States.

52 60.     Estimates of ~~Bitmain's~~ Bitmain Technologies' market share for ASIC

servers ranges from 67 to 80% and it is estimated that Bitmain Technologies controls well

in excess of 60% of the world's cryptocurrency mining computer (hashing) power.

53 61.     Bitmain Technologies also operates Antpool and BTC.com, two of the

largest Bitcoin and Bitcoin Cash mining pools in the world. As of December 2, 2018 (based

on a 7 day

average) these two pools collectively controlled 31% of Bitcoin mining and 40% of Bitcoin

Cash ABC.

AKERMAN LLP, THREE BRICKELL CITY CENTRE, 98 SOUTHEAST SEVENTH STREET, SUITE 1100, MIAMI, FL 33131

54 62.      Bitcoin.com is a privately-owned company registered in the off shore islands

of St Kitts and Nevis under the organization of Saint Bitts LLC (with headquarters in Tokyo).

Bitcoin.com provides Bitcoin and Bitcoin Cash services, such as purchasing and

selling these cryptocurrencies, and choosing a wallet for both. It has servers and programmers

in the United States and operates the Bitcoin.com pool (currently 7.4% of Bitcoin Cash ABC)

with hash power provided by Bitmain Technologies. It also offers other services such as

news, an online store and online gaming with proceeds paid out in Bitcoin Cash.

gaming.

55 63.   Bitcoin.com was founded and remains owned by Roger Ver ("Ver"), a U.S.
natural citizen who renounced his U.S. citizenship in 2014 after obtaining a Saint

Kitts and Nevis passport. Upon information and belief, Ver is currently living in Tokyo.

56 64.      Ver is a self-described "Bitcoin Angel Investor" and became interested

in cryptocurrencies early in Bitcoin's history. He invested in a number of Bitcoin projects

and

startups including the Kraken trading platform, Ripple and BitInstant – founded by ex-

convict Charlie Shrem.[4][3]

57 65.   Ver is a strong advocate of Bitcoin Cash and the original forking of Bitcoin into
Bitcoin and Bitcoin Cash in 2017. He has openly supported the development and

implementation of the ABC version of Bitcoin Cash.

58 66.      Sterlin Lujan is Bitcoin.com's Communications Ambassador and is

responsible for representing the company in the United States. *See*

https://sterlinlujan.com/about/.

---

[4]      Shrem was sentenced to 2 years in prison for his involvement of transferring some $1 million in Bitcoin to the "Silk Road," a black market platform which was popular for money laundering and illegal drug transactions on the dark web (the site was shut down by the FBI in 2011). Ver was invested in Silk Road and has tweeted support for the site and the concept. *See* https://www.businessinsider.com.au/charlie-shrem-arrested-bitcoin-ceo-2014-1.

Case 1:18-cv-25106-KMW Document 1 Entered on FLSD Docket 12/06/2018 Page 21 of 27

59 67.   During the November 15, 2018 Bitcoin Cash network upgrade, Ver and Bitcoin.com colluded with Jihan Wu and Bitmain Technologies (whose electricity rates are subsidized by the Chinese government)[54] to reallocate pools of Bitmain Technologies servers from the Bitcoin Core network ("BTC") to Bitcoin.com's pools in the Bitcoin Cash network minutes before the implementation of the Bitcoin Cash network upgrade. The effect was to bring pools of servers to mine the upgrade from *another* network (i.e., "rent" hashing power), that were not previously mining the Bitcoin Cash blockchain, thereby increasing Bitcoin.com's hashing power by over 4,000%.

3        Shrem was sentenced to 2 years in prison for his involvement of transferring some $1 million in Bitcoin to the "Silk Road," a black market platform which was popular for money laundering and illegal drug transactions on the dark web (the site was was shut down by the FBI in 2011). Ver was invested in Silk Road and has tweeted support for the site and the concept. *See* https://www.businessinsider.com.au/charlie-shrem-arrested-bitcoin-ceo-2014-1.

