# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# Case No. 1:18-cv-25106-KMW-CMM

|  |  |
|---|---|
| UNITED AMERICAN CORP., a Florida company, | )<br>)<br>) |
| Plaintiff, | )<br>)<br>) |
| v. | )<br>) |
| BITMAIN, INC., ROGER VER, BITMAIN TECHNOLOGIES LTD., JIHAN WU, PAYWARD VENTURES, INC. d/b/a KRAKEN, JESSE POWELL, SHAMMAH CHANCELLOR, and JASON COX, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## DEFENDANTS PAYWARD VENTURES, INC.'S AND JESSE POWELL'S STANDALONE BRIEF IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS THE AMENDED COMPLAINT

Baker Marquart LLP
777 S. Figueroa Street
Suite 2850
Los Angeles, California 90017
T: +1 424 652 7800

Kobre & Kim LLP
201 South Biscayne Boulevard
Suite 1900
Miami, Florida 33131
T: +1 202 664 1907

*Attorneys for Defendants Payward Ventures, Inc. and Jesse Powell*

**TABLE OF CONTENTS**

| | | |
|---|---|---:|
| I. | INTRODUCTION | 1 |
| II. | UAC's Antitrust Conspiracy Theory Makes No Economic Sense | 3 |
| III. | UAC's "Group Boycott" and "Bid Rigging" Claims Are Not Viable | 4 |
| IV. | UAC's Antitrust Conspiracy Theory Is Not Supported by Sufficient Factual Allegations of Any Recognized Unlawful Anticompetitive Conduct | 6 |
| V. | CONCLUSION | 9 |

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adaptive Power Sol., LLC v. Hughes Missile Systems Co.*,
  141 F.3d 947 (9th Cir. 1998) .................................................................................................. 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................................ 5

*Berkey Photo v. Eastman Kodak Co.*,
  603 F.2d 263 (2d Cir. 1979) .................................................................................................... 8

*Blomkest Fertilizer, Inc. v. Potash Corp. of Saskatchewan*,
  203 F.3d 1028 (8th Cir. 2000) ............................................................................................ 3, 4

*Burtch v. Milberg Factors, Inc.*,
  662 F.3d 212 (3d Cir. 2011) .................................................................................................... 4

*Cal. Comp. Prods., Inc. v. IBM Corp.*,
  613 F.2d 727 (9th Cir. 1979) .................................................................................................. 8

*Copperweld Corp. v. Indep. Tube Corp.*,
  467 U.S. 752 (1984) ................................................................................................................ 7

*Duty Free Americas, Inc. v. Estee Lauder Cos., Inc.*,
  797 F.3d 1248 (11th Cir. 2015) .............................................................................................. 8

*Duty Free Ams. Inc. v. Estee Lauder Cos., Inc.*,
  946 F. Supp. 2d 1321 (S.D. Fla. 2013) .................................................................................. 7

*Helicopter Support Sys. Inc. v. Hughes Helicopter, Inc.*,
  818 F.2d 1530 (11th Cir. 1987) .............................................................................................. 7

*Jessup v. Am. Kennel Club*,
  61 F. Supp. 2d 5 (S.D.N.Y. 1999) .......................................................................................... 8

*Kendall v. VISA U.S.A., Inc.*,
  518 F.3d 1042 (9th Cir. 2008) ................................................................................................ 7

*N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*,
  883 F.3d 32 (2d Cir. 2018) ...................................................................................................... 8

*NYNEX Corp. v. Discon, Inc.*,
  525 U.S. 128 (1998) ................................................................................................................ 5

*Orchard Supply Hardware LLC v. Home Depot USA, Inc.*,
  967 F. Supp. 2d 1347 (N.D. Cal. 2013) ................................................................................ 5

*Procaps S.A. v. Patheon, Inc.*,
  845 F.3d 1072 (11th Cir. 2016) ........................................................................................... 7

*Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem., Co.*,
  917 F.3d 1249 (11th Cir. 2019) ........................................................................................... 4

