UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:18-cv-25106-KMW-CMM

UNITED AMERICAN CORP.,

    Plaintiff,

v.

BITMAIN, INC., ROGER VER, BITMAIN
TECHNOLOGIES LTD., JIHAN WU,
PAYWARD VENTURES, INC.
d/b/a KRAKEN, JESSE POWELL,
SHAMMAH CHANCELLOR, and
JASON COX,

    Defendants.
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS BITMAIN
TECHNOLOGIES LTD. AND JIHAN WU'S MOTION TO DISMISS AMENDED
COMPLAINT UNDER FED. R. CIV. P. 12(b)(2), OR ALTERNATIVELY, PLAINTIFF'S
<u>MOTION FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY</u>**

Plaintiff United American Corp. ("UAC" or "Plaintiffs") hereby responds in opposition to Defendant Bitmain Technologies Ltd. ("Bitmain Technologies") and Jihan Wu's ("Wu") Motion to Dismiss the Amended Complaint Under Fed. R. Civ. P. 12(b)(2) (the "Motion") [ECF No. 142], or alternatively, moves for leave to conduct jurisdictional discovery, and in support, states the following.

<u>INTRODUCTION</u>

In their Motion, Bitmain Technologies and Wu (collectively, the Bitmain Defendants) argue that they should be dismissed for lack of personal jurisdiction. This Court should deny the Motion. These parties have sufficient contacts with the United States – the relevant forum – to render the exercise of personal jurisdiction over them appropriate under the Fifth Amendment due process

1

analysis. The Bitmain Defendants' conclusory declarations do not adequately challenge the existence of personal jurisdiction, and thus the personal jurisdiction allegations in the Amended Complaint are sufficient to establish jurisdiction. To the extent, however, that this Court determines that there is a factual dispute on the issue of Bitmain Technologies and Wu's United States' contacts, UAC respectfully requests leave to conduct jurisdictional discovery.

## ARGUMENT

Bitmain Technologies and Wu's Motion to Dismiss on Rule 12(b)(2) grounds should be denied because the requirements for exercising personal jurisdiction are satisfied here.[1] Alternatively, UAC respectfully asks that the Court permit it the opportunity to conduct jurisdictional discovery to determine the extent of the Defendants' contacts with the United States.

### I. The Relevant Forum to Evaluate Jurisdictional Allegations is the United States, Not Florida.

Bitmain Technologies and Wu argue that the relevant forum for jurisdictional contacts is Florida, not the United States, because venue is pleaded under the general venue statute (28 U.S.C. § 1391), rather than the Clayton Act. This Court should reject that argument.[2]

---

[1] The Bitmain Defendants have also filed a motion to dismiss under Rule 12(b)(6). *See* ECF No. 144. As a general rule, "courts should address issues relating to personal jurisdiction before reaching the merits of a plaintiff's claims." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 940 (11th Cir. 1997). *See also Madara v. Hall*, 916 F.2d 1510 (11th Cir. 1990) (holding that district court erred when it ruled on 12(b)(6) motion prior to ruling on 12(b)(2) motion and stating that the 12(b)(6) issue should not have been reached because the defendant was not subject to the jurisdiction of the court and, thus, could not be bound by its ruling).

[2] The Bitmain Defendants also argue in footnote 1 that their nationwide contacts are not to be considered because they were served pursuant to the Hague Convention, not the Clayton Act. They cite to *General Cigar Holdings v. Altadis, S.A.*, 205 F. Supp. 2d 1335, 1340 (S.D. Fla. 2002) as support. Respectfully, *General Cigar Holdings*, a case that is not binding on this court, was incorrect when it held that service on a foreign defendant under the Hague Convention meant that only contacts with the forum state, not national contacts, could be considered under the personal jurisdiction analysis. *See generally*, Litigation of Int'l Disputes in U.S. Courts § 1:14 (March 2019) ("*General Cigar* would therefore appear to improperly stand for the proposition that service

