**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No. 1:18-cv-25106-KMW-CMM**

|  |  |
|---|---|
| UNITED AMERICAN CORP., a Florida company, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| BITMAIN, INC., ROGER VER, BITMAIN TECHNOLOGIES LTD., JIHAN WU, PAYWARD VENTURES, INC. d/b/a KRAKEN, JESSE POWELL, SHAMMAH CHANCELLOR, and JASON COX, | ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

**DEFENDANTS PAYWARD VENTURES, INC.'S AND JESSE POWELL'S STANDALONE REPLY IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS THE AMENDED COMPLAINT**

Baker Marquart LLP
777 S. Figueroa Street
Suite 2850
Los Angeles, California 90017
T: +1 424 652 7800

Kobre & Kim LLP
201 South Biscayne Boulevard
Suite 1900
Miami, Florida 33131
T: +1 202 664 1907

*Attorneys for Defendants Payward Ventures, Inc. and Jesse Powell*

I.  **INTRODUCTION**

Defendants Payward Ventures, Inc. ("Kraken") and Jesse Powell ("Powell") submit this reply in support of their standalone motion to dismiss the Amended Complaint. (*See* ECF No. 138.) UAC's opposition only reveals the Amended Complaint's numerous incurable flaws, particularly as to Kraken and Powell.

Rather than respond to their standalone opening brief, UAC tellingly filed a "consolidated" opposition. (ECF No. 147 ("Opp.") at 1 n.1.) Kraken and Powell are peripheral actors in a handful of UAC's allegations. (ECF No. 138 ("FAC") ¶¶ 71-72, 96, 106.) As a cryptocurrency marketplace and its chief executive officer, they also hold a different economic role than the other defendants. There are obviously unique aspects to their positions that bear separate consideration of the Court. Undoubtedly, UAC "consolidated" its arguments not to save the Court time but to try to downplay and sidestep those important distinctions, which provide additional grounds for dismissing Kraken and Powell.

UAC's antitrust conspiracy theory as to Kraken and Powell still makes no "economic sense." For example, UAC's opposition sets forth no plausible reason why Kraken, a cryptocurrency marketplace, or Powell, its chief executive officer, would have any motive or incentive to be part of an antitrust conspiracy to "hijack" or "dominate" the so-called "Bitcoin Cash cryptocurrency network," as the Amended Complaint alleges.

Critically, UAC's opposition concedes that neither Kraken nor Powell participated in any *per se* unlawful "bid rigging" scheme. UAC clarifies that its purported bid rigging claim encompasses "miners [] effectively bidding with their votes. . . " (Opp. at 21.) The Amended Complaint, however, contains no allegation that Kraken or Powell are "miners" or that they, separately or together, engaged in any bidding or voting, or committed any act that enabled the voting UAC claims to be in violation of the antitrust laws. Miners supply cryptocurrency, which individuals then buy and trade with others on Kraken's exchange. UAC admits Kraken's economic role as a marketplace, not a miner. (FAC at 16 n.5 ("Kraken . . . provides the mechanism to trade between [fiat currency] and various cryptocurrencies[.]").) But in spinning its conspiracy and slotting actors into their alleged *legal* roles, UAC seems intentionally to be trying to blur these distinct *economic* roles. UAC should not benefit from obfuscation.

The Amended Complaint's *per se* "group boycott" claim likewise falls flat, especially as to Kraken and Powell. UAC admits, as it must, that a *per se* group boycott offense "must

involve 'horizontal agreements among direct competitors.'" (Opp. at 22.) It is, however, undisputed that Kraken and Powell are neither actual nor potential "competitors" with the other parties.

Finally, the Amended Complaint's conspiracy and anticompetitive conduct allegations directed at Kraken and Powell are self-contradicting, inconsistent, and/or absent altogether. For example, UAC's opposition characterizes the alleged conspiracy as "inherently secretive," but the Amended Complaint does not allege clandestine meetings or agreements with Kraken or Powell. (*See id.* at 8.) The only allegation of conduct by them that the opposition can point to in the Amended Complaint is notably very non-secret: Kraken's making or releasing of "public statements." (*See id.* at 11-14; FAC ¶¶ 71, 96.) This is not nearly sufficient. Also completely lacking is any allegation that either Kraken or Powell would benefit from the result of the alleged conspiracy, or had any other plausible motive to injure UAC in any way.

The Court should promptly dismiss the case against Kraken and Powell without leave to amend.