60. The impact of redirecting hashing power from another network can be seen clearly in the following graph:



AKERMAN LLP, THREE BRICKELL CITY CENTRE, 98 SOUTHEAST SEVENTH STREET, SUITE 1100, MIAMI, FL 33131

Case 1:18-cv-25106-KMW Document 1 Entered on FLSD Docket 12/06/2018 Page 23 of 27 54

It is no secret that access to cheap electricity in China has been a major advantage to Bitmain Technologies. The company has taken advantage of cheap coal-fired power from coal-abundant regions in China such as Xinjiang and Inner Mongolia, which have in recent years taken to crypto mining to boost their less-developed economies. Local authorities in China have provided Bitmain Technologies with a highly subsidized electricity rate. The subsidized electricity provided to by China to Bitmain Technologies has enabled Bitmain Technologies to dump large amounts of hashing power into the Bitcoin network at a rate that is under cost relative to its competitors. The effect of this is that there is not a level playing field for those who are not subsidized by the Chinese government.

47165362;2

AKERMAN LLP, THREE BRICKELL CITY CENTRE, 98 SOUTHEAST SEVENTH STREET, SUITE 1100, MIAMI, FL 33131

Case 1:18-cv-25106-KMW Document 133 Entered on FLSD Docket 02/28/2020 Page 24 of 51

- 15 -

68.      Upon information and belief, Bitmain Technologies reallocated a significant portion of hash power from customers who had joined the Bitmain mining pools without the authorization or consent of those customers. *See* https://www.shitcoin.com/blog/shitcoin-com-newsletter-18-november-16-2018; https://medium.com/@jiangzhuoer/abc-vs-bsv-hash-war-part-iii-the-war-of-the-hash-power-45fef8010467.

69.      Upon information and belief, Wu stated prior to the fork that "by relocating hash power from BTC mining to BCH mining – BTC price will dump below yearly support; it may even breach $5,000. But since CSW [Craig Wright – one of the proponents of SV] is relentless, I am all in to fight till death!"

70.      The reallocation of Bitmain Technologies' hashing power onto the Bitcoin.com pools could not be accomplished without coordination between Wu, on behalf of Bitmain Technologies, and Ver, on behalf of Bitcoin.com, because the reallocation of extensive amounts of hash power from one pool to another requires preparation by the receiving pool to ensure that it is able to accommodate the spike in hash power on its network.

71.      Upon information and belief, Kraken – a well-known Bitcoin exchange[5] in which Ver himself is a principal investor – and Powell, Kraken's CEO and co-founder, were involved in the scheme because even before the outcome of the fork was known, Kraken released public statements in favor of the ABC implementation and against the SV implementation. Kraken

_____

[5]      Kraken is a US-based cryptocurrency exchange established in 2011 by Jesse Powell with the support of Ver (his friend from high school) which operates in the U.S., Canada, the E.U. and Japan. The exchange provides the mechanism to trade between Euros/US dollars/Canadian dollars/Japanese Yen and various cryptocurrencies such as Bitcoin, Bitcoin Cash and several

other cryptocurrencies. It purports to be the largest Bitcoin exchange in Euro volume and liquidity.

stated that, "Bitcoin SV does not presently meet Kraken's listing requirements and is unlikely to be supported."

72.     By comparison to Kraken's biased announcement before the outcome of the hash war was even determined, Binance, another cryptocurrency exchange, merely acknowledged the upcoming hash war and made no statements vouching for either the ABC or SV proposals.

73.     Upon the completion of the fork, Wu publicly congratulated Bitcoin.com for mining the first block with the ABC rule set. This statement demonstrated advance coordination between Wu and Ver.

74.     The impact of redirecting hashing power from another network can be seen clearly in the following graph:



The lighter/orange line represents the hashing power of the Bitcoin ABC pool and the darker/red line the hashing power of the Bitcoin SV pool. Immediately after the software upgrade, the Bitcoin ABC pool hashing power rises to a level that had not previously been seen indicating the intermittent deployment of "rented" hashing. This type of hashing peak is ***not*** a normal occurrence. The peaks continued several times in the subsequent days until they leveled off to normal levels once Bitcoin ABC's dominance was established.

Case 1:18-cv-25106-KMW Document 144-1 Entered on FLSD Docket 03/27/2020 Page 27 of
51
Case 1:18-cv-25106-KMW Document 133 Entered on FLSD Docket 02/28/2020 Page 28 of 41
- 17 -
52057287;3

6175.    The above described actions were intentional and clearly planned in advance, with Bitmain Technologies organizing deployment (or actually redeployment) of up to 90,000 Bitmain Antminer S9 servers in early November. *See* https://cointelegraph.com/news/mining-giant-bitmain-hurries-to-deploy-90-000-s9-antminers-ahead-of-bitcoin-cash-hard-fork

76.    Five hours before the upgrade on November 15, 2018, Ver and Andreas Brekken (self-proclaimed "advisor to some of the most successful blockchain projects in the world" and former software engineer for Kraken) were interviewed on an episode of the internet vlog shitcoin.com regarding the hash war.
https://www.youtube.com/watch?v=4VilbwA0Hrs.