*Schwimmer v. Sony Corp. of Am.*,
  677 F.2d 946 (2d Cir. 1982) ................................................................................................ 7

*St. Paul Fire & Marine Ins. v. Barry*,
  438 U.S. 531 (1978) ............................................................................................................ 5

*Tal v. Hogan*,
  453 F.3d 1244 (10th Cir. 2006) ........................................................................................... 6

*Theee Movies of Tarzana v. Pac. Theatres, Inc.*,
  828 F.2d 1395 (9th Cir 1987) .............................................................................................. 6

*United States v. Ashland-Warren*,
  537 F. Supp. 433 (M.D. Tenn. 1982) .................................................................................. 6

*United States v. Mobile Materials, Inc.*,
  881 F.2d 866 (10th Cir. 1989) ............................................................................................. 6

*Weight-Rite Golf Corp. v. U.S. Golf Ass'n*,
  766 F. Supp. 1104 (M.D. Fla. 1991) ................................................................................... 8

*Williamson Oil Co. v. Philip Morris*,
  346 F.3d 1287 (11th Cir. 2003) ........................................................................................... 3

*Zachair, Ltd. v. Driggs*,
  965 F. Supp. 741 (D. Md. 1997) ......................................................................................... 6

**Statutes**

15 U.S.C. §1 ................................................................................................................*passim*

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ........................................................................... 1

## I.   INTRODUCTION

Defendants Payward Ventures, Inc. ("Kraken"[1]) and Jesse Powell ("Powell") submit this individual or standalone brief in support of defendants' joint motion to dismiss. Plaintiff United American Corp.'s ("UAC") antitrust claims against Kraken and Powell should be dismissed with prejudice pursuant to Rule 12(b)(6). In its 117-paragraph Amended Complaint (ECF No. 138) ("FAC"), UAC musters only four paragraphs containing specific allegations as to either Kraken, a digital currency trading platform, or Powell, its CEO.[2] UAC's scant allegations fail to state a cause of action regarding either.

Like the Complaint, UAC's Amended Complaint centers around a cryptocurrency called Bitcoin Cash[3] and a "network upgrade" to Bitcoin Cash that happened on November 15, 2018. Kraken permits its customers to exchange various cryptocurrencies (such as Bitcoin, Ethereum, and Bitcoin Cash) for each other or for certain fiat currencies. (FAC ¶¶ 11, 71 n. 5.) UAC is alleged to be a developer of mining equipment and is not alleged to be a competing cryptocurrency exchange, or even to have ever been a customer of Kraken. "Mining" is a process of validating the accuracy of transactions.

Because market forces have allegedly caused a dramatic decline in Bitcoin Cash's value, rendering UAC's mining operations much less profitable, UAC lashes out in an attempt to hold defendants, including Kraken and Powell, liable for its own failure to compete in a volatile market. UAC allegedly entered the Bitcoin Cash mining business in March 2018. (*Id.* ¶ 39.) During the months between UAC's entrance to the market and the allegedly anticompetitive hard fork, the market price for Bitcoin Cash was already in a precipitous decline, from over $1,500 in May 2018, to around $420 on November 14, 2018 – a decline of over 70% – slashing the economic reward

---

[1] The Amended Complaint in Paragraph 11 names "Payward Ventures, Inc. d/b/a/ Kraken" as a defendant in the caption and alleges that it "is registered in San Francisco County as the owner of the fictitious business name 'Kraken' and operates the Bitcoin exchange Kraken.com." Without conceding these allegations, Payward Ventures, Inc. uses the trade name "Kraken" in this motion for ease of reference, given that the Amended Complaint has done so.

[2] Kraken and Powell are also mentioned in Paragraphs 11, 12 and 76, but only for identifying them as named defendants and referencing *former* contractor (Andreas Brekken), who lacks a relationship with either.

1

for mining Bitcoin Cash.  UAC never alleges that defendants Kraken and Powell had anything to do with this market correction.  UAC made an untimely business bet.