"When the personal jurisdiction of a federal court is invoked based upon a federal statute providing for nationwide or worldwide service, the relevant inquiry is whether the respondent has had sufficient minimum contacts with the United States." *In re S1 Corp. Securities Litigation*, 173 F. Supp. 2d 1334, 1345 (N.D. Ga. 2001); *see also United States Securities and Exchange Commission v. Carillo*, 115 F.3d 1540, 1544 (11th Cir. 1997) ("We agree with the rule applied by the other circuits and hereby hold that the applicable forum for minimum contacts purposes is the United States in cases where, as here, the court's personal jurisdiction is invoked based on a federal statute authorizing nationwide or worldwide service of process."); *Republic of Panama*, 119 F.3d at 941 ("When a federal statute provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction."); *Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 718 (5th Cir. 1999), *cert. denied*, 531 U.S. 917 (2000); *In re Auto. Refinishing Paint Antitrust Litigation*, 358 F.3d 288, 299 (3d Cir. 2004) ("We hold that personal jurisdiction in federal antitrust litigation is assessed on the basis of a defendant's aggregate contacts with the United States as a whole."); *Azalp LLC v. Silverstein*, 14-10079, 2015 WL 12711232, at *4 (S.D. Fla. Aug. 14, 2015)

---

under the Clayton Act's *worldwide* service rule cannot employ the Hague Service Convention. *General Cigar* would reflect the proper rule if the statute at issue provided for national service, *but not* worldwide service."); *see also In re Diisocyanates Antitrust Litigation*, 2020 WL 1140245, at *3-4 (W.D. Penn. Mar. 9, 2020) (declining to follow *General Cigar*, and stating "the pertinent inquiry involves the nature of the plaintiff's claim and the breadth of service authorized by statute, rather than the mechanism of service actually used to serve a particular defendant."). The Eleventh Circuit has not weighed in on this specific issue, but other Circuits have agreed that nationwide contacts should be considered to determine whether personal jurisdiction exists over a foreign defendant under the Clayton Act. *See In re Auto. Refinishing Paint Antitrust Litigation*, 358 F.3d 288, 293 (3d Cir. 2004) (service under Hague Convention; national contacts provided correct analysis); *see generally Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 718 (5th Cir. 1999) (national contacts form basis for personal jurisdiction analysis in actions under Clayton Act), *cert. denied*, 531 U.S. 917 (2000); *Go-Video, Inc. v. Akai Elec. Co., Ltd.*, 885 F.2d 1406 (9th Cir. 1989) (same). This Court should align itself with those courts and find that national contacts determine whether personal jurisdiction exists over a foreign defendant alleged to have violated the Sherman Act.

3

("Finding that 18 U.S.C. § 1965 permits service, the Court must now determine whether the Fifth Amendment's Due Process Clause constrains [the] federal court's power to exercise personal jurisdiction via nationwide service of process.") (analyzing RICO statute's comparable nationwide service of process provision) (citation and internal marks omitted); *Swift Indus., Inc. v. Husqvarna AB,* Case No. 07-4631, 2008 WL 11366182, *3 (E.D. Penn. Aug. 4, 2008) ("When a claim is based on a federal statute authorizing nationwide service of process, personal jurisdiction may be assessed on the basis of the defendant's national contacts.").

"The rationale underlying this national contacts approach is that when the national sovereign is applying national law, the relevant contacts are the contacts between the defendant and the sovereign's nation." *Sonterra Capital Master Fund, Ltd. v. Barclays Bank PLC*, 366 F. Supp. 3d 516, 563 (S.D.N.Y. 2018).

This case involves Sherman Act claims, which authorize nationwide and worldwide service of process through the related Clayton Act. *See* 15 U.S.C. § 22. The Bitmain Defendants, nevertheless, argue that the national contacts approach should not apply here because the Amended Complaint pleads venue under Section 1391. To be sure, the Eleventh Circuit has never so held. This Court should decline to adopt this interpretation, which is contrary to the purpose of providing for worldwide service of process under the Clayton Act.

The Eleventh Circuit has held that, "In a federal antitrust case, venue may be established under § 4 of the Clayton Act, 15 U.S.C. § 15, § 12 of the Clayton Act, 15 U.S.C. § 22, or the general federal venue statute, 28 U.S.C. § 1391(b)." *Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 855 (11th Cir. 1988). As an initial matter, the Bitmain Defendants do not challenge venue in this district, and any such challenge has been waived for failure to raise it in the initial or current motion to dismiss. *See Aero Technologies, LLC v. Lockton Companies Int'l,*

*Ltd.*, 406 Fed. App'x 440, 441 (11th Cir. 2010) ("Federal Rule of Civil Procedure 12(h)(1) states that some Rule 12 defenses are waived by failing to raise them in the initial Rule 12 motion, including improper venue . . . ."); *BankAtlantic v. Coast to Coast Contractors, Inc.*, 947 F. Supp. 480, 486 (S.D. Fla. 1996) ("Pursuant to Federal Rule of Civil Procedure 12(h)(1), the defense of improper venue has been waived as to these Defendants, since it was not raised in their various motions to dismiss."). Thus, the Bitmain Defendants' hyper-technical argument is that, while the Clayton Act provides for worldwide service of process, which has been properly accomplished on the Bitmain Defendants pursuant to the procedures of the Hague Convention, and while the Bitmain Defendants have not challenged venue in this district, this Court should nonetheless assess personal jurisdiction by reference to the Bitmain Defendants' Florida contacts, not their national contacts. This constrained position should be rejected by this Court.