## II. ARGUMENT

### a. UAC'S Antitrust Conspiracy Theory as to Kraken and Powell Still Does Not Make "Economic Sense"

The Amended Complaint does not supply antitrust conspiracy allegations tied to Kraken or Powell that makes "economic sense" even though it is a maxim of antitrust jurisprudence that an antitrust claim must make "economic sense." *See, e.g., Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1343 (11th Cir. 2010). UAC has (again) failed to craft a coherent explanation as to why it would make economic sense for an exchange (Kraken) and its CEO (Powell), which are not competitors or suppliers to any of the other parties, to participate in the alleged far-fetched conspiracy. The Amended Complaint comes up well short for at least the following three reasons.

First, the Amended Complaint's allegations against Kraken and Powell do not establish a background making a conspiracy likely. There are no allegations suggesting that either Kraken or Powell had a motive, economic or otherwise, to participate in the alleged conspiracy.

Second, the Amended Complaint's allegations directed at Kraken and Powell do not tend to exclude the possibility that they acted wholly independent from the other defendants. This by itself is devastating, because Section 1 of the Sherman Act targets only concerted action, not

2

independent action. *American Needle, Inc. v. National Football League*, 560 U.S. 183, 190 (2010).

Third, in its opposition, UAC makes an unavailing argument that if Kraken acted against its own economic interest this somehow satisfies UAC's burden of establishing participation in the alleged conspiracy makes economic sense. (Opp. at 12.) The flaw in that argument is that the Amended Complaint never alleges, and UAC never explains in its opposition, what the benefit or gain to Kraken would reap in the long run by allegedly acting against its own economic interest in the short term. UAC never articulates a plausible end game that would credibly motivate either Kraken or Powell's involvement.

UAC's "economic sense" burden continues to go unsatisfied.

### b. UAC Cannot Shoehorn Amorphous Allegations into Either a *Per See* "Bid Rigging" or "Group Boycott" Claim Against Kraken or Powell

The Amended Complaint has not, and UAC cannot, plausibly allege against Kraken or Powell: (1) the necessary elements to impose *per se* liability for a bid rigging claim; and (2) the necessary elements to state a *per se* group boycott claim, including any understanding or agreement among horizontal competitors.

#### i. Bid Rigging

An actionable bid rigging claim requires that "two or more competitors coordinate their bids to a third party." *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006). UAC never alleges that Kraken or Powell compete with the other defendants or that they made, coordinated, or solicited any bid. Most tellingly, the opposition's bid rigging discussion conspicuously omits any reference to Kraken or Powell. (Opp. at 21-22.) There simply are no bids alleged here, let alone rigging of bids, and the cryptic and conclusory references to bid rigging on pages 21-22 of the opposition are nothing more than an academic exercise at attempting to plead creatively by analogy.

#### ii. Group Boycott

In an attempt to shore up its position, it is telling that UAC is hesitant to state with certainty that it is asserting a group boycott claim and instead characterizes it as "in the nature of a group boycott." (*Id.* at 22.) In any event, a group boycott claim requires a conspiracy to "pressur[e] a party with whom one has a dispute by withholding, or enlisting others to withhold,

3

patronage or services from the target." *Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem.*, *Co.*, 917 F.3d 1249, 1271 (11th Cir. 2019) (citation omitted).

UAC has not satisfied these elements with respect to Kraken or Powell. There is no allegation that Kraken or Powell had a dispute with UAC or that they failed to buy a product from UAC or sell a service to UAC. There is not even an allegation that Kraken or Powell knew of UAC's existence. Consequently, it would be impossible for Kraken or Powell to "target" UAC in any way. Also absent is any allegation that Kraken or Powell pressured or threatened anyone else.

UAC further undermines its *per se* group boycott claim by citing and quoting from the Supreme Court's antitrust opinion in *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 135 (1998): "For boycotting to be per se illegal, it must involve 'horizontal agreements among direct competitors.'" (Opp. at 22.) As UAC knows, it does not compete with Kraken or Powell, nor does either compete with the other named defendants. The Amended Complaint has no such allegations, nor could it. It inexorably follows that UAC cannot plausibly allege a horizontal agreement among direct competitors, which is fatal to UAC's claim "in the nature of a group boycott."

### c. UAC Fails to Allege Any Actionable Conspiratorial Anticompetitive Conduct Engaged in by Kraken or Powell

The only specific allegations concerning Kraken and Powell appear in Paragraphs 71-72, 96, and 106 of the Amended Complaint, and these allegations do not show any actionable conspiratorial anticompetitive conduct, even when read with the whole Amended Complaint.