77.    Brekken posted on Twitter on November 15, 2018 that 300,000 s9 miners were diverted by Ver to secure the ABC version of the upgrade. This statement, along with the close relationship between Ver and Brekken and their physical meeting on the day of the upgrade, tends to demonstrate that Ver and Wu coordinated the diversion of Bitmain miners.

6278.    Ver himself took to Twitter to pat himself on the back on the unprecedented level of hashing power he brought to bear on the network upgrade – more hashing power than the entire network had earlier that very same day, stating:

[Different first page setting changed from on in original to off in modified.].
[Link-to-previous setting changed from on in original to off in modified.].



79.      Ver also posted a video on November 19, 2018 where he alluded to the fact
that he had rented hash power during the upgrade.

https://www.youtube.com/watch?v=_kFscvMfGrI.

80.      Bitcoin.com and Ver themselves acknowledge that Bitcoin's creator
Satoshi Nakamoto "outlined the design of the Bitcoin system and protocol" in his
Whitepaper. *See* https://www.bitcoin.com/about-us. Yet, the above described actions by Ver
and Bitcoin.com violated the central tenets and principles established by his Whitepaper and
relied on by stakeholders and the market.

81.      Nakamoto's Whitepaper makes express that nodes in the system "vote with
their CPU power, expressing their acceptance of valid blocks by working on extending them..."
While nodes "can leave and rejoin the network," it has always been understood that it is the
nodes that are mining the blockchain that are able to "vote with their CPU power."

[Different first page setting changed from on in original to off in modified.].
[Link-to-previous setting changed from on in original to off in modified.].

AKERMAN LLP, THREE BRICKELL CITY CENTRE, 98 SOUTHEAST SEVENTH STREET, SUITE 1100, MIAMI, FL 33131

Case 1:18-cv-25106-KMW Document 144-1 Entered on FLSD Docket 03/27/2020 Page 29 of 51

*[Different first page setting changed from on in original to off in modified.]*
*[Link-to-previous setting changed from on in original to off in modified.]*

Case 1:18-cv-25106-KMW Document 1138 Entered on FLSD Docket 12/06/201802/28/2020

47165362;252057287;3                                    - 1319 -

*[Different first page setting changed from on in original to off in modified.]*
*[Link-to-previous setting changed from on in original to off in modified.]*
AKERMAN LLP, THREE BRICKELL CITY CENTRE, 98 SOUTHEAST SEVENTH STREET, SUITE 1100, MIAMI, FL

63. Bitcoin.com itself acknowledges that Bitcoin's creator Satoshi Nakamoto "outlined the design of the Bitcoin system and protocol" in his Whitepaper. *See* https://www.bitcoin.com/about-us. Yet, the above described actions by Bitcoin.com violated the central tenets and principles established by his Whitepaper and relied on by stakeholders and the market.

64. Nakamoto's Whitepaper makes express that nodes in the system "vote with their CPU power, expressing their acceptance of valid blocks by working on extending them..." While nodes "can leave and rejoin the network," it has always been understood that it is the nodes that are mining the blockchain that are able to "vote with their CPU power."

6582. By essentially bringing in mercenaries from *another* network (the BTC network) to temporarily mine the Bitcoin Cash network during the software upgrade and then leave, Bitmain Technologies, through Wu, and Bitcoin.com, through Ver, effectively hijacked the blockchain. Their actions diluted the "vote" being exercised by the existing nodes[6] during the upgrade, violated the ground rules of the network that other users had relied on and respected for years, and artificially pumped up the chain implementation with computer hashes to dominate the temporary software upgrade.

6683. To appreciate the effective hijacking of the blockchain, one need only look at the percentage of Bitcoin Cash blocks being awarded – and the diversity of the miners to which they were being awarded – immediately *before and after* the network upgrade on November 15, 2018.

6784. The following pie chart illustrates the distribution of Bitcoin Cash Blocks during the week immediately preceding the network upgrade (as reported by coin.dance). Bitcoin.com and the Bitmain pools (AntPool and BTC.com) were collectively awarded 14.1% of the blocks during the *preceding* week.