In the Amended Complaint, UAC again has brought a federal antitrust conspiracy claim against various entities and individuals, including Kraken and Powell, predicated on the November 2018 "network upgrade" of Bitcoin Cash which resulted in the ABC and SV chains.  In its Amended Complaint, UAC wisely jettisoned all its state-law claims.

What remains are two antitrust claims brought under Section 1 of the Sherman Act (15 U.S.C. §1) for "*per se*" (Count I) or "rule of reason" (Count II) liability.  But like the original Complaint, the Amended Complaint fails to state the basic elements of a Sherman Act Section 1 offense.  Among other things, it fails to connect Kraken and Powell to the purported antitrust conspiracy in any plausible way.  Nor does the purported conspiracy make economic sense, as the law requires: the Amended Complaint provides no rationale explaining why Kraken or Powell or any exchange would have a motive to participate in, or would stand to benefit from, the alleged conspiracy. Exchanges generally profit from a fixed percentage of any given transaction, and the value of that percentage increases as the underlying cryptocurrency increases in value.   The Amended Complaint also does not allege facts establishing how lower Bitcoin Cash prices, or any of the other alleged goals of the conspiracy, were bad for consumers or competition, a requirement that applies to all defendants.  Indeed, the Amended Complaint actually alleges *increased* competition – not *reduced* competition.  This, of course, flies in the face of the explicit goal of the federal antitrust laws, which seek to foster vigorous competition, not to condemn it.

Overall, UAC's Amended Complaint correctly depicts Kraken and Powell as bystanders, with no alleged ties to UAC and no economic motive to hurt either UAC or competition in general. In fact, the Amended Complaint never alleges that UAC is a competitor or customer of Kraken or Powell, nor does it suggest any relationship with Kraken or Powell at all.  The Amended Complaint also contains no non-conclusory allegations suggesting that Kraken or Powell agreed to, participated in, or were even aware of the alleged conduct of the other defendants.   Nor does the Amended Complaint cite or refer to any law, rule, code, or regulation that required Kraken to choose Bitcoin SV over ABC for the BCH ticker.  Of course, there is none.

UAC's Amended Complaint is nothing more than a minimal repackaging of its original Complaint as to which this Court at the January 28, 2020 hearing commented: (1) "[I] don't know how you can rely upon the per se provision of the Sherman Act.  This is going to be a rule of reason

2

case, if anything"; (2) UAC's "conspiracy" allegations are "not enough to carry the day in terms of pleading"; (3) "you haven't alleged a product market or geographic market"; and (4) "I don't think you have facts that plausibly establish harm to competition." (1/28/20 Hearing Transcript (ECF No. 156) 114-16 ("Tr.").)  In sum, the Amended Complaint still suffers from these infirmities and is fatally flawed, particularly with regard to defendants Kraken and Powell, and its deficiencies as referred to by the Court have not been cured by further amendment.  Dismissal with prejudice is therefore appropriate as to Kraken and Powell.  UAC should not be afforded a third bite.

## II. UAC's Antitrust Conspiracy Theory Makes No Economic Sense

Merely claiming that one company hurt another does not give rise to an antitrust claim.  An antitrust plaintiff must explain why a defendant would harm competition; an antitrust claim must make "economic sense," *Williamson Oil Co. v. Philip Morris, SA,* 346 F.3d 1287, 1302 (11th Cir. 2003).  Further, "a conspiracy case based on circumstantial evidence must be economically plausible," *Blomkest Fertilizer, Inc. v. Potash Corp. of Saskatchewan*, 203 F.3d 1028, 1043 (8th Cir. 2000).  To decide whether a conspiracy claim is plausible, courts consider certain "plus factors" that: (1) "establish a background making a conspiracy likely," and (2) "tend to exclude the possibility that the defendants acted without agreement."  *Id.*  UAC's allegations as to Powell and Kraken fail on both fronts.