A similar argument was advanced, and rejected, in *Go-Video, Inc. v. Akai Elec. Co., Ltd.*, 885 F.2d 1406 (9th Cir. 1989). In that case, an American manufacturer obtained service of process in an antitrust suit against Japanese corporations through the long-arm provision of Section 12 of the Clayton Act, 15 U.S.C. § 22, which states:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process *in such cases* may be served in the district of which it is an inhabitant, or wherever it may be found.

*Id.* at 1408 (emphasis added). The foreign corporations argued that the service of process provision was tied to the earlier venue provision, such that process could be served as indicated only if the venue provision were also satisfied. In other words, they argued, as do the Bitmain Defendants, that the phrase "such cases" referred to proceedings where venue had been accomplished pursuant to the specific venue provision of 15 U.S.C. § 22.

5

The Court rejected this argument after analyzing the legislative history of the Clayton Act, stating that, "we certainly cannot conclude that Congress affirmatively *intended* that section 12's service of process provision would be limited by the venue provision which, apparently as a matter of happenstance or convenience, preceded it in the text of the legislation ultimately enacted." *Id.* at 1410. It held that the phrase "such cases" in section 12 meant antitrust cases generally. *Id.* at 1411.

The Court went further by rejecting the foreign defendants' argument that the personal jurisdiction analysis required a showing of defendants' contacts with the forum state, rather than national contacts. The Court held that where Congress has authorized national service (or worldwide service), the national contacts analysis applies. *Id.* at 1414 (collecting cases). Applying similar statutes with national or worldwide service of process provisions, courts in this circuit have likewise found that the personal jurisdiction analysis turns on the defendants' nationwide contacts. *See, e.g.*, *In re Takata Airbag Products Liability Litigation*, 396 F. Supp. 3d at 1150; *BankAtlantic*, 947 F. Supp. at 484. There is no principled reason to hold otherwise here.

Defendant Wu argues that, even if the national contacts analysis applies to Bitmain Technologies as a corporation, it does not apply to Wu, as an individual, because Section 12 applies only to corporations. Mot. at 5. As support, Wu cites *Delong Equip. Co. v. Wa. Mills Abrasive Co.*, 840 F.2d 843, 848 (11th Cir. 1988). The reliance is misplaced. The issue addressed in *Delong* was whether the plaintiff obtained proper service of process over the individual defendants. Service of process is not being contested by Wu in this case. Service of process was accomplished through the Hague Convention, as is permissible pursuant to Federal Rule of Civil Procedure 4(f)(1). Because the claims against Wu are Sherman Act claims, his nationwide contacts provide the appropriate framework for personal jurisdiction purposes.

Finally, in footnote 4, Wu contends that his visits to the United States to promote Bitmain products and services may not be considered pursuant to the corporate shield doctrine, citing *Int'l Textile Grp., Inc. v. Interamericana Apparel Co., Inc.*, No. 08-CIV-22859, 2009 WL 4899404, at *3 (S.D. Fla. Dec. 14, 2009) (applying Florida law). That doctrine should not be applied under the relevant national contacts test, which turns on federal law. Moreover, even if it applied, "this corporate shield doctrine is inapplicable where the corporate officer commits intentional torts." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013). Finally, the promotion of Bitmain products did not solely benefit Wu's many corporate entities; it benefitted Wu personally, as the owner and founder of Bitmain Technologies. *See* Am. Compl. ¶ 58; *In re Vitamins Antitrust Litigation*, No. 99-197, 2001 WL 855469, *4 (D.D.C. July 2, 2001) ("If the individual was acting *also* on his own behalf-to serve his personal interests, the shield does not apply.") (citation omitted) (emphasis in original).