In these few paragraphs, UAC accuses Kraken and Powell of the following: (1) "Kraken released public statements in favor of the ABC implementation and against the SV implementation"; (2) Kraken publicly stated that "Bitcoin SV does not presently meet Kraken's listing requirements and is unlikely to be supported"; (3) Kraken maintained the BCH ticker for the ABC chain and publicly stated to users that the SV chain was a "high-risk environment"; (4) Powell made public statements about the "merits of BSV"; and (5) "Kraken and Powell joined in the scheme by supporting the ABC version before the results of the hash war were even known." (FAC ¶¶ 71-72, 96, 106.)

Importantly, the Amended Complaint does not allege that any of Kraken's or Powell's "public statements" were false. Even if some or all of these public statements were determined

4

to be "disparaging" of UAC or something that belonged to UAC, such remarks or opinions do not give rise to an antitrust violation because they are not clearly false or alleged to be false. *See, e.g., Duty Free Americas, Inc., v. Estee Lauder Cos.*, *Inc.*, 797 F.3d 1248, 1268-69 (11th Cir. 2015) ("[A] plaintiff alleging anticompetitive disparagement must allege, at a minimum, statements that were demonstrably false in order to survive a motion to dismiss.")

In its opposition, UAC also makes factual assertions attempting to link Kraken or Powell to the alleged conspiracy that actually reveal how little UAC offers to make a plausible connection. UAC's main argument appears to be that because defendant Roger Ver allegedly "is a childhood friend of [Powell]" or "his high school friend," this is circumstantial evidence that they conspired to commit an antitrust violation. (*See* Opp. at 4, 10.) Not only does this alleged association not constitute a recognized "plus factor," it is not a sufficient basis to drag Kraken or Powell through the burden of defending a meritless and expensive antitrust litigation.[1] *See, e.g., Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 558 (2007) ("[P]roceeding to antitrust discovery can be expensive"); *In re LTL Shipping Servs. Antitrust Litig.*, No. 1:08-MD-01895-WSD, 2009 WL 323219, at *12 (N.D. Ga. 2009) (Motions to dismiss "serve the useful function of ending non-meritorious cases before a defendant is subjected to possibly extensive discovery and litigation costs."); *Garcia v. Santa Maria Resort, Inc.*, 528 F. Supp. 2d 1293, 1297 (S.D. Fla. 2007) ("[T]his case is particularly appropriate to terminate before the parties are forced to engage in expensive discovery proceedings.")

Overall, the Amended Complaint is woefully deficient in alleging any actionable conspiratorial anticompetitive conduct engaged in by Kraken or Powell.

### III. CONCLUSION

For the foregoing reasons, and those set forth in Kraken and Powell's standalone opening brief, the joint motion to dismiss should be granted and the Amended Complaint should be dismissed with prejudice as against Kraken and Powell. At bottom, UAC's antitrust claim is

//
//

---

[1] UAC also baldly concludes, without any citation, that: "It is also evident that the unregulated cryptocurrency market has a structure that is highly susceptible to collusion." (Opp. at 15 n.2.) This unsupported assertion is entitled to no weight whatsoever.

"intrinsically hopeless" as a matter of law in the Eleventh Circuit.  *Procaps S.A. v. Patheon, Inc.*, 845 F.3d 1072, 1087 (11th Cir. 2016).  It warrants prompt dismissal.

Dated:  May 8, 2020                                          Respectfully Submitted,

/s/ Andrew C. Lourie_____
Andrew C. Lourie (Florida Bar No. 87772)
Andrew.Lourie@kobrekim.com
KOBRE & KIM LLP
201 South Biscayne Boulevard, Suite 1900
Miami, Florida 33131
T: +1 202 664 1907
F: +1 305 967 6120

- and –

Brian E. Klein (*pro hac vice*)
bklein@bakermarquart.com
Donald R. Pepperman (*pro hac vice*)
dpepperman@bakermarquart.com
BAKER MARQUART LLP
777 S. Figueroa Street, Suite 2850
Los Angeles, California 90017
T: +1 424 652 7800
F: +1 424 652 7850

*Attorneys for Defendants Payward Ventures, Inc. and Jesse Powell*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 8, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record for the parties.

/s/ Andrew C. Lourie                  
Andrew C. Lourie