[Case-pi-iodo-ssdok-08ugu-yon-Docu-nignu14-wf-in-mdkda]

6      Before Bitcoin.com brought its Bitmain mercenaries to bear on the blockchain, over 70% of the existing nodes had elected to mine the Bitcoin SV chain.

and the Bitmain pools (AntPool, BTC.com, and ViaBTC) were collectively awarded 27.6% of the
blocks during the *preceding* week.



6885. The next pie chart illustrates the distribution of Bitcoin ABC Blocks on
November 16, 2018, the day *after* the upgrade. Bitcoin.com and the Bitmain pools (AntPool, and
BTC.com, and ViaBTC) were being awarded 100 98.85% of the blocks immediately after the
network upgrade.[7]

7       At one point, the Bitmain/Bitcoin.com pool controlled 90-95% of all hashing on the resulting Bitcoin Cash network (BCH).

November 16, 2018

coin.dance



86. The combined value of Bitcoin Cash after the hard fork was significantly less than the value of Bitcoin Cash prior to the fork.

~~69~~87. But the scheme did not end ~~there~~with the improper reallocation of hash power during the upgrade. The next day on November 16, 2018, ~~Bitcoin ABC through defendants~~ Amaury Sechet~~, and defendents~~ Shammah Chancellor~~,~~ and Jason Cox (Sechet, Chancellor and Cox are collectively referred to as "Bitcoin ABC Developers"), implemented a "poison pill" in the resulting Bitcoin Cash ABC chain referred to as a "checkpoint."

70 88.   The implemented checkpoint is problematic because it also "centralized" what should be a *decentralized* market due to the way the checkpoint was added and its location close to the tip of the blockchain.

71 89.     The integrity of a blockchain depends on a consensus being reached on the longest blockchain and that blockchain being accepted by all nodes on the network. While in

theory the blockchain ledger becomes more and more immutable as time passes, a fork can arise at any depth on the chain and become the main chain *if* that is the consensus.

~~72~~90.     The decision by ~~Bitcoin ABC~~Sechet, Chancellor and Cox to "lock down" the block chain after an arbitrary number of blocks close to the tip of the blockchain – through a mechanism referred to as "checkpoints" and "Deep Reorg Prevention" – will allow anyone with 51% hashing power to quickly cement control of the blockchain ledger. They would also cement control over future changes to Bitcoin ~~cash~~Cash functionality as well as changes to the consensus rules. Combining this checkpoint power with the hashing power of Bitcoin ABC backers like Ver (through Bitcoin.com) and Wu (through Bitmain Technologies' mining pools, AntPool and BTC.com) amounts to centralization. Anyone who combines hashing power and checkpoints in this fashion will be able to override *any* consensus reached by the rest of the network, forcing others to conform or create an unwanted hard fork.

91.     The effect of creating the checkpoint was to ensure that only the proponents of Bitcoin Cash ABC could dictate any future software upgrades on that cryptocurrency network. Therefore, the decentralized process whereby competing participants in the Bitcoin Cash network could propose software changes to improve upon the quality of Bitcoin Cash was now centralized and controlled by those who had dominated the hash war that caused the hard fork.

52057287;3

- 23 -

92.     The action of Defendants can be likened to concerted action by a group of competitors in the home construction business *not* to build to standards capable of withstanding a Category 5 hurricane. The effects of such concerted action is an immediate deterioration in quality of the constructed homes. While the effect may not be obvious to homebuyers at first, it is only a matter of time before it is felt.

~~73~~93.     Making a centralized checkpoint that destroys the core principle of decentralized consensus was a significant and fundamental change to the blockchain that was made without consulting other Bitcoin development groups and the community at large.

~~74~~94.     Indeed, as early as the next day after the update, individuals in the cryptocurrency industry such as ~~Andreas Brekken (self-proclaimed "advisor to some of the most successful blockchain projects in the world" and software engineer at Kraken)~~Brekken, held online forums acknowledging that Bitcoin ABC ~~developers~~Developers and crypto exchanges such as Kraken agreed to implement centralized checkpoints. *See* https://www.youtube.com/watch?v=UjAHJY0QZhs; *see also* https://brekken.com/about. Brekken goes on to admit in the video "this has been planned for a long time" and "we knew within 30 minutes we had it." The following is a screenshot of the referenced video:

(Modified)