First, UAC's allegations against Kraken and Powell do not establish a background making a conspiracy likely because there are no allegations suggesting that either Kraken or Powell had a motive to participate in the alleged conspiracy.  *See id.* ("The background 'plus factors' of market structure, motivation and opportunity play an important role in establishing such plausibility.").  Kraken and Powell are *not* competitors of UAC, are *not* in the same business as UAC, and do *not* have any business relationship with UAC.  In its 117 paragraphs, the Amended Complaint never alleges otherwise.  Despite its opportunity to try again, UAC offers no plausible reason why Kraken, Powell, or any exchange would injure UAC's business.  Moreover, the Amended Complaint remains silent as to why Kraken or Powell would have an economic interest in "hijacking the Bitcoin Cash network", "manipulat[ing] the cryptocurrency market for Bitcoin Cash," creating "significant uncertainty and a, lack of confidence in the network," and ultimately causing a "loss of value of the currency."  (FAC ¶¶ 1, 98, 99, 111.)  Indeed, it is difficult to see how an exchange would have such incentive.  Kraken and other exchanges provide a platform for

3

users to buy, sell, and trade cryptocurrencies. Regardless of an exchange's business model—which is not alleged in the Amended Complaint— exchanges generally make the most money in markets with rising prices and/or a higher number of transactions. As such, an exchange would not plausibly benefit from lower values or outright cryptocurrency failures. UAC's failure to allege a plausible economic rationale for Kraken's or Powell's supposed role in the hole-riddled conspiracy requires dismissal.

Second, UAC's allegations against Kraken and Powell do not tend to exclude the possibility that they acted independently from the other defendants. "[A]cts that would be irrational or contrary to the defendant's economic interest if no conspiracy existed, but which would be rational if the alleged agreement existed … tend to exclude the possibility of innocence." *Blomkest*, 203 F.3d at 1044. Here, UAC alleges that Kraken "indicat[ed] to users that the SV chain was a high-risk environment" and "effectively recognized the ABC chain as the official blockchain of Bitcoin Cash . . . despite its neutral role as a cryptocurrency exchange, and despite the fact that Kraken's revenue depends, in part, on the robust trading of numerous forms of cryptocurrency." (FAC ¶ 96.) But UAC itself alleges that there was "significant uncertainty and lack of confidence in the network" in the wake of the hard fork (*id.* ¶ 97), suggesting that Kraken's vetting of the SV chain on behalf of its clients was in furtherance of, rather than contrary to, Kraken's self-interest. *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 229 (3d Cir. 2011) (affirming dismissal because "[t]he Complaint present[ed] no allegations that the [defendant banks'] decision[s] to limit or refuse credit to [the plaintiff] was against each company's interest rather than a natural response to [the plaintiff]'s declining financial situation").

### III. UAC's "Group Boycott" and "Bid Rigging" Claims Are Not Viable

Undaunted by the Court's skepticism about *per se* liability in this case, UAC asserts a *per se* "group boycott" antitrust claim against Kraken, Powell, and other unlikely co-conspirators. (*See* FAC ¶ 106.) UAC never pleads the necessary elements for a group boycott, never explains what economic rationale would motivate an exchange to exclude a cryptocurrency or customer, never alleges an understanding among horizontal competitors, never alleges a reduction in competition, and never alleges the necessary elements for bid rigging.

Under the antitrust law, a group boycott entails "pressuring a party with which one has a dispute by withholding, or enlisting others to withhold, patronage or services from the target." *Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem., Co.*, 917 F.3d 1249, 1271 (11th

4

Cir. 2019), quoting *St. Paul Fire & Marine Ins. v. Barry*, 438 U.S. 531, 541 (1978). UAC never alleges that Kraken or Powell was in a position to boycott UAC, targeted UAC or, amazingly, was even aware of UAC's existence. UAC offers no allegation that Kraken or Powell pressured or threatened anyone. Moreover, even assuming *arguendo* UAC could state an actionable boycott claim, alleged vertical agreements (as is the structure alleged here consisting of diverse players on different levels) involving boycotts must be analyzed under the rule of reason, *not* per se. *See NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 135 (1998) ("[P]recedent limits the per se rule in the boycott context to cases involving horizontal agreements among direct competitors.").