## II.   Rule 4(k)(2) Provides an Additional Basis for Asserting Personal Jurisdiction Over the Bitmain Defendants.

Federal Rule of Civil Procedure 4(k)(2) provides an additional basis for this Court to assert personal jurisdiction over the Bitmain Defendants. That Rule states:

> (2) Federal Claims Outside State-Court Jurisdiction.
> For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
>
> (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
>
> (B) exercising jurisdiction is consistent with the United States Constitution and laws.

"Rule 4(k)(2) was adopted to provide a forum for federal claims in situations where a foreign defendant lacks substantial contacts with any single state but has sufficient contacts with the United States as a whole to satisfy due process standards and justify the application of federal

law." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1293-94 (Fed. Cir. 2012).  The Rule "closed a loophole that existed . . . [whereby] a non-resident defendant who did not have 'minimum contacts' with any individual state sufficient to support exercise of jurisdiction, but did have sufficient contacts with the United States as a whole, could escape jurisdiction in all fifty states.  Rule 4(k)(2) was adopted to ensure that federal claims will have a U.S. forum if sufficient national contacts exist." *In re Takata Airbag Products Liability Litig.*, 396 F. Supp. 3d at 1151.

"Although the burden of establishing personal jurisdiction ordinarily falls on the plaintiff, in the context of Rule 4(k)(2) that general proposition would saddle the plaintiff with an extraordinary challenge in 'proving a negative many times over," that is, demonstrating that the defendant is *not* subject to jurisdiction in each of the fifty states." *Merial Ltd.*, 681 F.3d at 1293-94.  Therefore, courts apply a burden-shifting approach whereby, "if the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2)." *Id*. (citation omitted).

The Bitmain Defendants claim that this Court should not consider the Rule 4(k)(2) basis for personal jurisdiction because that Rule was not pleaded, citing to *Virgin Health Corp. v. Virgin Enters. Ltd.*, 393 F. App'x 623, 627 (11th Cir. 2010), for support.  The issue in *Virgin Health Corp.*, however, was that the Circuit court's "general rule is not to review a theory that was not raised in the district court." *Id*.  That is not the case here.  Plaintiff is raising this issue in the district court.

Because the claims in this case arise under federal law, process was served upon Bitmain Technologies and Wu, and these foreign defendants claim not to be subject to the jurisdiction of Florida and have failed to identify any other forum state where suit is possible, Rule 4(k)(2) may be utilized by this Court to assert personal jurisdiction over the Bitmain Defendants so long as

8

52823631;1

doing so is "consistent with the Constitution and laws of the United States." *In re Takata Airbag Products Liability Litig.*, 396 F. Supp. 3d at 1150-51.

### III. This Court May Exercise Personal Jurisdiction Over Bitmain Technologies and Wu Based on Their Contacts With the United States.

The Amended Complaint adequately alleges that Bitmain Technologies and Wu have sufficient contacts with the United States such that this Court may exercise personal jurisdiction over them without offending the due process clause of the Fifth Amendment. *See Rep. of Panama*, 119 F.3d at 946-47 ("A court must . . . examine a defendant's aggregate contacts with the nation as a whole rather than his contacts with the forum state in conducting the Fifth Amendment analysis."); *Azalp LLC*, 2015 WL 12711232, at *4; *In re Takata Airbag Products Liability Litig.*, 396 F. Supp. 3d at 1151; *Fed. Trade Comm. v. No. 1025798 Ontario, Inc.*, 03-CV-910A, 2005 WL 8173577, *3 (W.D.N.Y. Mar. 28, 2005) ("Where Congress has authorized nationwide (or universal) service of process, personal jurisdiction is governed by the Due Process Clause of the Fifth Amendment . . . ."). Moreover, this Court may exercise jurisdiction over Bitmain Technologies and Wu based on their participation in the conspiracy alleged in the Amended Complaint. *Flag Co. v. Maynard*, 376 F. Supp. 2d 849, 854-55 (N.D. Ill. 2005) (participation in RICO conspiracy provided a basis to assert personal jurisdiction under Rule 4(k)(2)).[3]

The Fifth Amendment requires that the plaintiff's choice of forum be fair and reasonable to the defendant. *See Rep. of Panama*, 119 F.3d at 945 ("In order to evaluate whether the Fifth Amendment requirements of fairness and reasonableness have been satisfied, courts should balance the burdens imposed on the individual defendant against the federal interest involved in the litigation."); *see also Peay v. BellSouth Medical Assistance Plan*, 205 F.3d 1206, 1212 (10th

---

[3] The Amended Complaint alleges that Kraken is a U.S. cryptocurrency exchange, whose substantial role in the alleged conspiracy would have occurred in the United States.