(Add)

~~75~~95.   Indeed, days after Ver and Bitcoin.com hijacked the network and introduced

checkpoints, Lujan himself tweeted the following on behalf of and regarding Bitcoin.com

taking control:



76. 96.    Shortly after Bitcoin.com and Ver's hostile takeover of Bitcoin Cash, Kraken –

a well-known Bitcoin ~~exchange[8] in which Ver himself is a principal investor~~ exchange – and

Kraken's CEO Jesse Powell, decided that Kraken would

maintain the BCH ticker for the ABC chain and ~~indicated~~ renewed its pre-fork indication to users

that the SV chain was a high-risk environment. By doing so, Kraken and Powell effectively

recognized the ABC chain as the official blockchain of Bitcoin Cash and the "winner" of the

network upgrade. Kraken did so despite its supposedly neutral role as a cryptocurrency

exchange, and despite the fact that Kraken's revenue depends, in part, on the robust trading of

numerous forms of cryptocurrency. Powell's personal interest in the matter was expressed in a

tweet where he declared that, "The merits of BSV are overshadowed by the alienating threats of

a few grandiose personalities. Longer chain! = adoption. Victory may be pyrrhic."

77. 97.    As a result of the aforementioned market manipulation, the value of the

cryptocurrency that Plaintiff mines in its BlockchainDomes has fallen significantly. The

combined value of the forked currency is lower than the pre-fork currency and the resulting

confusion has been severely detrimental to the market overall. Some trading platforms have

chosen to list only one of the two resulting currencies, thus reducing liquidity and the value of

the currencies.

78. 98.    The Defendants' collective actions and manipulation of the market by among

other things, violating the Nakamoto Whitepaper and consensus rules and hijacking the Bitcoin

Cash network have created significant uncertainty and a lack of confidence in the network.

Under normal *decentralized* market conditions, this type of uncertainty would not exist.

79. 99.    Plaintiff has suffered and continues suffering significant damages through the

loss of value of the currency – a direct result of the centralization of what should be a

decentralized network and the lack of democracy within the network as anticipated by the

industry.

8    Kraken is a US-based cryptocurrency exchange established in 2011 by Jesse Powell with the
support of Ver (his friend from high school) which operates in the U.S., Canada, the E.U. and
Japan. The exchange provides the mechanism to trade between Euros/US dollars/Canadian
dollars/Japanese Yen and various cryptocurrencies such as Bitcoin, Bitcoin Cash and several other
cryptocurrencies. It purports to be the largest Bitcoin exchange in Euro volume and liquidity.

47165362;2                                        - 19 -


### COUNT I
### (PER SE VIOLATION OF SECTION 1 OF THE SHERMAN ACT)

80100. Paragraphs 1-791-99 of this Amended Complaint are incorporated as if fully set forth

here.

81101. Defendants and their unaffiliated co-conspirators entered into and engaged in a

conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act and

Section 4 of the Clayton Act.

82102. During the applicable period, Defendants took control of the Bitcoin Cash

cryptocurrency market by artificially pumping up the chain implementation with computer

hashes to dominate the temporary software upgrade and implemented a new software version

with checkpoints that controlled and manipulated the value and quality of the Bitcoin Cash

network going forward.

83103. The conspiracy consisted of a continuing agreement, understanding or concerted

action between and among Defendants and their co-conspirators in furtherance of which

Defendants manipulated the cryptocurrency market for Bitcoin Cash, effectively hijacked the

Bitcoin Cash network, centralized the market, and violated all accepted standards and protocols

associated with Bitcoin since its inception, and fixed, maintained, suppressed, stabilized and/or

otherwise made artificial the valuesvalue and quality associated with the Bitcoin Cash network.
Defendants'

104. Defendants' conspiracy is a per se violation of the federal antitrust laws and is, in any event, an unreasonable,

and unlawful restraint of trade and commerce.

105. The conspiracy alleged constitutes a per se violation in the nature of bid rigging in that the Defendants came together in an agreement to pre-determine the outcome of the upgrade contest on November 15, 2018, and then worked together to secure the benefits of their dominance over the upgrade into perpetuity by implementing the checkpoint.

106. Alternatively, the conspiracy alleged constitutes a per se violation in the nature of a group boycott. Specifically, Wu and Bitmain Technologies, along with Ver and non-party Bitcoin.com, with the assistance of the Bitcoin ABC Developers, agreed to participate in a scheme whereby they rendered nugatory the competitive efforts of Plaintiff to prevail during the hash war. Kraken and Powell joined in the scheme by supporting the ABC version before the results of the hash war were even known.