UAC's misguided "group boycott" claim to the extent directed at defendants Powell and Kraken must be dismissed because it is both lacking in supporting factual allegations and does not make economic sense. *See Adaptive Power Sol., LLC v. Hughes Missile Systems Co.*, 141 F.3d 947, 952 (9th Cir. 1998) (group boycott claim dismissed because it did not make "economic sense" and "did not injure competition."). As explained above, there is no logical reason or incentive for an exchange to participate in a conspiracy to rid the market of another form of cryptocurrency which can be traded on its exchange platform and potentially increase revenue, and the alleged actions of Kraken and Powell are entirely consistent with their own self-interests. Further, the Amended Complaint fails to allege an "understanding between the horizontal competitors that each would participate in the boycott." *Orchard Supply Hardware LLC v. Home Depot USA, Inc.*, 967 F. Supp. 2d 1347, 1355 (N.D. Cal. 2013). All that is alleged is that "Kraken and Powell joined in the scheme." (FAC ¶ 106.) This thread bare conclusory allegation falls far short of satisfying the requisite antitrust conspiracy pleading standard. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice" for purposes of pleading a Section 1 antitrust conspiracy claim).[4]

Also, UAC has not plausibly alleged sufficient market foreclosure or a reduction or injury to competition sufficient to withstand a motion to dismiss. Significantly, at the hearing on

---

[4] UAC had originally falsely alleged that Andreas Brekken at the time of the network upgrade in November 2018 was employed as a "software engineer at Kraken and that Brekken (presumably acting on Kraken's behalf) had made conspiratorial statements in a YouTube video somehow linking Kraken to the far-fetched conspiracy. (ECF No. 1, Complaint ¶ 74.) In its Amended Complaint, UAC now correctly *concedes* in Paragraph 76 that Brekken was a "former software engineer for Kraken" and does not allege he was working at Kraken at the time of the upgrade. Antitrust liability cannot be predicated on the outbursts of a former independent contractor who is not even named as a defendant or co-conspirator.

defendants' previous motion to dismiss, counsel for UAC *admitted* that after the "fork" UAC was not foreclosed from mining Bitcoin ABC and that Bitcoin ABC still trades on exchanges. (Tr. 92.) It is also undisputed that after the fork another form of cryptocurrency emerged which created more participants/competitors among the field of thousands of competing forms of digital currencies. UAC's lack of causal cognizable injury dooms its group boycott claim: "[T]he alleged injury must be caused by a reduction, rather than an increase, in competition resulting from the restraint." *Theee Movies of Tarzana v. Pac. Theatres, Inc.*, 828 F.2d 1395, 1400 (9th Cir 1987).

UAC's elusive *per se* "bid-rigging" claim fares no better and should be dismissed.[5] "Bid-rigging has been found to violate Section 1 of the Sherman Act when two or more competitors coordinate their bids to a third party." *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006); *see also United States v. Mobile Materials, Inc.*, 881 F.2d 866, 869 (10th Cir. 1989) (bid-rigging claim involves collusion among competitors against the third party who requested the bid). "Bid-rigging violative of § 1 contemplates agreements between actual or potential competitors." *Zachair, Ltd. v. Driggs,* 965 F. Supp. 741, 747 (D. Md. 1997), *aff'd*, 141 F.3d 1162 (4th Cir. 1998); *see also United States v. Ashland-Warren*, 537 F. Supp. 433, 445 (M.D. Tenn. 1982) (finding that bid-rigging schemes are useless unless the offending group consists of competitors). Defendants Kraken and Powell are not actual or potential competitors with plaintiff UAC or the other named defendants, and UAC never alleges otherwise. Nor did Kraken or Powell allegedly make or solicit any bid or otherwise participate in any bidding process. UAC cannot shoehorn these misplaced factual allegations into a viable claim for bid-rigging against these defendants.