Cir. 2000). "[C]ourts must engage in this balancing only if a defendant has established that his liberty interests actually have been infringed." *Rep. of Panama*, 119 F.3d at 946. "[I]t is only in highly unusual cases that inconvenience will rise to a level of constitutional concern." *Id.* at 947.

The Amended Complaint alleges that, "Defendants have engaged in Bitcoin Cash related activities in the United States and have purposefully availed themselves of the benefits and privileges of conducting such business in the United States." Am. Compl. ¶ 18. It further alleges that Bitmain Technologies maintains offices in the United States, including in California, and has planned an Initial Public Offering (IPO) in a United States-backed stock exchange. *Id.* ¶¶ 19, 59. On its website, Bitmain.com, Bitmain Technologies lists a California office on the "Contact Us" page. *Id.* Bitmain Technologies has also made significant investments in a Blockchain Data Center in Texas, and has filed a lawsuit in a United States federal court in Washington. *Id.* It markets its products in the United States. *Id.* ¶ 59.

With respect to Wu, he is also alleged to be the founder of Bitmain Technologies. *Id.* ¶ 58. The Amended Complaint alleges that Wu is a frequent promoter in the United States of Bitmain products and services and of Bitcoin generally, citing specific examples. *Id.* ¶ 20. An entity closely related to Bitmain Technologies and Wu, Bitmain, Inc., is a Delaware corporation with its principal place of business in California. Am. Compl. ¶ 7. It has appeared in this case, and filed a motion to dismiss on other, non-jurisdictional grounds. ECF No. 144.

These substantial contacts with the United States render Bitmain Technologies and Wu amenable to this Court's personal jurisdiction. To create some doubt about their United States contacts, Bitmain Technologies and Wu attach conclusory declarations to their Motion. ECF Nos. 142-1, 142-2. In Bitmain Technologies's declaration, Liu, Bitmain Technologies's Chief Financial Officer, makes self-serving, conclusory statements, such as, "Bitmain Technologies maintains its

own corporate books and financial records, and it is operated independently of other Bitmain entities," Liu Decl. ¶ 10, and, "The Court's exercise of jurisdiction over Bitmain HK would pose a substantial burden in that its employees may be required to travel to Florida from the People's Republic of China to defend against this action."  Liu Decl. ¶ 16.  The Liu

Defendant Wu's Declaration fares no better.  While Wu claims that he has never worked in the United States, has no offices in the United States, and does not conduct business in the United States, Wu is identified as the Chief Executive Officer and President of U.S.-based Defendant Bitmain, Inc.  *See* Printouts of California Secretary of State filings for Bitmain, Inc, attached as **Exhibit "A."**  It also bears noting that, while Bitmain Technologies is purportedly "operated independently of other Bitmain entities," Liu is also the Chief Financial Officer of a related Bitmain entity, former Defendant Bitmain Technologies Holding Company, *see* ECF No. 99-1.  To the extent that the Liu and Wu Declarations conflict with other evidence, "the court must construe all reasonable inferences in favor of the plaintiff."  *Elandia International, Inc. v. Ah Koy*, 690 F. Supp. 2d 1317, 1327 (S.D. Fla. 2010).

It is the Defendants' burden to "prove that assertion of jurisdiction in this forum will make litigation so gravely difficult and inconvenient that [they] will be at a severe disadvantage in comparison to Plaintiff."  *Azalp LLC*, 2015 WL 12711232, at *4.  The Defendants' conclusory statements that this Court's exercise of jurisdiction over them would pose a substantial burden because they would be required to travel to Florida or the United States to defend this action does not suffice.  *Rep. of Panama*, 119 F.3d at 947 ("[I]t is only in highly unusual cases that inconvenience will rise to a level of constitutional concern.").  These Defendants are utilizing the same attorneys defending this action on behalf of related entity, BitMain, Inc., and their defenses already overlap with those of BitMain, Inc.  Plus, Bitmain Technologies cannot be heard to

complain about having to defend this action in the United States when it has elected to market its cryptocurrency products to United States purchasers, establish repair sites within the United States, and is controlled by an individual (Defendant Wu) who serves as the CEO and President of a large U.S. corporation (co-Defendant, Bitmain, Inc.).