84107. Defendants' conspiracy, and resulting impact on the market for Bitcoin Cash, occurred in or affected interstate and foreign commerce.

85108. As a proximate result of Defendants' unlawful conduct, Plaintiff and others like it have suffered antitrust injury to their business or property. The Plaintiff is entitled to treble damages for

damages for the violations of the Sherman Act alleged herein.

## COUNT II
## (VIOLATION OF SECTION 1 OF THE SHERMAN ACT UNDER RULE OF REASON (NEGLIGENT MISREPRESENTATIONANALYSIS)

86109. Paragraphs 1-791-99 of this Amended Complaint are incorporated as if fully set forth here.

110. Defendants and their unaffiliated co-conspirators entered into and engaged in a

conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act and Section 4 of the Clayton Act.

~~87~~111.    ~~As participants in~~ During the applicable period, Defendants took control of the Bitcoin Cash ~~network, Defendants represented to Plaintiff and the market that they would abide by the Whitepaper and accepted standards and protocols.~~

~~88. Since its inception, the design of the Bitcoin system and protocol have been established by Nakamoto's Whitepaper. It has always been understood that it is the nodes that are mining a blockchain that are able to "vote with their CPU power."~~

~~89. By essentially bringing in mercenaries from *another* network (the BTC network) to temporarily mine the Bitcoin Cash network during the software upgrade and then leave the network, Bitmain and Bitcoin.com effectively hijacked the blockchain. They diluted the "vote" being exercised by the existing nodes[9] during the upgrade, violated the ground rules of the network that other users had relied on and respected for years, and artificially pumped up the~~ cryptocurrency market by artificially pumping up the chain implementation with computer hashes to dominate the temporary software upgrade. ~~Then,~~ and implemented a new software version ~~for good measure, the Defendants implemented a checkpoint that "centralized" what should be a decentralized market due to the way the checkpoint was added and its location close to the tip of the blockchain.~~

~~90. Defendants knew or should have known that they did not intend to abide by the~~ with checkpoints that controlled and manipulated the value and quality of the Bitcoin Cash ~~fundamental principles and protocols accepted by users of the Bitcoin Cash~~ network going forward.

~~91. Plaintiff justifiably relied on Defendants' misrepresentations by investing millions of dollars in development and deployment of infrastructure specifically for the mining of Bitcoin Cash.~~

---

[9]    ~~Before Bitcoin.com and Ver brought their Bitmain mercenaries to bear on the blockchain, 80% of the existing nodes had elected to mine the Bitcoin SV chain.~~

- 41 -
AKERMAN LLP, THREE BRICKELL CITY CENTRE, 98 SOUTHEAST SEVENTH STREET, SUITE 1100, MIAMI, FL 33131

112. The conspiracy consisted of a continuing agreement, understanding or concerted action between and among Defendants and their co-conspirators in furtherance of which Defendants manipulated the cryptocurrency market for Bitcoin Cash, effectively hijacked the Bitcoin Cash network, centralized the market, and violated all accepted standards and protocols associated with Bitcoin since its inception, and fixed, maintained, suppressed, stabilized and/or otherwise made artificial the values associated with the Bitcoin Cash network.

113. Defendants' conspiracy constitutes an unreasonable and unlawful restraint of trade and commerce.

114. The conspiracy alleged constitutes an antitrust violation under the rule of reason analysis because it resulted in a deterioration in the quality of Bitcoin Cash. After the hard fork, and with the implementation of the checkpoint, competing developers who wish to propose innovative ways to improve upon the software implementations used to mine for Bitcoin Cash will be unable to do so to the detriment of all participants in the Bitcoin Cash network. This harm is intended by Defendants to inure to their benefit in that only the Defendants can dictate to the market when and how upgrades are introduced. This concerted action has the effect of reducing the ability of Bitcoin Cash to innovate to prepare for greater and greater scalability as it is adapted more widely than its current use.

115. In addition to the aforementioned competitive harm, the deterioration in quality will result in the perpetuation of higher transaction costs for Bitcoin Cash consumers as Bitcoin Cash continues to be scaled.

116. Defendants' conspiracy, and resulting impact on the market for Bitcoin Cash, occurred in or affected interstate and foreign commerce.