## IV. UAC's Antitrust Conspiracy Theory Is Not Supported by Sufficient Factual Allegations of Any Recognized Unlawful Anticompetitive Conduct.

In the 117-paragraph Amended Complaint, specific allegations concerning Kraken and Powell appear in only Paragraphs 71, 72, 96, and 106. UAC accuses Kraken and Powell of the following: (1) "before the outcome of the fork was known, Kraken released public statements in favor of the ABC implementation and against the SV implementation"; (2) "Kraken stated that, 'Bitcoin SV does not presently meet Kraken's listing requirements and is unlikely to be

---

[5] This Court previously expressed skepticism as to UAC's invocation of this antitrust theory: "Bid rigging, bid rigging. How is this bid rigging?" (Tr. at 93.)

supported'";[6] (3) Kraken "decided that [it] would maintain the BCH ticker for the ABC chain and renewed its pre-fork indication to users that the SV chain was a high-risk environment"; (4) Powell "declared that, 'the merits of BSV are overshadowed by the alienating threats of a few grandiose personalities. Longer chain! = adoption. Victory may be pyrrhic'";[7] and (5) "Kraken and Powell joined in the scheme by supporting the ABC version before the results of the hash war were even known." (FAC ¶¶ 71, 96, 106.)

These allegations lack the specificity required for an antitrust conspiracy claim. UAC does not identify either the scope or the nature of the purported conspiratorial agreements, nor the persons, dates, places, or reasons for the alleged conspiratorial actions. *See Kendall v. VISA U.S.A., Inc.*, 518 F.3d 1042, 1047-48 (9th Cir. 2008) (antitrust complaint must answer "who, did what, to whom (or with whom), where, and when?"); *see also Duty Free Ams. Inc. v. Estee Lauder Cos., Inc.*, 946 F. Supp. 2d 1321, 1332 (S.D. Fla. 2013) (same). The Amended Complaint therefore fails to sufficiently allege a meeting of the minds between the co-conspirators and a conscious commitment to a common scheme to achieve an unlawful objective, as the antitrust laws require.[8] *See Procaps S.A. v. Patheon, Inc.*, 845 F.3d 1072, 1081 (11th Cir. 2016); *Helicopter Support Sys. Inc. v. Hughes Helicopter, Inc.*, 818 F.2d 1530, 1535 (11th Cir. 1987).

Also, the conduct that UAC specifically alleges against Kraken and Powell, *i.e.,* in four paragraphs in the Amended Complaint, 71, 72, 96, and 106, never comes close to an antitrust violation, for at least the following reasons:

First, the allegations that Kraken stated that the SV chain "does not presently meet Kraken's listing requirements and is unlikely to be supported" and "that the SV chain was a high-

---

[6] According to UAC, this statement somehow transgresses the antitrust laws because "Binance, another cryptocurrency exchange, merely acknowledged the upcoming hash war and made no statements vouching for either the ABC or SV proposals." (FAC ¶ 72.) Presumably had Kraken taken the same action as Binance, UAC would point to that as evidencing an unlawful conspiracy.

[7] The Amended Complaint never explains how this cryptic observation evidences conspiratorial or unlawful anticompetitive conduct.

[8] Of course, Powell is legally incapable of conspiring with his company Kraken and vice versa. *See Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 769 (1984) ("[O]fficers or employees of the same firm do not provide the plurality of actors imperative for a § 1 conspiracy"); *Schwimmer v. Sony Corp. of Am.*, 677 F.2d 946, 953 (2d Cir. 1982) ("collaborative action between a corporation and its employees, or among employees within a corporation, is not regarded as joint action within the meaning of § 1").

risk environment" do not give rise to an antitrust violation. (FAC ¶¶ 71, 96.) It is well-settled that purported disparaging remarks or opinions directed at a competitor (assuming UAC or Bitcoin Cash SV were even competitors) or its products are not actionable under the Sherman Act unless "clearly false." *See Duty Free Americas, Inc. v. Estee Lauder Cos., Inc.*, 797 F.3d 1248, 1268-69 (11th Cir. 2015) ("[A] plaintiff alleging anticompetitive disparagement must allege, at a minimum, statements that were demonstrably false in order to survive a motion to dismiss."). UAC does *not* allege that these statements are false, let alone intentionally so.