Moreover, Liu and Wu's conclusory statements are the types of declarations that the Eleventh Circuit has previously disregarded in determining whether personal jurisdiction exists. *See Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999) ("The Struth Affidavit's conclusory assertions of ultimate fact are insufficient to shift to the Plaintiffs the burden of producing evidence supporting jurisdiction."); *Air Turbine Tech., Inc. v. Atlas Copco AB*, 235 F. Supp. 2d 1287, 1290 (S.D. Fla. 2002) (disregarding conclusory statements in declaration offered in support of motion to dismiss on personal jurisdiction grounds).

### IV. If Additional Facts Are Required to Establish Personal Jurisdiction, UAC Should Be Afforded the Opportunity to Conduct Jurisdictional Discovery.

Even if Bitmain Technologies and Wu have raised sufficient factual issues through their submission of the Liu and Wu Declarations to shift the burden back onto UAC to demonstrate a basis for asserting personal jurisdiction, to the extent that the parties' evidence conflicts, dismissal is not warranted. Instead, the proper course would be to permit UAC limited discovery on the issue of personal jurisdiction, or to allow UAC to conduct jurisdictional discovery along with all other merits discovery and to reconsider this issue upon a renewed motion by Bitmain Technologies and Wu after the discovery period has closed.[4] *See, e.g.*, *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) ("Resolution of a pretrial motion that turns on findings of fact—for example, a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ.

---

[4] Currently, discovery is stayed until such time as the Court resolves the pending motions to dismiss. *See* ECF No. 59.

P. 12(b)(2)—may require some limited discovery before a meaningful ruling can be made."); *Hakky v. Washington Post Co.*, No. 8:09-cv-2406-T-30MAP, 2010 WL 2573902, at *6 (M.D. Fla. June 24, 2010) (permitting plaintiff to obtain jurisdictional discovery simultaneously with merits discovery, while preserving the defendant's objection on personal jurisdiction grounds, and permitting the issue to be briefed after the discovery period); *In re Magnetic Audiotape Antitrust Litigation*, 334 F.3d 204 (2d Cir. 2003) (reversing to allow plaintiff to conduct limited discovery on personal jurisdiction). To do otherwise is to permit defendants like Bitmain Technologies and Wu to avoid answering for their misconduct simply by "withholding information on [their] contacts with the forum." *Mother Doe I v. Maktoum*, 632 F. Supp. 2d 1130, 1145 (S.D. Fla. 2007).

Therefore, UAC respectfully requests that, if the Court finds that a factual dispute exists on the extent of Bitmain Technologies and Wu's United States contacts, that it permit UAC an opportunity to conduct discovery on that issue. In particular, UAC requests discovery related to the publicly reported United States contacts of these defendants, the various jurisdictional allegations in the Amended Complaint, Wu's role as CEO and President of Bitmain, Inc., and the matters raised in the Bitmain Technologies and Wu declarations.

**V.     If the Court Dismisses, Dismissal Should be Without Prejudice.**

Should this Court decide to dismiss Bitmain Technologies and Wu on personal jurisdiction grounds, the dismissal should be without prejudice. *Posner*, 178 F.3d at 1221; *Republic of Panama*, 119 F.3d at 940 ("a dismissal for lack of jurisdiction is without prejudice").

## CONCLUSION

For the foregoing reasons, Bitmain Technologies and Wu's Motion should be denied. In the alternative, UAC respectfully requests that this Court permit it to conduct discovery relating to Bitmain Technologies and Wu's contacts with the United States.

## **CERTIFICATE OF GOOD FAITH CONFERENCE**

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movant has conferred with counsel for Bitmain Technologies and Wu, Christopher Pace, Esq., in a good faith effort to resolve the issues but has been unable to resolve the issues.  Mr. Pace has advised that Bitmain Technologies and Wu are opposed to the alternative relief (jurisdictional discovery) sought herein.

Dated:  April 24, 2020

Respectfully submitted,

By: *s/ Brian P. Miller*
Brian P. Miller
Florida Bar No. 0980633
brian.miller@akerman.com
Lorayne Perez
Florida Bar No. 085265
Lorayne.perez@akerman.com
Joanne Gelfand
Florida Bar No. 515965
Joanne.gelfand@akerman.com

AKERMAN LLP
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100
Miami, FL 33131
Tel: 305-374-5600
Fax: 305-374-5095

*Attorneys for Plaintiff United American Corp.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 24, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

/s/ *Lorayne Perez*
Lorayne Perez

52823631;1