~~92~~117. As a <u>proximate</u> result of Defendants' ~~misrepresentations~~<u>unlawful conduct</u>,

Plaintiff ~~has been damaged and~~<u>and others like it have suffered antitrust injury to their</u>

<u>business or property. The Plaintiff is entitled to treble</u>

~~will continue to suffer damages.~~

**COUNT III**
**(NEGLIGENCE)**

~~93.    Paragraphs 1-79 of this Complaint are incorporated as if fully set forth here.~~

~~94.    As participants in the Bitcoin Cash network, Defendants owed a duty of care to~~

~~the Plaintiff to abide by the Whitepaper and accepted standards and protocols.~~

~~95.    Defendants breached their duty of care to the Plaintiffs by failing to conform to~~

~~and abide by the Whitepaper and accepted standards and protocols and hijacking and assuming~~

~~control of the Bitcoin Cash network and market.~~

~~96.    The Plaintiff has suffered actual damages as a result of the Defendants' conduct.~~

~~97.    The damages suffered by the Plaintiff as a result of the Defendants conduct were~~

~~foreseeable.~~

**COUNT IV**
**(EQUITABLE ESTOPPEL)**

~~98.    Paragraphs 1-79 of this Complaint are incorporated as if fully set forth here.~~

~~99.    As participants in the Bitcoin Cash network, Defendants caused Plaintiff and the~~

~~market to believe that they would abide by certain accepted standards and protocols.~~

~~100. Since its inception, the design of the Bitcoin system and protocol have been~~

~~established by Nakamoto's Whitepaper certain accepted standards and protocols. It has always~~

~~been understood that it is the nodes that are mining a blockchain that are able to "vote with their~~

~~CPU power."~~

~~101. By essentially bringing in mercenaries from another network (the BTC network)~~

~~to temporarily mine the Bitcoin Cash network during the software upgrade and then leave the~~

network, Bitmain and Bitcoin.com effectively hijacked the blockchain. They diluted the "vote"

being exercised by the existing nodes during the upgrade, violated the ground rules of the

network that other users had relied on and respected for years, and artificially pumped up the

chain implementation with computer hashes to dominate the temporary software upgrade. Then,

for good measure, the Defendants implemented a checkpoint that "centralized" what should be a

decentralized market due to the way the checkpoint was added and its location close to the tip of

<ins>damages for</ins> the <del>blockchain</del><ins>violations of the Sherman Act alleged herein</ins>.

102. Defendants knew or should have known that they did not intend to abide by these

fundamental principles and protocols accepted by users of the Bitcoin Cash network.

103. Plaintiff justifiably relied on the fact that Defendants would abide by the accepted

standards and protocols of the network by investing millions of dollars in development and

deployment of infrastructure specifically for the mining of Bitcoin Cash.

104. As a result of Defendants' failure to do so, Plaintiff has been damaged and will

continue to suffer damages.

**COUNT V**
**(UNJUST ENRICHMENT)**

105. Paragraphs 1-79 of this Complaint are incorporated as if fully set forth here.

106. Bitmain, Bitcoin.com, and Ver have been unjustly enrichment by the conduct

described above.

107. It would be inequitable for Defendants to be permitted to retain the benefit which

Defendants obtained from their manipulative acts and at the expense of Plaintiff.

108. Unjust enrichment requires the receipt of a benefit and unjust retention of the

benefit at the expense of another.

109. Bitmain, Bitcoin.com, and Ver received the benefit of mining significant sums of Bitcoin Cash through their aforementioned scheme while other users such as Plaintiff were cut out of the network and lost the value of their significant investments.

110. These parties should be required to disgorge all monies, profits and gains which they obtained and will unjustly obtain at the expense of Plaintiff and reimburse Plaintiff for the loss of investment resulting from their actions.

## COUNT VI
## (CONVERSION)

111. Paragraphs 1-79 of this Complaint are incorporated as if fully set forth here.

112. The Defendants are wrongfully exercising dominion and control over Bitcoin Cash and its blockchain network and market inconsistent with the use and possessory rights of the Plaintiff.

113. The Defendants' conduct has deprived the Plaintiff of the right to utilize and possess Bitcoin Cash and its blockchain network as intended pursuant to the Whitepaper and its accepted standards and protocols and the conduct is inconsistent with the Plaintiff's rights to use the network pursuant to said standards and protocols.