The Amended Complaint fails to overcome these hurdles. Indeed, this Court can, and should, take judicial notice of the fact that *all* cryptocurrencies are high-risk investments and exist in a high-risk environment. Further, none of the opinions alleged in Paragraphs 71 and 96 were even directed towards UAC. Moreover, UAC cannot overcome the presumption that any such statements would have a *de minimis* effect, having not claimed any connection between the statement and any causal antitrust injury or damages.

Second, endorsing or adopting a product generally does not violate the antitrust laws. *See, e.g., N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 32 (2d Cir. 2018) (denying injunction against soccer foundation's adoption of standards designating divisional levels of play); *Weight-Rite Golf Corp. v. U.S. Golf Ass'n*, 766 F. Supp. 1104, 1111 (M.D. Fla. 1991), *aff'd*, 953 F.2d 651 (11th Cir. 1992) (noting that USGA's ability to decrease the marketability of a manufacturer's golf shoes by amending its rules of play did not constitute rule of reason antitrust violation); *Jessup v. Am. Kennel Club*, 61 F. Supp. 2d 5, 13 (S.D.N.Y. 1999) (upholding standard governing purebred dogs). Kraken and Powell allegedly violated the antitrust laws by "support[ing]" Bitcoin ABC over SV and "maintain[ing]" the pre-existing Bitcoin Cash ticker symbol (BCH) for the ABC chain. (FAC ¶¶ 96, 106.) As *North American Soccer League* and *Weight-Rite* make clear, these actions do not run afoul of the antitrust laws.

Third, antitrust defendants, like Kraken and Powell, have no obligation to pre-disclose their business plans or advise others how to invest or allocate their resources. *See Cal. Comp. Prods., Inc. v. IBM Corp.*, 613 F.2d 727, 744 (9th Cir. 1979) (antitrust defendant "under no duty to help" other manufacturer competitors to "survive or expand"); *Berkey Photo v. Eastman Kodak Co.*, 603 F.2d 263, 281 (2d Cir. 1979) (antitrust defendant does "not have a duty to predisclose information" about new products or changes to existing ones). In short, using a ticker symbol on an exchange or recognizing or supporting a blockchain, like Bitcoin SV or ABC, as an "official" blockchain or

as "the 'winner' of the network upgrade," cannot serve as predicate acts for an antitrust violation. (FAC ¶¶ 71, 96, 106.)

## V. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss should be granted in its entirety and UAC's Amended Complaint should be dismissed with prejudice.

Dated:  March 27, 2020

Respectfully Submitted,

/s/ Andrew C. Lourie_____
Andrew C. Lourie (Florida Bar No. 87772)
Andrew.Lourie@kobrekim.com
KOBRE & KIM LLP
201 South Biscayne Boulevard, Suite 1900
Miami, Florida 33131
T: +1 202 664 1907
F: +1 305 967 6120

- and –

Brian E. Klein (*pro hac vice*)
bklein@bakermarquart.com
Donald R. Pepperman (*pro hac vice*)
dpepperman@bakermarquart.com
BAKER MARQUART LLP
777 S. Figueroa Street, Suite 2850
Los Angeles, California 90017
T: +1 424 652 7800
F: +1 424 652 7850

*Attorneys for Defendants Payward Ventures, Inc. and Jesse Powell*

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on March 27, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record for the parties.

                                          /s/ Andrew C. Lourie
                                          Andrew C. Lourie