114. The Plaintiff has suffered damages as a result of the Defendant's unlawful conversion of the Bitcoin Cash network and market.

115. Demand for the Defendants to return the converted property is unnecessary as it would be futile.

## COUNT VII
## (INJUNCTIVE RELIEF)

116. Paragraphs 1-79 of this Complaint are incorporated as if fully set forth here.

AKERMAN LLP, THREE BRICKELL CITY CENTRE, 98 SOUTHEAST SEVENTH STREET, SUITE 1100, MIAMI, FL 33131

117. As previously articulated, Defendants have engaged unfair methods of competition, and through a series of unconscionable, deceptive and unfair acts or practices, manipulated a cryptocurrency market for their benefit and to the detriment of Plaintiff and many others.

118. The Defendants' collective actions and manipulation of the market by violating the Nakamoto Whitepaper and consensus rules and hijacking the Bitcoin Cash network have created significant uncertainty and a lack of confidence in the network. Under normal decentralized market conditions, this type of uncertainty would not exist.

119. Consequently, Plaintiff's ability to conduct its operations has been virtually shut down.

120. Defendant's actions have caused and will continue to cause irreparable harm to Plaintiff and many others.

121. Plaintiff has no adequate remedy at law and the entry of an injunction will not disserve or affect the public interest, but will promote the public interest in maintaining a decentralized Bitcoin Cash network.

122. Specifically, Plaintiff seeks an injunction: (a) precluding Amaury Sechet, Shammah Chancellor, and Jason Cox via Bitcoin ABC from continuing to implement checkpoints on the Bitcoin Cash network and any other implementation of the software that would prevent the resulting chains from being able to be re-merged; and (b) requiring them to return the blockchain to its previously decentralized form with the previous consensus rules.

## PRAYER FOR RELIEF

WHEREFORE, as a result of the foregoing, Plaintiff prays for relief and judgment, as follows:

A.  For an order declaring that the Defendants conduct violates the statutes and common law claims referenced herein;

BA.    That the unlawful conduct alleged herein be adjudged and decreed to be an unlawful restraint of trade in violation of Section 1 of the Sherman Act and Section 4 of the Clayton Act;

CB.    Awarding restitution, compensatory damages and/or disgorgement in favor of Plaintiff against Defendants for all harm suffered as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

DC.    Awarding injunctive relief against Defendants to: (1) prevent the Bitcoin ABC Developers from continuing to implement checkpoints on the Bitcoin Cash network and any other implementation of the software that would prevent the resulting chains from being able to be re-merged; and (b) requiring them to return the blockchain to its previously decentralized form with the previous consensus rules;

ED.    For an order of restitution and/or disgorgement and all other forms of equitable monetary relief;

FE.    Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

GF.  Awarding such other and further relief as the Court may deem just and proper.

**AKERMAN LLP, THREE BRICKELL CITY CENTRE, 98 SOUTHEAST SEVENTH STREET, SUITE 1100, MIAMI, FL 33131**

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims so triable in this action.

Dated: ~~December 6, 2018~~ February 28, 2020.

Respectfully submitted,

By: /s/ Brian P. Miller
BRIAN P. MILLER
Florida Bar Number: 980633
Email: brian.miller@akerman.com
~~MICHAEL O. MENA~~
LORAYNE PEREZ
Florida Bar Number: ~~010664~~085265
Email: ~~michael.mena~~lorayne.perez@akerman.com
JOANNE GELFAND
Florida Bar Number: 515965
Email: joanne.gelfand@akerman.com

**AKERMAN LLP**
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100
Miami, FL 33131
Phone: (305) 374-5600
Fax: (305) 374-5095

*Attorneys for Plaintiff United American Corp.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on February 28, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

/s/ Lorayne Perez
Lorayne Perez

47165362;2 52057287;3

| Summary report: | |
|---|---|
| **Litera® Change-Pro for Word 10.9.0.460 Document comparison done on 3/23/2020 9:02:38 PM** | |
| **Style name:** OMM Standard | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** 001 - 2018-12-06 - Complaint 118cv25106.pdf | |
| **Modified filename:** 138 - 2020.02.28 - First Amended Complaint (without Whitepaper).pdf | |
| **Changes:** | |
| Add | 379 |
| Delete | 386 |
| Move From | 32 |
| Move To | 32 |
| Table Insert | 0 |
| Table Delete | 1 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 7 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 837 |